**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| TERRY G. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | 2:05-cv-01235-MHT-DRB |
| R. EDMOND SPRAYBERRY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT**
**OF FEDERAL DEFENDANTS' MOTION TO DISMISS**

COME NOW Defendants R. Edmond Sprayberry and Alphonso Jackson (hereinafter "the Federal Defendants"), by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and submit this Memorandum in Support of the Federal Defendants' Motion to Dismiss. As set forth below, the Federal Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure because they are protected by absolute immunity, the Court lacks subject matter jurisdiction, and Plaintiff fails to state claims upon which relief may be granted.

**STATEMENT OF THE CASE**

This is a lawsuit filed by a former contract counsel for the Board of Commissioners of the Montgomery Housing Authority ("MHA"), challenging the terms of his contract with the MHA and seeking payment for legal services he provided to the MHA. Plaintiff's allegations against the Federal Defendants apparently stem from the fact that the United States Department of Housing and Urban Development ("HUD"), acting pursuant to its statutory oversight authority, did not authorize MHA to use federal

funds to pay Plaintiff legal fees that were ineligible for reimbursement, unnecessary to the administration of federal housing programs, and unreasonable in relation to costs.

The Federal Defendants in this litigation are Alphonso Jackson, in his official capacity as Secretary of HUD, and R. Edmond Sprayberry, in his official capacity as Director of Public Housing for the Birmingham Field Office for HUD and in his individual capacity.[1]  (Pl. Comp. at ¶¶ 6-7).  Plaintiff's Complaint appears to allege three causes of action against all the defendants, including the Federal Defendants: (1) breach of contract; (2) wanton conversion; and (3) race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.  (Pl. Comp. at ¶ 3, 20, 21, 23-24).  He purports to assert his claims pursuant to 42 U.S.C. § 1983 and state law.  (Id. at ¶¶ 2-3).  Plaintiff seeks compensatory damages of $25,000, restoration to a position of general counsel for the MHA, back pay, punitive damages of $350,0000, and declaratory relief.

Plaintiff lacks any factual or legal foundation to pull the Federal Defendants into a dispute between him and the MHA over the terms of his contract with the MHA and his fees for legal services he provided to the MHA.  The United States has not waived its sovereign immunity for suits in district court for the breach of contract claims asserted by Plaintiff against the Federal Defendants.  Morever, even if Plaintiff's contract claims had been filed in the proper court, they would fail as a matter of law because the contract at issue was between Plaintiff and the MHA and not between Plaintiff and the United States.  Furthermore, Plaintiff's conversion claims can only be asserted against the United States under the Federal Tort Claims Act ("FTCA"), and Plaintiff has not

---

[1]Plaintiff also sues the Housing Authority of the City of Montgomery; Lu An Long, individually and in her capacity as Commissioner of the MHA; and C. Michael McInnish.

complied with the FTCA's mandatory administrative exhaustion requirements.[2]   His

failure to exhaust deprives this Court of jurisdiction to hear his conversion claims.

Finally, Plaintiff's claims for race discrimination under section 1983 fail as a matter of

law because that statute, and the Fourteenth Amendment, do not apply to the United

States or Federal officials.   Moreover, Defendant Sprayberry is also protected by

qualified immunity from all Plaintiff's unfounded and innovative claims.

## ARGUMENT AND CITATION OF AUTHORITY

This Court should dismiss Plaintiff's claims against the Federal Defendants due to

lack of subject matter jurisdiction and failure to state claims upon which relief may be

granted.   When ruling on a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, the

Court may consider documents outside the pleadings and make factual findings.   See

Williamson v. Tucker, 645 F.2d 404, 412-415 (5th Cir. 1981).   A court must dismiss a

claim when it determines that it lacks subject matter jurisdiction.   See Marshall v.

Gibson's Products, Inc., 584 F.2d 668, 671-672 (5th Cir. 1978).   Furthermore, a court

should dismiss a complaint for failure to state a claim when, assuming the factual

allegations are true, the plaintiff can prove no set of facts entitling him to relief.   See

Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1262 (11th Cir. 2004).

---

[2]The United States has simultaneously filed a Notice of Substitution pursuant to 28
U.S.C. § 2679(d)(1).   By operation of law, the United States is substituted as a party
defendant for Defendant Sprayberry in all Plaintiff's state law claims, including his breach
of contract and wanton conversion claims.   See 28 U.S.C. § 2679(b)(1).

I.    **Plaintiff's Breach of Contract Claims against the Federal Defendants are Barred by Sovereign Immunity and, even if viable, Fail as a Matter of Law.**

A.    **Plaintiff's Contract Claims Against the Federal Defendants are Barred by Sovereign Immunity.**

This Court should dismiss Plaintiff's breach of contract claims against the Federal Defendants because the United States has not waived its sovereign immunity nor conferred jurisdiction for Plaintiff to assert such claims in federal district court.[3]  The United States, as the sovereign, is immune from suit except where Congress by specific statute has waived the immunity.  See United States v. Testan, 242 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941).  When the United States does explicitly waive its immunity and consents to be sued, the terms of the consent "define th[e] court's jurisdiction to entertain the suit."  See Sherwood, 312 U.S. at 586.

While the United States has waived its sovereign immunity for "any claim against the United States ... upon any express or implied contract with the United States," it has not conferred jurisdiction upon federal district courts to hear all such claims.  See 28 U.S.C. § 1491(a)(1).  Instead, pursuant to the Little Tucker Act, Congress has only given federal district courts subject matter jurisdiction to hear contract claims against the United States "not exceeding $10,000 in amount."  See 28 U.S.C. § 1346(a)(2) (emphasis added).  Congress conferred upon the Court of Federal Claims sole and exclusive jurisdiction over any breach of contract claims against the Federal government that exceed $10,000.  See Friedman v. United States, 391 F.3d 1313, 1315 (11th Cir. 2004).

---

[3]A claim against a federal employee in his official capacity is construed as a claim against the United States.  See Kentucky v. Graham, 473 U.S. 159, 165-166 (1985); Unimex, Inc. v. United States Dep't of Health and Human Servs., 594 F.2d 1060, 1061-1062 (5th Cir. 1979) (per curiam).

In this case, Plaintiff seeks $25,000 in damages from the Federal Defendants for an alleged breach of contract. (Pl. Comp., First Cause of Action). Since Plaintiff's claims relate to an alleged contract and exceed the jurisdictional maximum of this Court set by the Tucker Act, his contract claims against the Federal Defendants must be dismissed due to sovereign immunity and lack of jurisdiction.[4] See Friedman, 391 F.3d at 1315 ("[T]he Tucker Act ... requires that claims against the United States for amounts in excess of $10,000 founded on contracts ... be brought in the Court of Claims").

**B.     Plaintiff's Breach of Contract Claims Fail as a Matter of Law.**

Furthermore, even assuming arguendo jurisdiction existed, Plaintiff's breach of contract claims against the Federal Defendants fail as a matter of law because he has failed to state a claim upon which relief may be granted. See Fed. R. Civ. P. 12(b)(6). Plaintiff alleges in his First Cause of Action that "Defendants' refusal to pay Plaintiff Davis for services rendered as general counsel constitutes breach of contract." (Pl. Comp. at ¶¶ 17, 20). To state a breach of contract claim, Plaintiff must allege and prove "(1) the existence of a valid contract binding the parties in the action, (2) his own performance

---

[4]While Plaintiff's Complaint also appears to assert a breach of contract claim against Defendant Sprayberry in his individual capacity, this claim no longer exists in this litigation. Pursuant to the Westfall Act, the United States has been substituted for Defendant Sprayberry on Plaintiff's state law claims. See 28 U.S.C. § 2679. The Westfall Act confers absolute immunity on Sprayberry for all civil actions "arising out of or relating to the same subject matter" except for constitutional claims. See 28 U.S.C. § 2679(b)(1) ("Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred") (emphasis added); Singleton v. Burchfield, 362 F. Supp. 2d 1291, 1297 (M.D. Ala. 2005). Since Plaintiff's conversion and breach of contract claims both relate to his alleged entitlement to fees for legal services, his breach of contract claim against Defendant Sprayberry as an individual is precluded. See 28 U.S.C. § 2679(b)(1). In any event, Supreme Court authority clearly provides that federal officials are not individually liable on federal contracts. See Hodgson v. Dexter, 5 U.S. 345, 355-356 (1803).

- 5 -

under the contract, (3) the defendant's nonperformance, and (4) damages." See, e.g., Southern Med. Health Sys., Inc. v. Vaughn, 669 So. 2d 98, 99 (Ala. 1995).

Plaintiff's claims must fail because there is complete silence within the four corners of Plaintiff's complaint regarding the existence of any binding contract between himself and any of the Federal Defendants. This is because Plaintiff is not a party to any contracts with the Federal Defendants. His sole contract, if any, exists between him and the Montgomery Housing Authority. As a general rule, the "government consents to be sued only by those with whom it has privity of contract." See First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279 (Fed. Cir. 1999) (citation and quotation omitted). Accordingly, even if Plaintiff had filed this lawsuit in the Court of Federal Claims, his breach of contract claims fail as a matter of law. See id.

## II.    Plaintiff's Conversion Claims Must Be Dismissed for Lack of Jurisdiction.

This Court should dismiss Plaintiff's conversion claims because he has not complied with the jurisdictional prerequisites of the Federal Tort Claims Act (hereinafter "FTCA"), and thus this Court lacks subject matter jurisdiction over his claims. The FTCA is a limited waiver of sovereign immunity, and it provides the exclusive remedy for a plaintiff alleging injury from state law torts committed by a federal employee within the scope of his or her official duties. See 28 U.S.C. §§ 1346(b) & 2679(b)(1). When a plaintiff files a tort lawsuit against a federal employee acting within the scope of his employment, the FTCA provides that the lawsuit "shall be deemed to be an action or proceeding against the United States" and the "United States shall be substituted as the party defendant." See 28 U.S.C. § 2679(d)(1). Furthermore, the FTCA requires that a plaintiff satisfy certain administrative prerequisites before invoking the judicial process.

See McNeil v. United States, 508 U.S. 106, 111-113 (1993). If these requirements are not satisfied, then the lawsuit must be dismissed. See id.

Since conversion is a state law tort, the FTCA is applicable to this lawsuit. See e.g., Price v. United States, 69 F.3d 46 (5th Cir. 1995) (analyzing conversion claim under FTCA). The United States has filed a Notice of Substitution making it the sole party defendant in Plaintiff's conversion claims. See Mitchell v. Carlson, 896 F.2d 128, 134 (5th Cir. 1990) ("An action against a federal employee who has been certified as acting in the scope of [his] employment must proceed exclusively against the United States under the FTCA"). Accordingly, all Plaintiff's conversion claims against any other federal defendants must be dismissed for lack of subject matter jurisdiction. See, e.g., Galvin v. OSHA, 860 F.2d 181, 183 (5th Cir. 1988) ("an FTCA claim against a federal agency or employee as opposed to the United States must be dismissed for want of jurisdiction").

Furthermore, since Plaintiff has not complied with the administrative claim requirements of the FTCA before filing this lawsuit, his claims against the United States must be dismissed for lack of jurisdiction. The FTCA, as a limited waiver of sovereign immunity, is explicit in setting forth the requirements for invoking a court's jurisdiction to hear tort claims against the United States. The FTCA provides, in pertinent part, that:

> An action shall not be instituted upon a claim against the United States for money damages or lost property ... caused by the negligent or wrongful act ... of an employee of the government while acting within the scope of his ... employment unless the claimant shall have first presented the claim to the appropriate federal agency and his claim shall have been finally denied by the agency in writing....

See 28 U.S.C. 2675(a). Thus, a plaintiff must present a written administrative claim to the agency whose activities gave rise to the claim and have the claim finally denied before filing a lawsuit. See McNeil, 508 U.S. at 111-113.

In his Complaint, Plaintiff did <u>not</u> allege that he filed a claim administratively with HUD concerning his wanton conversion claims before filing this lawsuit. As a result, HUD reviewed its records. The review established that Plaintiff did not file an administrative claim and has failed to comply with the FTCA's administrative claim requirements. (<u>See</u> Exhibit 1, Affidavit of Thomas Rodick). Accordingly, this Court lacks jurisdiction to consider Plaintiff's conversion claims. <u>See</u> <u>McNeil</u>, 508 U.S. at 111-113. <u>See also</u> <u>Ivey v. United States</u>, 873 F. Supp. 663, 669 (N.D. Ga. 1995) (dismissing FTCA claim when plaintiff failed to file administrative claim with HUD).

Notably, Plaintiff cannot cure this jurisdictional defect by filing an administrative claim while this lawsuit is pending. The Supreme Court has made it absolutely clear that "[t]he FTCA bars claimants from bringing suit in federal court <u>until</u> they have exhausted their administrative remedies." <u>See</u> <u>McNeil</u>, 508 U.S. at 111-113 (emphasis added). It follows that if a lawsuit is prematurely filed before an administrative claim has been filed and implicitly or formally denied, the lawsuit must be dismissed for lack of jurisdiction. <u>See</u> <u>id</u>. ("The most natural reading of the [FTCA] indicates that Congress intended to require complete exhaustion of Executive remedies <u>before</u> invocation of the judicial process"(emphasis added)); <u>Gregory v. Mitchell</u>, 634 F.2d 199, 204 (5th Cir. 1981). Accordingly, Plaintiff's conversion claims against the United States must be dismissed for lack of jurisdiction. <u>See</u> <u>Gregory</u>, 634 F.2d at 204.

**III.    Plaintiff's 42 U.S.C. § 1983 Claims Are Barred by Sovereign Immunity and Fail as a Matter of Law.**

   **A.    Plaintiff's 42 U.S.C. § 1983 Claims Against Defendants in Their Official Capacities Are Barred By Sovereign Immunity**.

The Court should dismiss Plaintiff's 42 U.S.C. § 1983 claims against Defendants Jackson and Sprayberry in their official capacities because they are barred by sovereign

immunity.  A claim against a federal employee in his official capacity is construed as a claim against the United States.  See Kentucky v. Graham, 473 U.S. 159, 165-166 (1985); Unimex, Inc. v. United States Dep't of Health and Human Servs., 594 F.2d 1060, 1061-1062 (5th Cir. 1979).  The United States has not waived its sovereign immunity to suit under the civil rights statutes such as § 1983.  See United States v. Timmons, 672 F.2d 1373, 1380 (11th Cir. 1982); Unimex, 594 F.2d at 106.

In this case, since Plaintiff's claims against Federal Defendants in their official capacities under § 1983 are claims against the United States, they are barred by sovereign immunity.  See Timmons, 672 F.2d at 1380.  See also Harrison v. Potter, 323 F. Supp. 2d 593, 604 (S.D.N.Y. 2004) ("Because the United States has not waived its sovereign immunity for constitutional tort claims under the Civil Rights Act, this Court dismisses [Plaintiff's] § 1983 ... claims for lack of subject matter jurisdiction").

## B.    Plaintiff's 42 U.S.C. § 1983 Claims Against the Federal Defendants Fail As A Matter of Law.

Plaintiff's § 1983 claims against the Federal Defendants also fail as a matter of law because the statute does not provide a cause of action against federal officials in either their official or individual capacities.[5]  Section 1983 is a civil rights statute that provides a cause of action for damages against any "[p]erson who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory," violates a plaintiff's constitutional rights.  See 42 U.S.C. § 1983.  The statute thus allows plaintiffs to bring actions for damages against defendants acting under "color of state law."  See Norton v. McShane, 332 F.2d 855, 862 (5th Cir. 1964) (emphasis added).  The statute

---

[5]Notably, Plaintiff also erroneously relies on the Fourteenth Amendment and its Equal Protection clause, which do not apply to the Federal government and its officers.  See, e.g., District of Columbia v. Carter, 409 U.S. 418, 424-425 (1973).

does <u>not</u> provide a cause of action for plaintiffs to sue federal employees who act under color of <u>federal</u> law. <u>See</u> <u>Wheeldin v. Wheeler</u>, 373 U.S. 647, 650 & n.2 (1963); <u>Mack v. Alexander</u>, 575 F.2d 488, 489 (5th Cir. 1978) (per curiam); <u>Norton</u>, 332 F.2d at 862. Indeed, the former Fifth Circuit observed in 1964 that the statute, by its text, is so plainly limited to actions against state officials, and not federal officials, that "no discussion can make it clearer than appears from its reading." <u>See</u> <u>Norton</u>, 332 F.2d at 862.

In the present case, the Federal Defendants are federal officials operating under color of <u>federal</u> law. (Pl. Comp. at ¶¶ 6-7). They are <u>not</u> state, county, city, or municipality officials, and thus do not act under color of state law. Plaintiff's § 1983 claims against them, therefore, must be dismissed for lack of jurisdiction and failure to state claims upon which relief may be granted. <u>See</u> <u>Norton</u>, 332 F.2d at 462; <u>Bernard v. Calejo</u>, 17 F. Supp. 2d 1311, 1314 (S.D. Fla. 1998)("Because federal officials do not act under color of state law, plaintiffs may not ... bring a section 1983 claim against them").

### C.    Defendant Sprayberry is Protected by Qualified Immunity.

Finally, assuming <u>arguendo</u> that Plaintiff could assert a Fourteenth Amendment claim against Defendant Sprayberry in his individual capacity under section 1983, such a claim fails because Defendant Sprayberry is entitled to qualified immunity. Qualified immunity offers "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>See</u> <u>Thomas v. Roberts</u>, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). The Eleventh Circuit has noted that "[q]ualified immunity 'protects from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" <u>See</u> <u>Lee v. Farraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation and quotation

omitted).  See also Lassiter v. Alabama A & M Univ. Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994) (noting qualified immunity is the "usual rule" and only in "exceptional cases will government actors have no shield against claims made against them in their individual capacities").  The purpose of qualified immunity is to allow government officials to perform their discretionary duties without fear of "personal liability or harassing litigation."  See Lee, 284 F.3d at 1194.

Importantly, qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  See Saucier v. Katz, 533 U.S. 194, 200 (2001) (citation and quotation omitted).  For this reason, qualified immunity should be addressed as early as possible in the litigation process.  See Lee, 284 F.3d at 1194.  Moreover, in an effort to "eliminate non-meritorious claims on the pleadings and to protect public officials from protracted litigation involving specious claims," the Eleventh Circuit has adopted a heightened pleading standard that applies to claims of constitutional violations brought against public officials.  See Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992).  This standard requires a plaintiff to provide "some specificity" in the facts when pleading a section 1983 claim against an official in his individual capacity. See GJR Invest., Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998). Accordingly, a court should dismiss a complaint pursuant to Rule 12(b)(6) when a plaintiff fails to adequately plead the violation of a clearly established constitutional right.  See Chesser v. Sparks, 248 F.3d 1117, 1122 (11th Cir. 2001).

When evaluating a claim for qualified immunity, the initial inquiry is whether a constitutional right would have even been violated on the facts alleged.  See Saucier, 533 U.S. at 200.  If no right would have been violated, then the plaintiff has failed to state a claim and there is no need for further inquiry into immunity.  See id. at 201.  If a

violation could be made out in a plaintiff's complaint, then the court must determine "if the right was clearly established." See id. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.; Lee, 284 F.3d at 1194. In determining whether a constitutional right is "clearly established, " the relevant inquiry is whether it would be clear to a reasonable official that his or her conduct was unlawful in the situation he confronted." See Saucier, 533 U.S. at 202. See also Hope v. Pelzer, 536 U.S. 730, 739 (2002) (for a right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"). In most cases, the plaintiff, who bears the burden of showing qualified immunity is not appropriate, must point to preexisting case law that is factually similar in order to show that government officials had fair notice that their conduct violated a constitutional right. See Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003); Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir.2002).

In the present case, Plaintiff's Complaint does not even establish a violation of his right to equal protection, much less show that Defendant Sprayberry was on notice that his conduct violated Plaintiff's rights. Plaintiff provides minimal facts in support of his contention that his constitutional rights were violated, and he falls well short of satisfying his burden under this Circuit's "heightened pleading" requirements. He simply alleges in an entirely conclusory fashion that Defendants discriminated against him by refusing to pay him for legal services, by paying him at a lower hourly rate, and by "overruling" MHA's decision to extend his employment contract. (Pl. Comp. at ¶¶ 17-19). These bare facts are insufficient to establish a clearly established constitutional violation, and fall well short of even showing a violation of his constitutional rights at all. Plaintiff cannot defeat qualified immunity merely by citing to the equal protection clause or

making a conclusory allegation of race discrimination.  See, e.g., Williams v. City of Jacksonville, 341 F.3d 1261, 1273 (11th Cir. 2003) (holding that public official who declined to create new positions because of race of applicants on waiting list was entitled to qualified immunity, and noting that broad statements regarding the general equal protection right to be free from employment discrimination did not give the official the required fair notice that his conduct was unlawful).

Tellingly, Plaintiff does not allege that Plaintiff had any contract with the United States that would entitle him to payment from the Federal Defendants for legal services he gave to the MHA, or that the Federal Defendants had any role in establishing the hourly rates that attorneys hired to represent the MHA's Board of Commissioners agreed to be paid by the MHA after competitive bidding.[6]  He also fails to allege how HUD, in conducting its oversight role in the use of federal funds, could force the MHA to take any action regarding his contract with the MHA when it did not employ him.   These allegations are missing from Plaintiff's Complaint because Plaintiff was not employed by HUD and had no contract with the United States.  He had no entitlement to be paid by federal funds, and HUD had no final decision making authority with respect to the MHA's decisions regarding Plaintiff's contract terms (including hourly rate), his employment with the MHA, or the MHA's use of funds from other sources to pay him.

In short, Plaintiff is overreaching, like he did with his contract and conversion claims, and attempting to pull a federal official into a local dispute between him and his employer without any factual or legal foundation.  Cf. Ronsonet v. Carroll, 113 F. Supp.

---

[6]As an aside,  it defies both logic and common sense that Plaintiff could voluntarily reach an agreement with MHA to be paid a certain hourly rate for his legal services and then turn around and sue the Federal Government claiming that the Federal Government was discriminating against him in relation to the rate he agreed to be paid by the MHA.

2d 1009, 1119-1020 (S.D. Miss. 2000) (rejecting plaintiff's attempt to sue HUD under Title VII or constitution for local public housing authorities' decisions regarding her employment, because HUD was not her employer and did not make final employment decisions for local public housing authorities). Plaintiff cannot identify <u>any</u> authority that would have clearly established to Mr. Sprayberry that a federal official overseeing a city housing authority's use of federal funds to make sure it complies with HUD regulations violates the Equal Protection Clause of the Fourteenth Amendment by allowing the city housing authority to enter into a contract with an attorney at a reasonable hourly rate or by disallowing the use of federal funds to pay for all the legal fees requested by that attorney. <u>See</u> <u>Williams</u>, 341 F.3d at 1269-1270 (stressing qualified immunity must be decided "in light of the specific context of the case, not as a broad general proposition"). <u>See also</u> <u>Willingham</u>, 321 F.3d at 1301 (government official is "entitled to notice his conduct is unlawful" and "fair warning" that his conduct deprived victim of a constitutional right); <u>Vinyard</u>, 311 F.3d at 1350.

Indeed, qualified immunity is <u>only</u> overcome if a plaintiff demonstrates that "preexisting law dictates, that is truly compel[s], the conclusion for all reasonable, similarly-situated public officials that what [the defendant] was doing violated plaintiff's federal rights in the circumstances." <u>See</u> <u>Evans v. Stephens</u>, 407 F.3d 1272, 1282 (11th Cir. 2005) (en banc). <u>See also</u> <u>Vinyard</u>, 311 F.3d at 1350 (reiterating that "fair and clear notice to government officials is the cornerstone of qualified immunity"). Absent the "fair and clear notice" to Defendant Sprayberry required by the law, Plaintiff cannot meet his burden of overcoming qualified immunity and cannot pursue a claim against Mr. Sprayberry as an individual. <u>See</u> <u>Vinyard</u>, 311 F.3d at 1350. Accordingly, this Court

should grant this Motion and dismiss Plaintiff's section 1983 claims against Defendant Sprayberry.  See Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003).

## **CONCLUSION**

For the foregoing reasons, the Federal Defendants respectfully request that the Court grant this Motion in its entirety and dismiss all Plaintiff's claims against them.

Respectfully submitted this 27th day of March, 2006.

> LEURA G. CANARY
> United States Attorney

> By:    s/James J. DuBois_____
> JAMES J. DUBOIS
> Assistant United States Attorney
> Georgia Bar No. 231445
> United States Attorney's Office
> Post Office Box 197
> Montgomery, AL 36101-0197
> Telephone: (334) 223-7280
> Facsimile: (334) 223-7418
> E-mail:  james.dubois2@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 27, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for Plaintiff, Defendant Mcinnish, Defendant Long, and Defendant Housing Authority of the City of Montgomery, Alabama.

s/James J. DuBois<br>
Assistant United States Attorney