IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TERRY G. DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: |
| ) | 2:05-cv-01235-MHT-DRB |
| R. EDMOND SPRAYBERRY, et al. ) | |
| ) | |
| Defendants. ) | |

**REPLY MEMORANDUM IN SUPPORT
OF FEDERAL DEFENDANTS' MOTION TO DISMISS**

COME NOW Defendants R. Edmond Sprayberry and Alphonso Jackson (hereinafter "the Federal Defendants") and file this Reply Memorandum in Support of their Motion to Dismiss. In this lawsuit, Plaintiff, who had no contract with the Federal Government and was never employed by the Federal Government, attempts to drag the Federal Defendants into the middle of a dispute he has with a non-Federal entity, the Montgomery Housing Authority ("MHA"), concerning legal services he provided to the MHA. The Federal Defendants explained in their Initial Memorandum that Plaintiff's attempt to sue them for breach of contract is barred by the Little Tucker Act, that Plaintiff's conversion claims are barred by his failure to comply with the jurisdictional prerequisites of the Federal Tort Claims Act ("FTCA"), and that Plaintiff's 42 U.S.C. § 1983 claims fail because section 1983 does not provide a cause of action against Federal officials. (Init. Mem. at 4-10).

Tellingly, in Plaintiff's Response, he completely ignores and does not address any of these dispositive arguments. Instead, Plaintiff focuses all his attention on an alternative argument that the Federal Defendants raised at the end of their Initial

Memorandum regarding Defendant Sprayberry's entitlement to qualified immunity on the conclusory allegations in Plaintiff's Complaint.[1] Since Plaintiff has not addressed dispositive and well-supported arguments as to why each of his claims should be dismissed, the Federal Defendants' Motion should be granted in its entirety and all claims against the Federal Defendants should be dismissed from this litigation.

## ARGUMENT AND CITATION OF AUTHORITY

**I.     The Little Tucker Act Bars Plaintiff's Breach of Contract Claims.**

This Court should dismiss Plaintiff's breach of contract claims against the Federal Defendants because the Court lacks subject matter jurisdiction over the claims under the terms of the Little Tucker Act, 28 U.S.C. § 1346(a)(2). As the Federal Defendants explained in their Initial Memorandum, Congress has only waived sovereign immunity and conferred jurisdiction on district courts to hear breach of contract claims against the United States seeking less than $10,000 in damages. (Init. Mem. at 4). The Federal Defendants further explained that since Plaintiff's contract claims sought $25,000 in damages, (Pl. Comp., First Cause of Action), the claims had to be dismissed for lack of jurisdiction. See Friedman v. United States, 391 F.3d 1313, 1315 (11th Cir. 2004).

Plaintiff did not respond to this argument in his Response Brief. Pursuant to Section 6 of the Court's Uniform Scheduling Order, the "failure to file a response to any motion ... shall indicate to the Court that there is no opposition to the motion." By

---

[1] As an aside, the Federal Defendants note that Plaintiff provides documents with his Response even though this is a Rule 12(b)(6) Motion to Dismiss based solely on the pleadings. Nevertheless, even if these documents were considered as part of the allegations in the Complaint, they do not change the Federal Defendants' analysis and do nothing to affect Defendant Sprayberry's entitlement to qualified immunity.

ignoring the Federal Defendants' arguments for the dismissal of Plaintiff's breach of contract claims, Plaintiff has essentially abandoned these claims. Besides the fact that Plaintiff abandoned these claims, clear legal authority establishes that the claims fail due to sovereign immunity and lack of jurisdiction.[2] See Friedman, 391 F.3d at 1315.

## II. The FTCA Bars Plaintiff's Unexhausted Conversion Claims.

This Court should dismiss Plaintiff's conversion claims against the Federal Defendants for lack of subject matter jurisdiction. The Federal Defendants explained in their Initial Memorandum that Plaintiff's conversion claims had to proceed, if at all, as claims under the Federal Tort Claims Act ("FTCA") against the United States.[3] (Init. Mem. at 6). For a court to have subject matter jurisdiction over a lawsuit against the United States under the FTCA, however, the plaintiff must have first filed a written administrative claim with the agency whose activities allegedly gave rise to the claim and have the claim denied by the agency. See 28 U.S.C. § 2675. See also McNeil v. United States, 508 U.S. 106, 111-113 (1993). The Federal Defendants established in their Initial Memorandum that Plaintiff had not filed an administrative claim and had it denied, and thus had not satisfied this necessary jurisdictional prerequisite. (Init. Mem. at 7-8).

Plaintiff did not respond to this argument in his Response Brief, nor did he attempt to refute the Federal Defendants' assertion that he had not filed an administrative

---

[2] Moreover, as the Federal Defendants also argued in the alternative in their Motion to Dismiss, since Plaintiff lacked a contract with the Federal Defendants, he cannot state a claim for relief against them even if he had filed his breach of contract claims in the proper court. (Init. Mem. at 5-6). Plaintiff also ignored this argument in his Response.

[3] Pursuant to the Westfall Act, 28 U.S.C. 2679(d)(1), the United States filed a separate certification that Defendant Sprayberry had been acting within the scope of his employment and substituted the United States as the sole Defendant in Plaintiff's FTCA claims.

claim regarding his conversion claim with the Department of Housing and Urban Development ("HUD") and had it denied prior to filing this lawsuit. By ignoring Defendants' arguments, Plaintiff has essentially abandoned his conversion claims. (Court's Uniform Scheduling Order, at section 6). Indeed, the legal authority is so clear that Plaintiff can raise no legitimate opposition to the Federal Defendants' arguments why his conversion claims under the FTCA must be dismissed. See McNeil, 508 U.S. at 111-113; Singleton v. Burchfield, 362 F. Supp. 2d 1291, 1297-1298 (M.D. Ala. 2005); Ivey v. United States, 873 F. Supp. 663, 669 (N.D. Ga. 1995).

### III. Plaintiff's 42 U.S.C. § 1983 Claims Alleging Violations of the Fourteenth Amendment Fail as a Matter of Law.

#### A. The Federal Defendants Cannot Be Sued Under 42 U.S.C. § 1983 and the Fourteenth Amendment.

This Court should dismiss Plaintiff's section 1983 claims against the Federal Defendants for lack of subject matter jurisdiction. The Federal Defendants explained on pages 9-10 of their Initial Memorandum that Plaintiff's section 1983 claims fail as a matter of law because the statute only provides a cause of action against state officials acting under "color of state law" and does not provide a cause of action against the United States or its officials.[4] See Mack v. Alexander, 575 F.2d 488, 489 (5th Cir. 1978). In fact, the former Fifth Circuit stated that section 1983, by its text, is so plainly limited to actions against state officials that "no discussion can make it clearer than appears from its reading." See Norton v. McShane, 332 F.2d 855, 862 (5th Cir. 1964).

---

[4] The Federal Defendants also explained that the Fourteenth Amendment's Equal Protection Clause that forms the basis of Plaintiff's section 1983 claims does not apply to the Federal Government. (Init. Mem. at 9). Plaintiff ignored this argument in his Response.

Plaintiff did <u>not</u> respond to this argument in his Response Brief. Indeed, he could not have asserted any response that would have had any supportable basis. Since the statutory language and case law is so clear on this issue, courts have labeled section 1983 claims brought against federal officials as "meritless," "unreasonable," and "frivolous." <u>See</u>, <u>e.g.</u>, <u>Smith v. Kitchen</u>, 156 F.3d 1025, 1028 (10th Cir. 1997). Plaintiff, who is an attorney and is represented by counsel, simply failed to plead a claim that is sustainable against the Federal Defendants. For this reason alone, this Court should grant the Federal Defendants' Motion and dismiss Plaintiff's section 1983 and Fourteenth Amendment claims. <u>See</u>, <u>e.g.</u>, <u>Cureton v. United States Marshal Serv</u>., 322 F. Supp. 2d 23, 27-28 (D.D.C. 2004) (dismissing section 1983 claim brought against federal officials).

**B.     Defendant Sprayberry is Protected By Qualified Immunity.**

Since Plaintiff has pled no viable claims against the Federal Defendants, the Court need not address Defendant Sprayberry's alternative defense of qualified immunity, and the claims against the Federal Defendants must be dismissed. For the sake of completeness, however, Defendant Sprayberry is also entitled to have the constitutional claims against him dismissed due to qualified immunity. The defense of qualified immunity "completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" See <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1357 (11th Cir. 2003). For the reasons that follow, as well as those in the Federal Defendants' Initial Memorandum, Defendant Sprayberry was acting within his discretionary authority as Director of Public Housing

for the Birmingham Field Office of HUD, and he did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known.[5]

### 1.     Defendant Sprayberry Acted Within His Discretionary Authority.

As an initial matter, Defendant Sprayberry was at all times acting within the scope of his discretionary authority when he took the actions that are the subject of Plaintiff's complaint.[6]  Plaintiff incorrectly argues in his Response that Defendant Sprayberry was acting outside the scope of his discretionary authority because he was motivated by his friendship with the MHA's Executive Director McInnish and by race when he used his authority as Director of Public Housing for HUD to take the actions challenged in the Complaint. (Pl. Resp. at 3-4).  This argument fails as a matter of law.

Importantly, the alleged motive of a government official is irrelevant to the issue of whether he was acting within his discretionary authority. See Harbert Intern., Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998).  Instead, in determining whether a government official was acting within his discretionary authority, "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." Id.

---

[5] Notably, Plaintiff also failed to address the Federal Defendants' argument on page eleven of their Initial Memorandum that he failed to satisfy the heightened pleading requirements that apply to constitutional claims asserted against government officials in their individual capacities.  See, e.g., GJR Invest., Inc. V. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998).  A complaint that fails to sufficiently allege a violation of clearly-established rights should be dismissed for failure to state a claim upon which relief can be granted.  See Chesser v. Sparks, 248 F.3d 1117, 1122 (11th Cir. 2001).

[6] Indeed, the Federal Defendants asserted in their Initial Memorandum that Defendant Sprayberry was acting within the scope of his employment when he took the actions challenged in the Complaint. (Init. Mem. at 7).  Because of this fact, the United States was substituted for Defendant Sprayberry on all Plaintiff's state-law claims.

(citation omitted) (emphasis added). The Eleventh Circuit has noted that "only the conduct that caused" the alleged constitutional injury is relevant to this inquiry. See id. See also Sims v. Metropolitan Dade County, 972 F.2d 1230, 1236 (11th Cir. 1992) (defendant acted within discretionary authority when he had power to discipline plaintiff, and whether he did so in violation of plaintiff's constitutional rights was irrelevant).

In this case, Plaintiff admitted in his Complaint that Defendant Sprayberry was acting within the scope of his discretionary authority as Director of Public Housing for HUD. Specifically, Plaintiff alleged that Defendant Sprayberry was "using his authority" as Director of the Office of Public Housing to carry out the actions that Plaintiff challenges in this lawsuit. (Pl. Comp. at 15). This assertion by Plaintiff, by itself, is sufficient to establish that Defendant Sprayberry was acting within, or reasonably related to, the outer perimeters of his official duties. See Maggio v. Sipple, 211 F.3d 1346, 1350, n.2 (11th Cir. 2000) (discussing discretionary authority standard). Indeed, Plaintiff's entire Complaint challenges Defendant Sprayberry's decisions, made as Director of the Office of Public Housing, regarding the use of federal funds. He challenges no conduct that Defendant Sprayberry could have taken absent his position.

Moreover, contrary to Plaintiff's apparent wishes, federal funds do not flow unfettered out of an open faucet to be spent by state and local entities without federal oversight. Instead, federal agencies, like HUD, place limits on the use of federal funds and ensure they are being properly spent. See, e.g., The United States Housing Act of 1937, 42 U.S.C. § 1437 et. seq.; 24 C.F.R. § 85.22(a) & 990.111. HUD retains oversight of the use of federal funds by local housing authorities. See Ronsonet v. Carroll, 113 F. Supp. 2d 1009, 1011 (S.D. Miss. 2000). Defendant Sprayberry, as Director of the Office of Public Housing for the Birmingham Field Office, was thus acting within his

discretionary authority under the law in monitoring the MHA's use of federal funds. He is clearly entitled to raise the defense of qualified immunity. See Sims, 972 F.2d at 1236.

### 2. Defendant Sprayberry Did Not Violate Any Constitutional Rights, Much Less Any Clearly-Established Rights.

Defendant Sprayberry is entitled to qualified immunity because Plaintiff has failed to establish that Defendant Sprayberry violated a clearly established constitutional right. See Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003) (government official is "entitled to notice his conduct is unlawful" and "fair warning" that his conduct deprived victim of a constitutional right). In an attempt to show that clearly-established constitutional rights have been violated, Plaintiff simply asserts that "the law clearly establishes that an employer cannot discriminate based on race." (Pl. Resp. at 5). He then declares that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., prohibits race discrimination in employment and that Defendant Sprayberry violated this right that was clearly established by Title VII. (Pl. Resp. at 5). Plaintiff's arguments lack merit, and his legal citations have nothing to do with the specific facts of this case.

While Plaintiff relies on broad assertions regarding race discrimination being prohibited in employment, this is not an employment case involving the Federal Government. Plaintiff was not employed by HUD or the Federal Government. He had no contract with HUD or the Federal Government. He had no employment relationship with the Federal Government that would have been covered by Title VII.[7] Moreover,

---

[7] Notably, assuming contrary to the facts that Plaintiff had been employed by the Federal Government, then his exclusive remedy would be a Title VII lawsuit against the head of HUD in his Official capacity. See Brown v. GSA, 425 U.S. 820, 824 (1976) (noting that Title VII, with its administrative exhaustion requirements, is the "exclusive judicial remedy for claims of discrimination in federal employment"). Such a claim would then have to be dismissed because Plaintiff has not satisfied the administrative exhaustion requirements of Title VII. See Crawford v. Babbitt, 186 F.3d 1322, 1326 (11th Cir. 1999).

neither the Federal Government nor Defendant Sprayberry had the final authority to make decisions regarding the terms of Plaintiff's employment relationship with the MHA, such as his rate of pay, the duration of his employment, or the work he performed.[8] Nor did the Federal Government have any say regarding what the MHA did with funds not subject to HUD oversight. Thus, the prohibitions on employment discrimination contained in the Fourteenth Amendment's Equal Protection Clause and Title VII are entirely irrelevant to this case. See Williams v. City of Jacksonville, 341 F.3d 1261, 1272-1273 (11th Cir. 2003).

Indeed, the Supreme Court and the Eleventh Circuit have consistently stated that the inquiry into whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." See, e.g., Saucier v. Katz, 533 U.S. 194, 201 (2001); Williams v. City of Jacksonville, 341 F.3d 1261, 1269-1270 (11th Cir. 2003) (same). In Williams, for example, the Eleventh Circuit rejected the plaintiff's argument that the Equal Protection Clause's broad prohibition of race discrimination in employment clearly established to a fire chief that he violated the constitution by refusing to create new captain positions to avoid promoting white employees who were next in line for promotion. See Williams, 341 F.3d at 1270-1271. The Court observed that all its prior decisions discussing the Equal Protection Clause and qualified immunity had dealt with "typical employment decisions that were made concerning an existing vacancy or viable position." See id. at 1272-1273. In contrast, the Court noted that the case before it dealt with a situation where there were no positions available and the employees on the promotion lists were not entitled to have positions

---

[8]The Federal Defendants pointed these facts out on page 13 of their Initial Memorandum, but Plaintiff ignored these facts in his Response.

created for them. See id. at 1273. The Court concluded that in this different factual context, it could not say that the chief violated clearly-established law when he made the decision not to create the positions. See id. ("under the unique facts of this case, we find that the general equal protection right to be free from employment discrimination did not provide [the chief] with fair and clear notice that his actions were unlawful").

In short, qualified immunity "protects from suit all but the plainly incompetent or one who is knowingly violating federal law." See Lee v. Farraro, 284 F.3d 1188, 1194 (11th Cir. 2002). Plaintiff has not established, and cannot establish, that Defendant Sprayberry was "plainly incompetent" or that he "knowingly violated federal law" when he failed to stop a city housing authority from entering into a contract with an attorney at a reasonable hourly rate, when he disallowed the use of federal funds to pay for all the legal fees requested by an attorney working for the MHA, or when he offered advice on whether federal funding can be used on new contracts. See Williams, 341 F.3d at 1269-1270 (stressing qualified immunity must be decided "in light of the specific context of the case, not as a broad general proposition").

Indeed, Plaintiff's Response lacks a single citation to any factually-similar legal authority that would have placed every federal official in Defendant Sprayberry's position, under the unique facts of this case, aware that his conduct violated Plaintiff's constitutional rights. See id. See also Evans v. Stephens, 407 F.3d 1272, 1282 (11th Cir. 2005) (reiterating that qualified immunity is only overcome if "preexisting law dictates, that is truly compel[s], the conclusion for all reasonable, similarly-situated public officials that what [the defendant] was doing violated plaintiff's federal rights in the circumstances"). Accordingly, Defendant Sprayberry is entitled to qualified immunity,

and all the claims against him should be dismissed.   See Williams, 341 F.3d at 1269-1270.

## CONCLUSION

For the foregoing reasons, as well as those contained in their Initial Memorandum, the Federal Defendants respectfully request that the Court grant their Motion to Dismiss in its entirety and dismiss all Plaintiff's claims against them.

Respectfully submitted this 21st day of April, 2006.

                              LEURA G. CANARY
                              United States Attorney


By:     s/James J. DuBois
        JAMES J. DUBOIS
        Assistant United States Attorney
        Georgia Bar No. 231445
        United States Attorney's Office
        Post Office Box 197
        Montgomery, AL 36101-0197
        Telephone: (334) 223-7280
        Facsimile: (334) 223-7418
        E-mail:  james.dubois2@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for Plaintiff, Defendant Mcinnish, Defendant Long, and Defendant Housing Authority of the City of Montgomery, Alabama.

                              s/James J. DuBois
                              Assistant United States Attorney