IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TERRY G. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | 2:05-cv-01235-MHT-DRB |
| R. EDMOND SPRAYBERRY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT
OF DEFENDANT SPRAYBERRY'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**COMES NOW** Defendant R. Edmond Sprayberry, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and submits this Memorandum in Support of Defendant Sprayberry's Motion to Dismiss Plaintiff's Second Amended Complaint. Defendant Sprayberry has filed a motion seeking clarification regarding whether the current live pleading is Plaintiff's First Amended Complaint or his Second Amended Complaint. In the event the Court deems Plaintiff's Second Amended Complaint to be the live pleading, Defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed as a matter of law to state claims in his Second Amended Complaint upon which relief may be granted.

**STATEMENT OF THE CASE**

This is a lawsuit filed by a former contract counsel for the Housing Authority of the City of Montgomery, Alabama ("MHA"), challenging the hourly rate he agreed to be paid by the MHA and seeking payment for services he allegedly provided the MHA. Plaintiff's allegations against Defendant Sprayberry apparently stem from the fact that the United States Department of Housing and Urban Development ("HUD"), acting pursuant to its statutory oversight authority,

did not authorize the MHA to use federal funds to pay legal fees that were unnecessary to the administration of federal housing programs, unreasonable, and ineligible for federal funding and required the MHA to follow appropriate procurement procedures when it awarded legal contracts involving federal funds.[1] (See generally Second Amend. Comp., at ¶¶ 14-18).

Plaintiff, who keeps changing his legal theories and statutory causes of action in response to Defendant Sprayberry's well-taken motions to dismiss, is on his third complaint in this lawsuit. On August 10, 2006, this Court dismissed Plaintiff's original complaint, which asserted claims under 42 U.S.C. § 1983 and the Federal Tort Claims Act, and gave Plaintiff leave to amend to add a Bivens claim against Defendant Sprayberry. (August 10, 2006, Order). Plaintiff's subsequently-filed First Amended Complaint failed to state any claims upon which relief could be granted, as Plaintiff relied upon the Fourteenth Amendment and the Alabama State Constitution and did not make basic allegations necessary for any Bivens claim. (Defendant's August 31, 2006, Memorandum in Support of Motion to Dismiss [First] Amended Complaint, docket no. 66). After Defendant filed a motion to dismiss Plaintiff's First Amended Complaint, Plaintiff filed a Second Amended Complaint. Defendant Sprayberry opposed the filing of this new complaint on the grounds that Plaintiff had failed to show good cause under Rule 16(b) of the Federal Rules of Civil Procedure for asserting these claims months after the Scheduling Order's deadline for filing amended pleadings (and after having been given one free

---

[1]Most of Plaintiff's allegations relate to HUD actions involving the MHA and its suspension of its Executive Director that have nothing to do with Plaintiff or the damages he seeks in this lawsuit. (See, e.g., Second Amended Comp. at ¶ 15). Plaintiff lacks standing to act as a private attorney general to challenge these actions because he suffered no "injury in fact" directly traceable to these HUD actions that affected him in a personal and individual way. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992) (discussing required elements for plaintiff to have standing).

chance by this Court to correct his fatally-flawed pleading).[2]  Plaintiff also moved to voluntarily dismiss counts one and three of his First and Second Amended Complaints against Defendant Sprayberry on the grounds that they had been accidently re-pled after having been dismissed. (Plaintiff's September 18, 2006 Notice of Voluntary Dismissal, docket no. 83).  On September 22, 2006, the Court granted Plaintiff leave to amend his complaint and his motion to voluntarily dismiss the two counts.  Based on some ambiguities in the record, Defendant Sprayberry moved for clarification regarding whether the Court's order applied to Plaintiff's First or Second Amended Complaint, neither of which have been properly served on Defendant Sprayberry.[3] Defendant's Motion for Clarification is currently pending before the Court.

To the extent Plaintiff has been given leave to amend and file the Second Amended Complaint, Defendant Sprayberry now moves to dismiss the claims in Plaintiff's Second Amended Complaint that are alleged against him.[4]  In his third and most recent complaint in this lawsuit, Plaintiff alleges that Defendant Sprayberry violated his rights under the First, Fifth, and Thirteenth Amendments of the United States Constitution, as well as 42 U.S.C. § 1983, and he

---

[2]Indeed, there is nothing in Plaintiff's Second Amended Complaint that could not have been included in his original complaint, filed in December 2005.  See Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) (failure to exercise diligence in asserting claims precluded filing of amendment after deadline in scheduling order).

[3]Defendant Sprayberry was dismissed as a party on August 10, 2006.  Neither the Amended Complaint nor the Second Amended Complaint have been served on Defendant Sprayberry as required under Fed. R. Civ. P. 4(I).  Defendant Sprayberry, by filing this Motion, preserves all defenses regarding Plaintiff's failure to properly serve him once he had been dismissed as a party from this lawsuit.  See Fed. R. Civ. P. 4(m).

[4]A response to an amended complaint is due ten (10) days after service of the amended pleading.  See Fed. R. Civ. P. 15.  Out of an abundance of caution, Defendant files this Motion while preserving his previously-raised objections to Plaintiff's request to file a Second Amended Complaint and his failure to properly serve such a complaint.

seeks, among other things, punitive damages, compensatory damages, and attorney's fees.[5] (Second Amended Comp., Second and Fourth Causes of Action, at ¶¶ 22-23).  For the reasons that follow, Plaintiff's Second Amended Complaint fails to state a <u>Bivens</u> claim against Defendant Sprayberry, and all claims against him should be dismissed as a matter of law.

<u>**ARGUMENT AND CITATION OF AUTHORITY**</u>

This Court should dismiss Plaintiff's claims against Defendant Sprayberry in his Second Amended Complaint for failure to state claims upon which relief may be granted.  A court should dismiss a complaint for failure to state a claim when, assuming the factual allegations are true, the plaintiff can prove no set of facts entitling him to relief.  <u>See Jackson v. BellSouth Telecommunications</u>, 372 F.3d 1250, 1262 (11th Cir. 2004).  Plaintiff fails to state a claim upon which relief may be granted pursuant to the implied cause of action created pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), because Congress enacted the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, as the mechanism for plaintiffs to challenge agency actions.  Plaintiff cannot bypass the APA's administrative and remedial process by invoking <u>Bivens</u> and seeking damages from an individual federal official.  <u>See Miller v. U.S. Dep't of Agric.</u>, 143 F.3d 1413, 1416 (11th Cir. 1998); <u>Wells v. Federal Aviation Admin.</u>, 755 F.2d 804, 809 (11th Cir. 1985); <u>La Compania Ocho, Inc., v. United States Forest Serv.</u>, 874 F. Supp. 1242, 1248-1249 (D. N. M. 1995).

---

[5]This Court already dismissed Plaintiff's 42 U.S.C. § 1983 claims against Defendant Sprayberry because section 1983 does not provide a cause of action against federal officials. (August 10, 2006 Order).  Accordingly, Plaintiff cannot rely on section 1983 to assert any claims against Defendant Sprayberry.  <u>See id</u>. Furthermore, Plaintiff's request for attorneys fees should be stricken and disregarded, as the law is settled that plaintiffs cannot recover attorneys fees from federal officials sued in their individual capacities under <u>Bivens</u> or any other fee-shifting statute.  <u>See</u>, <u>e.g.</u>, <u>Krines v. United States</u>, 33 F.3d 1105 (9th Cir. 1994).

Bivens is a judicially-created remedy for damages, and courts will not create a Bivens remedy when other adequate remedial provisions are available or when other special factors counsel against the creation of such a remedy. See Wells, 755 F.2d at 809 ("Bivens actions are restricted to the vindication of constitutional rights of a victim only when no equally effective remedy is available"); Geason v. Malcom, 718 F.2d 1044, 1047 & n.4 (11th Cir. 1983). As the Supreme Court has noted when limiting Bivens' remedies, the judiciary "must pay particular heed to any special factors counseling hesitation before authorizing a new kind of federal litigation." See Bush v. Lucas, 462 U.S. 367, 378 (1983). In this case, it is abundantly clear from Plaintiff's three complaints that he seeks to challenge HUD's decision not to allow the MHA to use federal funds to pay for an investigation into the MHA's suspended executive director and HUD's decision to require the MHA to follow appropriate procurement procedures when entering into contracts that involved federal funds. (Second Amended Comp., at ¶¶ 14-18). These decisions are agency actions regarding a grantee's proper use of federal funds. See 5 U.S.C. § 551(13); Lundeen v. Mineta, 291 F.3d 300, 304 (5th Cir. 2002). As set forth below, since Congress established the APA to allow aggrieved individuals to challenge agency actions, Plaintiff cannot simply ignore the APA and obtain damages from an individual official through a Bivens claim. See Miller, 143 F.3d at 1416 ("the existence of a right to judicial review under the APA is, alone, sufficient to preclude ... a Bivens action"); Gleason, 718 F.2d at 1048.

Pursuant to the APA, "[a] person suffering legal wrong because of agency action ... is entitled to judicial review," and a federal court may set aside a final agency action if it is "arbitrary, capricious, an abuse of discretion, ... or otherwise not in accordance with the law." See 5 U.S.C. §§ 702, 706. In this regard, the APA specifically authorizes reviewing courts to set aside agency actions that are found to be "contrary to constitutional right, power, privilege, or

immunity." <u>See</u> 5 U.S.C. § 706.  In making final agency actions reviewable under the APA, Congress decided against allowing plaintiffs to recover compensatory or punitive damages.  <u>See</u> <u>La Compania Ocho, Inc.</u>, 874 F. Supp. at 1248-1249.  Nevertheless, the relief provided by Congress under the APA has been held to be an adequate alternative to monetary damages.  <u>See, e.g.</u>, <u>Miller</u>, 143 F.3d at 1416 (noting that "the Constitution does not require Congress to provide comprehensive relief for violations of federal employees' constitutional rights"); <u>Custodio v. United States</u>, 866 F. Supp. 479, 482-483 (D. Co. 1994) (concluding that "the remedy provided by the APA – reversal of agency action – is a meaningful alternative to money damages").

Under settled law, a court may recognize a <u>Bivens</u> claim for damages directly under the United States Constitution <u>only</u> when: "(1) the plaintiff has no alternative means of obtaining redress; and (2) no 'special factors counseling hesitation' are present."  <u>See</u> <u>Hardison v. Cohen</u>, 375 F.3d 1262, 1264 (11th Cir. 2004) (citation omitted).  One of the special factors counseling against the creation of a new <u>Bivens</u> remedy is "an appropriate judicial deference" to the will of Congress and its assessment of whether the public interest would be served by allowing a plaintiff to recover damages.  <u>See</u> <u>id</u>.  As the Supreme Court has stated, "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional <u>Bivens</u> remedies" for damages.  <u>See</u> <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 423 (1988) (holding that plaintiffs could not use <u>Bivens</u> action to recover damages for alleged constitutional violations committed by individual agency employees who made decision to terminate plaintiff's social security benefits where APA review was available).

Following this authority regarding the limited availability of <u>Bivens</u> actions,  courts have held that when a plaintiff seeks to challenge agency action, his <u>sole</u> course of review is under the

APA and not through a <u>Bivens</u> claim against individual agency officials.  See <u>La Compania</u>

<u>Ocho, Inc.</u>, 874 F. Supp. at 1249 ("<u>Every</u> court to have confronted this issue has held that the

APA preempts <u>Bivens</u> claims predicated upon agency action") (emphasis added) (collecting

cases).  In <u>La Compania Ocho, Inc.</u>, for example, the plaintiffs sought to bring <u>Bivens</u> claims

against federal officials who were responsible for overseeing a federal forest and the use of its

timber.  See <u>id</u>. at 1244.  The plaintiffs alleged, among other things, that the defendants

discriminated against them based on their race when they withheld approval for the plaintiffs to

harvest timber, failed to allocate timber allotments properly, required competitive bidding

procedures for the harvesting of timber, improperly allowed other people to harvest timber, and

failed to enforce local hiring requirements.  See <u>id</u>. at 1247-1248.  The court held that all these

actions "fell within the purview of the APA because all can be characterized as 'agency actions,'

broadly defined as including 'the whole or a part of an agency rule, order, license, sanction,

relief, or the equivalent or the denial thereof' under 5 U.S.C. § 551(13)."  See <u>id.</u> at 1247.  In

reaching this conclusion, the court rejected the plaintiffs' arguments that the alleged racial

animus behind the actions took them outside the purview of the APA.  See <u>id</u>. at 1248.

Furthermore, the court concluded that in addition to there being an adequate remedy for

the plaintiffs under the APA, a "special factor" counseling against the creation of a <u>Bivens</u>

remedy was the grave impact that would result from allowing plaintiffs to sue for damages the

individual federal officials who take agency actions.  See <u>id</u>. at 1248.  The court noted that:

> Federal agencies regulate a vast range of business and social activity and, in doing
> so, must weigh costs and benefits when administering federal programs.  These
> decisions ineluctably impose regulatory costs on those affected, and may even
> result in serious economic dislocation or loss.  If individual officers of federal
> agencies were forced to compensate those so affected because discretionary
> agency action is later found to be unlawful, regulation would soon prove
> unworkable or inordinately expensive.

Id. at 1248.  The court concluded that Congress, in enacting the APA without authorizing monetary damages in challenges to agency actions, had struck a "careful balance between affording meaningful review and redress of agency action while maintaining the efficacy of the regulatory state."  See id. at 1249.  Accordingly, the court held that this balance should not be disturbed by the creation of a Bivens remedy for damages.  See id.

In the present case, therefore, Plaintiff cannot bypass the APA and pursue a Bivens action for compensatory and punitive damages against Defendant Sprayberry individually for alleged violations of his First, Fifth, and Thirteenth Amendment rights.  See Miller, 143 F.3d at 1416. Indeed, Plaintiff's allegations in his Complaint, First Amended Complaint, and Second Amended Complaint all challenge HUD actions that were carried out by Defendant Sprayberry in relation to HUD's oversight of the MHA's use of federal funds.  (Second Amended Comp. at ¶¶ 14-18).  These actions are agency actions under the APA because they are HUD decisions, made pursuant to its statutory duties, regarding the use of federal funds by a public housing authority.  See 5 U.S.C. § 551(13) (defining agency actions).  See also Lundeen, 291 F.3d at 304 (term "agency action" in APA is "very broad and encompasses a [federal] funding decision").

Congress specifically enacted the APA to allow aggrieved individuals to seek review of final agency actions, including claims that agency actions were carried out for discriminatory reasons.  See La Compania Ocho, Inc., 874 F. Supp. at 1247 ("the APA represents Congress' remedial response to unlawful agency action").  The "existence of a right to judicial review under the APA is, alone, sufficient to preclude a ... Bivens action."  See Miller, 143 F.3d at 1416. This is true even though the APA does not provide for compensatory damages, punitive damages, or attorneys fees, since the relief afforded by it is an adequate alternative to money damages.  See id.  Accordingly, Plaintiff must administratively exhaust his claims and file them under the APA, which he has not done, and he cannot bypass the entire APA statutory scheme

and try to recover monetary damages through a <u>Bivens</u> claim.[6]  <u>See</u> <u>id.</u>  <u>See also</u> <u>La Compania</u>

<u>Ocho, Inc</u>., 874 F. Supp. at 1247-1249 (noting that fact that "Congress refused to waive

immunity for monetary damages [in an APA lawsuit] is strong evidence of its intent to foreclose

<u>Bivens</u> relief" against individual federal officials involved in agency actions).

<b><u>CONCLUSION</u></b>

For the foregoing reasons, this Court should grant Defendant Sprayberry's Motion to

Dismiss Plaintiff's Second Amended Complaint in its entirety, dismiss with prejudice all

Plaintiff's claims in his Second Amended Complaint against Defendant Sprayberry, and award

Defendant Sprayberry his costs in this action.

Respectfully submitted this 6th day of October, 2006.

> LEURA G. CANARY
> United States Attorney
>
>
> By:    s/James J. DuBois
> JAMES J. DUBOIS
> Assistant United States Attorney
> Georgia Bar No. 231445
> United States Attorney's Office
> Post Office Box 197
> Montgomery, AL 36101-0197
> Telephone: (334) 223-7280
> Facsimile: (334) 223-7418
> E-mail:  james.dubois2@usdoj.gov
>
> Counsel for Defendant Sprayberry

---

[6]Indeed, there are administrative avenues through which the HUD actions challenged in Plaintiff's three complaints could have been appealed.  Plaintiff did not utilize them.

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for Plaintiff, Defendant Mcinnish, Defendant Long, and Defendant Housing Authority of the City of Montgomery, Alabama.

s/James J. DuBois
Assistant United States Attorney
