

# Montgomery HOUSING Authority

C. MICHAEL McINNISH
EXECUTIVE DIRECTOR

1020 BELL STREET • MONTGOMERY • ALABAMA • 36104-3006
(334) 206-7200 • (334) 206-7222 Fax • MHAToday.org

THOMAS TAYLOR
CHAIRMAN

26

July 22, 2004

Hon. Terry G. Davis
Davis & Hatcher, LLC
4183 Carmichael Road, Suite B
Montgomery, AL 36106

Dear Mr. Davis:

I am in receipt of your letter of July 21, 2004, wherein you related to me some concerns raised by Commissioners concerning legal representation. You indicated that the board had directed me to answer questions and provide information. The responses are below:

1. **"Why are there three separate firms representing the Board of Commissioners and the Housing Authority?"**

The housing authority is one legal entity. I am aware that since about 1990 there has always been an MHA attorney and an attorney representing the MHA in evictions and collections. After the 2001 HUD review, the board wanted separate counsel for board purposes. There was an RFP prepared for this position. In Section D, (the estimated hours section) described board activity, including meeting at least once a month. It also described the possible need for meeting with committees which may require assistance of counsel. The estimated time was four to eight hours per month. This position would also include preparation for board meetings, including reviewing policies to be presented. The MHA attorney position was via a separate RFP. This RFP was to "represent the MHA in general legal matters." The estimated hours described the position as follows: to do research, answer inquiries and to provide memorandums as requested. Time was estimated to be four to eight hours per month.

The three RFP's were prepared and mailed to law firms. Responses came back, were evaluated and reviewed by myself and several board members, and then provided to a board committee. The chairperson of the committee made a recommendation and then a motion at the December 2002 board meeting as follows:

McInnish 296



LUAN LONG, Vice-Chair   RICHARD N. BOLLINGER   JOHN F. KNIGHT Jr.   ANNE B. UPCHURCH
BETTIE BARNETT          CLIFFORD HOLMES        RON DRINKARD         DAVID S. BARLEY, II

Exhibit 80

"The Personnel Committee chairperson then referred to the Request for Proposals (RFP) received for the Attorney positions. These had been evaluated and reviewed by several board members. The Personnel Committee recommends that the Montgomery Housing Authority contract with Attorney Terry Davis of the Law Firm of Davis & Hatcher, LLC to be the Attorney for the Board. ......... Attorney Davis will attend all board meetings and be available to answer any questions the board may have.

"The Personnel Committee also recommended the Montgomery Housing Authority contract with Attorney (Charles Stewart) Bradley Arant of the Law Firm of Brantley (sic) Arant Rose & White, LLP to represent the Authority in all legal matters.

"The Personnel Committee further recommended the Montgomery Housing Authority contract with Attorney John Holloway of the Law Firm of Holloway, Elliot & Moxley, LLP to be the Authority's Evictions/Collections attorney."

Resolution No. 5019 was then passed which states:

"BE IT RESOLVED by the Board of Commissioners of the Housing Authority of the City of Montgomery, Alabama that based on the foregoing recommendations, the Executive Director of the Montgomery Housing Authority is hereby authorized to enter into suitable contracts with 1) Attorney Terry Davis of the Law Firm of Davis & Hatcher, LLC to be the Attorney for the Board; 2) Attorney Bradley Arant of the Law Firm of Bradley Arant Rose & White, LLP to be the Attorney for the Montgomery Housing Authority and, 3) Attorney John Holloway of the Law Firm of Holloway, Elliott & Moxley, LLP to be the Authority's Evictions/Collections attorney. Commissioner Upchurch seconded the motion and the 'AYES' and 'NAYS' were as follows: AYES: Richard N. Bollinger, Anne B. Upchurch, Thomas Taylor, Eddie Davis, Bettie Barnett and LuAn Long. NAYS: None."

Therefore the answer to the first question is simply that is what the board suggested, what was advertised, what was responded to, what was presented to the board through the committee, and what was passed in a resolution.

## 2. "Why do you draw a distinction in litigation and other matters between the Board of Commissioners and the Montgomery Housing Authority?"

There are many facets of the work of a housing authority, including ours. Litigation, not including evictions and collections, is usually handled through our insurance company, as we turn over all claims to them as required. The responsibility of the board is to set policies, and therefore there is not litigation involved in the making of policies and checking to be sure they are followed.

McInnish 297

There are also other duties of the attorney present at the board meetings: being sure the By Laws are followed, answering questions that arise relating to Rules of Order, and giving opinions on policies and other issues which arise in the normal course of business.

### 3. "Why does Bradley, Arant, Rose & White not represent the Board of Commissioners?"

That law firm represents the Montgomery Housing Authority, which is composed of Commissioners and Staff. That law firm therefore does represent the board in those areas other than attending board meetings as described hereinabove.

### 4. "What specific work is being done by each of the three law firms employed by the Montgomery Housing Authority? Provide complete invoices from all three law firms for all work, whether paid by MHA or an insurance carrier for past two years, through June 30, 2004."

Mr. Stewart is consulted on MHA issues as needed, including advice on personnel issues, research on legal issues relating to the day to day operations of the MHA, and other general legal work as requested.

Mr. Moxley (Holloway) continues to represent the MHA in eviction and collection cases.

Mr. Davis continues to represent the board by attending board meetings, by reviewing policies to be presented to the board, and by being consulted on policy issues, some of which have been returned by Mr. Davis. He stated that the question dealt with day to day activities and should be referred to Mr. Stewart.

Invoices will be gathered that have been submitted to the MHA by these law firms, but will not be available until after the state convention next week. Our accounting department is converting to the new computer program, HUD is here for some reviews, we have just finished the audit, and many staff are going to be at the convention next week. I am enclosing a copy of the payments that have been made to Mr. Davis and Mr. Stewart with this response.

I have no control over the invoices sent and paid by the insurance company and you will need to contact Mr. Stewart and/or the insurance company for this information.

McInnish 298

5. "Is there a conflict of interest in Bradley, Arant, Rose & White representing both the Montgomery Housing Authority and insurance carriers for the Montgomery Housing Authority?
(a) If the Board of Commissioners or Montgomery Housing Authority directs Bradley Arant, Rose & White to take action contrary to instructions by the insurance carrier, whose instructions will the firm follow?"

I have sent Mr. Stewart a letter (copy attached) requesting a response to this general question. It is my understanding that Mr. Stewart's client is the MHA. He is paid by the insurance company for his work in representing us. I think that this issue has been answered in the past by the Bar Association. I have just received a faxed response from Mr. Stewart which answers this question. I am attaching it to this letter for your review.

As to the issue in (a), the answer would again have to come from our insurance company after reviewing the contract for coverage and other documents. I have to assume that our board would not direct the attorney to take an action which is in conflict with the insurance contract. You will need to get the answer to this inquiry from Mr. Stewart and/or the insurance company. Perhaps you can supply me with a realistic hypothetical and I will be more than willing to review it and try to give my opinion at that time based upon what I understand the law to be.

6. "How much has each law firm been paid since being employed by the Montgomery Housing Authority? This includes payments from insurance carriers for work performed relating to any and all Montgomery Housing Authority matters."

Enclosed are print outs of payments made to date to Mr. Davis and to Mr. Stewart. Again, I have no record of billing and/or payment relating to the insurance companies. You will need to get this information from the insurance company or from Mr. Stewart.

7. "What has the Montgomery Housing Authority budgeted for legal expenses and litigation in the past?"

Our budgeted amount for legal fees is $30,000.00. Last year the budget amount was $24,000.00. We have to do a budget revision if the amount exceeds this budgeted amount. That is the situation we faced when you entered the lawsuit, as the HUD Litigation Guide had to be followed and I had

McInnish 299

to have HUD approval before paying more than the ceiling. As I told you earlier in the week, HUD has approved it subject to me informing them what budget the excess would be paid from. That letter was sent to HUD yesterday morning. We take court costs from another budget item.

8. "Why was Bradley, Arant, Rose & White contracted to handle litigation involving appointments to the Board rather than the Board's counsel?

   (a) How much was originally paid to Bradley, Arant, Rose & White to initiate litigation involving the Montgomery City Council?
   (b) How is Bradley, Arant, Rose & White currently being paid for the City Council litigation?"

The firm was the law firm for the Montgomery Housing Authority representing the housing authority in general legal matters. A resolution was passed authorizing the filing of a proper legal action by the board. The filing of the action did not involve a question about policy or a question about a parliamentary issue. Prior to insurance coverage and the payments to Mr. Stewart being handled through our carrier, Mr. Stewart was paid just the same as you, by billing and check. Those payments are listed in the attachment hereto and the specific bills will be submitted after next week when accounting can gather them and make copies.

You were consulted prior to the filing to get your input and ideas so you would be aware of the action in case there was a question from the board. Notwithstanding some statements to the contrary you were involved in the preparation and filing of the lawsuit, and took on an even greater role after the board meeting on April 20, 2004. You, Mr. Stewart and I met on the following day and discussed the new amendment that you proposed to the board the evening before. At the same meeting you told me that I was "HUD's golden boy", but I was not going to sabotage suits. After that statement was made, I have stayed out of any of the discussions about the lawsuit unless specifically requested. I have been representing the MHA for many years in many areas and have never taken any action or presented any idea which I thought would sabotage a lawsuit. I have always tried to represent the MHA in a manner which will lead to success, not failure.

I will be at the AAHRA state convention next Monday through Thursday. After the requests were made at the board meeting Tuesday evening, I worked on a Memorandum yesterday and mailed some materials to each board member. I am enclosing a copy for your files. Those were mailed out prior to receiving your

McInnish 300

letter, so I am sending each board member a copy of your letter and this response along with another Memo about the information they received.

I will have several people from Washington here the week of August 2, and therefore will not have much time that week to meet and discuss these issues. I will be available the week of August 9 to meet with you. Please think about inviting Mr. Taylor and Mr. Stewart to that meeting.

Sincerely,

C. Michael McInnish
Executive Director