MINUTES OF REGULAR MEETING OF THE BOARD OF COMMISSIONERS OF THE HOUSING AUTHORITY OF THE CITY OF MONTGOMERY, ALABAMA, HELD ON TUESDAY, NOVEMBER 16, 2004

Chairman Taylor, called the meeting to order and, upon roll call by the Secretary/Treasurer, those present and absent were as follows:

PRESENT: Thomas Taylor
LuAn Long
Richard N. Bollinger
John F. Knight
Anne B. Upchurch
Bettie Barnett
Ron Drinkard
David S. Barley, II

ABSENT: Clifford Holmes

Attorney Terry Davis was present at the meeting.

Chairman Taylor addressed the first order of business, viz., **Agenda Item No. 2, Approval of the Agenda for the November 16, 2004 board meeting.** He then informed the board that he would like to offer a motion to amend the agenda to include an Executive Session as Agenda Item No. 15. This said, the Chairman offered the following motion and moved its adoption:

RESOLUTION NO. 5254

BE IT RESOLVED by the Board of Commissioners of The Housing Authority of the City of Montgomery, Alabama that the Agenda for the November 16, 2004 board meeting, as

mailed each Commissioner, be and is hereby approved, as amended, to include an Executive Session under Agenda Item No.15 followed by Agenda Item No.16 Adjournment.

There were no comments of objections offered.

The Chairman inquired if he needed a second and a vote on the motion.

Attorney Davis informed him that since there were no objections offered, he did not need a second.

The Chairman then called for a vote. The motion was voted on and passed by the board this sixteenth day of November 2004.

The Chairman proceeded to **Agenda Item No. 3, *Approval of the minutes of the Special meeting of the Board of Commissioners of the Montgomery Housing Authority held on October 14, 2004*** and asked if there were any comments or questions. There were none.

Whereupon, Commissioner Knight offered the following motion and moved its adoption:

RESOLUTION NO. 5255

BE IT RESOLVED by the Board of Commissioners of The Housing Authority of the City of Montgomery, Alabama that the minutes of Special Board Meeting held on October 14, 2004 are hereby approved, as mailed to each Commissioner.

Ms. Sledge had to leave on receiving news that her grand daughter was ill. Mr. McInnish then asked if the board had any questions on the authority reports.

There were no questions asked or clarification sought on these reports.

The Chairman then asked the Executive Director to proceed with **Agenda Item No. 6, Director's Report**. Mr. McInnish commenced with his report to the board as follows: 1. The board was informed that the Director's report had been mailed out to the board a week ago. 2. He then welcomed and introduced Ms. Kristin Cunningham, a senior at Auburn University in Montgomery, currently working as an Intern in the Public Relations department. Ms. Cunningham has been asked to work on the MHA News Letter and on getting the Rosa Parks apartment ready. 3. Mr. McInnish then referenced a copy of a fax entitled "LA New Orleans, Change in projects" that he had handed to the board. This reading material described what New Orleans is going through and it closely relates to some of the issues the Authority is currently facing at Riverside Heights. The other handout had to do with Community Modernization Express, a funding mechanism that the Authority could use to acquire an advance on Capital Funds in order to accomplish some modernization efforts throughout public

housing. 4. Mr. McInnish read aloud the Letter of Intent, to be signed by the Mayor and by him, in regard to the disposition of Riverside Heights, as follows:

> The City of Montgomery, Alabama plans to acquire the real property known as Riverside Heights from The Housing Authority of the City of Montgomery and thereafter offer that property to the United States Air Force for use by Maxwell Air Force base.
> The Housing Authority, the City and the Air Force have, as their primary objective to do what is in the best interest of the residents at Riverside.
> The final disposition must have the approval of the Housing Authority and the appropriate HUD agencies.
> This Letter of Intent is not intended to constitute a binding agreement. Disposal of Riverside Heights is contingent to the approval of appropriate HUD agencies. The City understands that the Air Force may require access to this property to conduct testing and evaluations prior to the transfer to the Air Force and the City shall provide the Air Force reasonable access to the property to complete such testing and evaluations.
>
> Sincerely,
>
> Bobby N. Bright
> Mayor, City of Montgomery

He then pointed out that this letter would require his signature to show concurrence and had, therefore, been brought before the board at the October board meeting when the board had requested to include language to show that the parties concerned would be working in the best interest of the residents at Riverside Heights. The board's request had been complied with and the letter amended, to include language that affirmed that the primary objective of the City, the Montgomery Housing Authority and Maxwell Air

Force would be to do what is in the best interest of the residents of Riverside Heights, as recommended by the board.

Mr. McInnish then sought board approval authorizing him to sign this document on behalf of the Montgomery Housing Authority.

Commissioner Drinkard offered the following motion and moved its adoption:

RESOLUTION NO. 5257

BE IT RESOLVED by the Board of Commissioners of The Housing Authority of the City of Montgomery, Alabama that the Executive Director, C. Michael McInnish, be and is hereby authorized to sign the Letter of Intent, as hereinabove stated, for and on behalf of the Montgomery Housing Authority, for the disposition of Riverside Heights.

The motion was seconded by Commissioner Long, voted on and passed by the board this sixteenth day of November 2004.

The Executive Director then proceeded with his report, as follows: **5.** The Montgomery Housing Authority' Housing Counseling grant application was funded for $15,000. **6.** A request for funds in the amount of $15,260 was received from the STEP (Strategies To Elevate People) Foundation to

At this time Commissioner Barley requested that since the board did not have the 2005 budget with them would Ms. Moseley quote the figures for each item.

Ms. Moseley had copies of the 2005 budget that were given to the board at this time. She then proceeded, as follows: 2. Income in the 2006 budget was down a little as dwelling rental was down. 3. Administrative expenses were about the same for both years. 4. There was a difference of approximately $20,000 in Services. 5. Utilities were down just a little in 2006. 6. Ordinary Maintenance and Operations were projected to be a little higher in 2006. 7. Protective services remained about the same. 8. Other General expenses went up a little in 2006 and this is because of Employee benefits - when salaries go up, employee benefits go up. Overall, the operating expenses were projected to be up by about $1 million and the Operating subsidy showed a $300-400,000 gain. With this Ms. Moseley concluded her report and asked if there were any other questions.

Commissioner Knight pointed to Tenant Services and stated that he had always advocated that more money be budgeted for this item. He then sought explanation of what the $65,000 shown under this line item was for. Ms. Moseley explained that the Authority receives $25 per occupied

unit, totaling approximately some $50-52,000 toward resident participation expenses that is to be expended to help the resident councils and that the $65,000 included a carry over from what was not expended last year.

Commissioner Barley stated that this amount was $85,000 last year.

Ms. Moseley explained that at Commissioner Knight's request, $20,000 had been added in the budget for Tenant Services last year and that she had not included it in the 2006 budget.

Commissioner Knight reiterated that he had always emphasized the need to have some of the monies invested in tenant programs and activities. Ms. Moseley informed him that she could make some adjustments to accommodate his request and this would be brought back to the board under a budget revision.

Commissioner Knight then stated that his other concern is security and police protection for public housing. He realized that monies are budgeted for the Authority investigators but there are only five officers and he did not believe that proper security could be provided for public housing with just five officers. What he would like to see happen is a meeting with the board and the new police chief, who will be taking office shortly, so that

through the Authority reports, and that is to congratulate the maintenance department. This time their report showed that they completed 4,300 work orders. They have been averaging about 2,000 and, therefore, if this was not a typographical error, he would like to commend and congratulate the maintenance department for doing an outstanding job.

The Executive Director confirmed that there was no typographical error. The board then applauded the maintenance department.

Vice-Chair Long also commented that the idea of doing the clean up all at one place at one time had been remarkable. The curbs and gutters all look real clean and she commended those concerned for doing an excellent job as this had certainly improved curb appeal.

The Chairman then proceeded to **Agenda Item No. 14, Public Comments (from Sign-up sheet), if any.**

No one had signed up to make a presentation at this meeting.

Chairman Taylor then proceeded to **Agenda Item No. 15, Executive Session,** and at this time he declared the regular meeting as convened and the board went into Executive Session at approximately 6:10 P.M.

At approximately 7:35 P.M., the Board came out of Executive Session and the Chairman reconvened the regular monthly meeting. Let the record show, Vice-Chair LuAn Long was not present at this time.

Chairman Taylor informed those present that certain matters had been discussed in Executive Session but first, the board would need to vote on the direction in which to proceed with the current litigation.

Attorney Davis interjected stating that it is his recommendation that the board appeal the decision of the Circuit Court and that the board would need to authorize this action.

Whereupon Commissioner Barley offered the following motion and moved its adoption:

RESOLUTION NO. 5265

BE IT RESOLVED by the Board of Commissioners of The Board of Commissioners of The Housing Authority of the City of Montgomery, Alabama that approval is hereby accorded for the Authority to appeal the Quo Warranto action as it related to the removal of the five members from the Board of Commissioners of the Montgomery Housing Authority as named in the Order issued by Judge Gene Reese.

Commissioner Barnett seconded the motion. The motion was voted on and failed with five Commissioners, viz.,

Drinkard, Bollinger, Upchurch, Taylor and Knight voting against it.

Attorney Davis then informed the Board that the stay would remain in place although there was the question of whether or not the City would embrace the stay.

Chairman Taylor then asked if there was any other business to bring before the board.

Commissioner Knight stated that based on conversations held in Executive session, he had a motion to offer. He then offered the following motion and moved its adoption:

RESOLUTION NO. 5266

BE IT RESOLVED by the Board of Commissioners of The Housing Authority of the City of Montgomery, Alabama that the board hereby suspends the Executive Director, until further notice, with pay, pending a hearing.

(For record purposes, please note that the language "with pay, pending a hearing" has been added in the motion offered, upon clarification by Commissioner Knight, during discussion.)

Commissioner Barnett seconded the motion.

Chairman Taylor announced that the motion had been moved and properly seconded and asked if there was any discussion.

15883

Commissioner Upchurch requested Commissioner Knight to spell out what the board would need to do.

Commissioner Knight responded that there would need to be a hearing to enable the Executive Director respond to the information that had been presented to the board and thereafter the board will determine what action needs to be taken. Commissioner Knight also clarified that this would be a suspension with pay, pending a hearing.

Commissioner Upchurch asked, "so this is nothing final?" To which Commissioner Knight responded, "No it is not final."

Commissioner Drinkard then questioned that if the motion were to pass, who would be filling in, in the interim.

Commissioner Knight responded that if the motion passes, the board could then address that issue.

During a brief pause, Attorney Davis reminded Chairman Taylor that the board needed to vote on this.

Chairman Taylor then asked if there was any further discussion. There was none. The Chairman then called for a vote and, for the record, the AYES and NAYS were as follows:

AYES: Thomas Taylor
    John F. Knight
    Anne B. Upchurch
    Bettie Barnett
    Ron Drinkard
    David S. Barley, II

NAYS: Richard N. Bollinger

The Chairman declared the motion properly moved, seconded and passed this sixteenth day of November 2004.

Commissioner Knight then offered another motion, as follows, and moved its adoption:

RESOLUTION NO. 5267

BE IT RESOLVED by the Board of Commissioners of The Housing Authority of the City of Montgomery, Alabama that Mr. Lane Boggs be asked to serve as the Interim Executive Director in the absence of the Executive Director.

Commissioner Drinkard seconded the motion.

The Chairman asked if there was any discussion.

There was none.

The Chairman then called for a vote. The motion was voted on and passed this sixteenth day of November 2004.

Chairman Taylor then addressed the Executive Director and stated that it is the consensus of the board that he is suspended, until further notice, with pay and that Mr. Boggs will serve in the interim, until such time as the board takes further action.

McInnish 605

At this time, Commissioner Upchurch inquired if Mr. Boggs had agreed to serve.

Attorney Davis responded stating that this was a matter that could be taken up later. He then informed Chairman Taylor that there are some instructions that he would need to give Mr. McInnish regarding keys, and such things.

Chairman Taylor then addressed Mr. McInnish and stated that given the action taken by the board at this time, he should, effective immediately, submit his keys to the office and dismiss himself from the premises, until the hearing is held.

Mr. McInnish asked if he could get some of his things from the office and clarified that he had a lot of personal items that belong to him.

Chairman Taylor responded that this could be arranged and then called upon Chief Davis to work with the board in regard to providing an appropriate time for Mr. McInnish to get his personal effects out of his office.

Mr. McInnish indicated that would be no problem.

Attorney Davis then further informed Chairman Taylor that he did not mention the other equipment that is owned by the Montgomery Housing Authority such as the blackberry, if it housing authority equipment.

15886

Mr. McInnish responded confirming that the blackberry did belong to the housing authority and that he would turn it back in as soon as he gets his personal things.

Attorney Davis informed Mr. McInnish that he could not set the conditions since the board had asked that he turn these items over immediately, without conditions. He reiterated that the blackberry is housing authority property and this is what he has been directed to do.

Mr. McInnish handed over the blackberry and pointed out that they would not be able to get his addresses and telephone numbers, and anything like that.

Attorney Davis stated that these would be preserved.

Mr. McInnish stated it was okay so long as these are preserved.

Attorney Davis again stated that all his personal items would be preserved and at the appropriate time, with the escort of Chief Davis, he would be allowed to retrieve his personal items.

Mr. McInnish did not respond.

Chairman Taylor then asked if there were any other issues for the board.

There being no further business to come before the board, the Chairman declared the board meeting adjourned.

SIGNED: _____
Lemuel E. Boggs, Jr.
Interim Executive Director

APPROVED: _____
Thomas Taylor, Chairman

McInnish 608