IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TERRY G. DAVIS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 2:05cv1235MHT |
| ) | |
| ) | |
| R. EDMOND SPRAYBERRY, et al. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDNATS MCINNISH AND SPRAYBERRY'S MOTIONS FRO SUMMARY JUDGMENT**

**Statement of the Facts**

On October 31, 1992, Plaintiff, an African-American citizen, submitted a response to a Request for Proposals for legal services from the Housing Authority of the City of Montgomery, Alabama (MHA). Plaintiff learned of the RFP from Clifford Holmes, who, the time was serving as chairman of the MHA Board of Commissioners. DefendantHolmes told Plaintiff that MHA wanted to hire an African-American attorney to serve as general counsel for the Board. (Davis Depo. pp.    ) Following the submission of his proposal, Plaintiff was contacted by Defendant C. Michael McInnish, who was serving as the executive director for MHA. The hourly rate proposed by Plaintiff to do the work was $185 /hr for out-of-court and $195/hr for in-court.   Defendant McInnish informed Plaintiff that the Board had only authorized him to pay attorneys working for MHA $175 /hr. He further indicated that $175 was all he would be able to agree to. Taking Defendant McInnish at his word and relying on his representation, Plaintiff agreed to become counsel for the MHA Board of Commissioners and executed a contract at $175 /hr.

Charles Stewart and members of the law firm of Bradley, Arant, Rose and White were also hired by McInnish. McInnish, however agreed to pay DefendantStewart $270 /hr, Scott B. Smith $240 / hr and Timothy Cummins $180 /hr.   These individuals are all white males with many year of less experience that Plaintiff.   John Knight, Bettie Barnett and Thomas Taylor, who served as Commissioners on the MHA board all testified that they were unaware that McInnish was paying Plaintiff a lower rate that Stewart and members of his law firm.  They also testified that McInnish was not authorized to pay different rate to the law firm and certainly not pay their African-American attorney a lower rate.

On November 16, 2004, the Housing Authority for the City of Montgomery voted by a vote of 6 to 1 to suspend, with pay, its executive director Defendant C. Michael McInnish, pending an investigation into his activities as executive director.  The suspension was based  on the fact that DefendantMcInnish withheld information from MHA Board of Directors in an effort to prevent the City of Montgomery from purchasing a portion of the Riverside Heights Housing Development to be used in a land exchange with  Maxwell Air Force Base.  McInnish refused to transmit an  from Mayor Bobby Bright to purchase the property for $12 million.  McInnish's suspension was also based upon the fact that he had made an undisclosed trip with board member Richard Bollinger to Washington DC at the expense of the Montgomery Housing Authority.

On the day following McInnish's suspension, November 17, 2004,  the  MHA Board Chairman, Thomas Taylor,  directed the Plaintiff, who was employed as general counsel for, to conduct  a full  investigation into certain activities of  DefendantMcInnish as executive director.

 On  or about December 15, 2004, Plaintiff Davis presented his findings to interim executive director  and on December 23, 2004,  ten (10) charges of misconduct and insubordination were presented against DefendantMcInnish.  Based upon the evidence presented

by Davis to the interim executive director, a recommendation was made to terminate the employment of C. Michael McInnish as executive director and a disciplinary due process hearing was set. On November 17, 2004, Defendant McInnish contacted Defendant Sprayberry to solicit his assistance because he had been suspended by the Housing Authority. This occurred before any formal notification of the suspension had been sent to Defendant Sprayberry's office. On the same day, Sprayberry telephoned Board Chairman Taylor to inquire as to why DefendantMcInnish was placed suspended. Taylor informed Sprayberry about the 6 to 1 vote and that the matter was under investigation. Sprayberry was told also contact MHA general counsel who would answer any specific questions. Defendants Sprayberry and McInnish are known to have a close friendship. McInnish is further known to have considerable influence within the U.S. Department of Housing and Urban Development. Defendant Sprayberry, using his authority, as Director for Public Housing and Urban Development conspired with McInnish to both use their influence with officials at HUD to impede the investigation of McInnish and terminate the MHA's presentation of charges against McInnish.

On November 18, 2004, Defendant Sprayberry at the urging of Defendant McInnish and Defendant Lu An Long, began a series of unprecedented, putative and illegal actions designed to impede and terminate the authorized investigation by Plaintiff into the activities of Defendant McInnish. Sprayberry's actions include: (a) the immediate withdrawal of local authority from the Housing Authority to conduct business and make fiscal and procurement decisions; (b) the interference with the Housing Authority's exclusive authority to take disciplinary actions against the executive director; (c) ordering that special board meetings be called to reconsider the suspension of McInnish; (d) collaborating with board member Lu An Long and Defendant McInnish to frustrate and impede the efforts of the Board majority to have a disciplinary hearing

on charges against C. Michael McInnish; (e) by refusing to authorized payment of legitimate fees and expense which were overdue in relation to the investigation of C. Michael McInnish in an effort deter Plaintiff from continuing to investigate and present charges at the scheduled disciplinary hearing on behalf of the MHA; (f) by requiring that the Housing Authority terminate the services of Plaintiff before the disciplinary hearing against C. Michael McInnish could be held; (g) interfering with local MHA business by overrunning, without cause, MHA's decision on December 21, 2004 to continue the employment of Plaintiff as general counsel for the MHA so that the investigation and presentation of charges against C. Michael McInnish would continue; (h) by refusing recognized the employment of a duly appointed hearing officer to conduct the disciplinary hearing and refusing payment of expensed for the hearing officer (g) forcing the Montgomery Housing Authority to employ new counsel so serve as its local counsel; (h) improperly communicating with and providing to Defendant McInnish, confidential correspondence between the Montgomery Housing Authority and the his (the Director's) office; (i) directing the Montgomery Housing Authority to hire a new hearing officer and refusing to approve the contract of the hearing officer initially employed because of his race (African-American), even though the hearing officer was selected from three applicants pursuant to HUD guidelines; (j) by imposing excessive oversight procedures and interfering with the day-to-day operations of the Montgomery Housing Authority without justification; (k) forcing the involuntary termination of Plaintiff's services as counsel for the Montgomery Housing Authority by refusing to authorize payments for services rendered covering a five (5) month period.

    Defendant Sprayberry refused to authorize payment to Plaintiff of $25,000 for services rendered and services which have been fully performed. Said invoices were approved for payment by the Chairman of the Board of Commissioners. Defendants McInnish and Sprayberry

were fully aware discriminating against Plaintiff by reason of his race by refusing to pay him at the same hourly rate said defendants paid white attorneys working for MHA with less qualifications than Plaintiff for the same work. Said payments were authorized and approved by McInnish and Sprayberry.  In a letter dated January 12, 2005, Defendant Sprayberry overruling the MHA's board of commissioners decision on December 21, 2004 to continue the employment of Plaintiff as general counsel and forcing the MHA to employ a white male attorneys with less experience.

The Chairman of the MHA Board of Commissioners promptly notified Regional Director Sprayberry of DefendantMcInnish's suspension the day following the suspension and communicated with Sprayberry by letter regularly. Immediately upon learning of McInnish's suspension, Sprayberry began efforts to impede the investigation of McInnish.  Sprayberry refused several requests from the Board chairman to come to Montgomery and further refused to contact General Counsel for information regarding the investigation. DefendantSprayberry sought to retaliate against the MHA by immediately placing total procurement restrictions on the MHA without cause or explanation.  Sprayberry refused to authorize the expenditure of any expenses associated with the investigation of former executive director McInnish. DefendantMcInnish had become a close friend of DefendantSprayberry.   DefendantSprayberry often requested McInnish to serve on various committees and conduct various seminars at HUD-related events.

At every turn DefendantSprayberry used his authority to impede the investigation of McInnish and the presentation of charges in support of a recommendation of termination. The only avenue available to the MHA Board of Commissioners to handle a serious disciplinary matter involving the executive director was to authorize its General Counsel to conduct an

investigation, and through its Interim Executive Director, present charges, if warranted.  If a recommendation for termination was presented,  (which it was) the next step was to give DefendantMcInnish a due process hearing with an opportunity to respond to the charges so that the Board of Commissioners could take appropriate disciplinary action, if any action was warranted.  The MHA Board followed its Personnel Policy and the policies of the Montgomery City County Personnel Board.   It was this process Edmond Sprayberry continuously sought to disrupt and personally inject himself into for the benefit of McInnish.

DefendantSprayberry's interference with the MHA's Board's effort to discipline its executive director was extraordinary and unprecedented. Sprayberry even recommended his own process.  DefendantSprayberry went so far as to disapprove the Board of Commissioners vote to re-employ the

undersigned counsel (me) at the end of my contract.  The investigation was ongoing and the

undersigned counsel had the lead role in the preparation and presentation of evidence to support the charges through the interim executive director.  Those facts notwithstanding, Sprayberry refused to allow the MHA to re-hire me.  In a deposition, Sprayberry actually perjured himself by initially denying he blocked the Montgomery Housing Authority's efforts to rehire undersigned counsel until he was presented with a letter he signed dated January 12, 2005, instructing the MHA not to execute my contract. (Sprayberry depo. pp. 139, 142, 156-158 (Exhibit-C)

Defendant Sprayberry's actions against  Plaintiff and the MHA did not stop there.  He forced MHA to change its evaluation process  and create a new process to insure that Plaintiff and his firm would not score highest in the process. Plaintiff and his firm  previously scored highest among firms that were evaluated for the job using the same process that had been used in

previous years. Defendant Sprayberry required MHA to use a person, George B. Chabot, from the HUD Atlanta Regional Office, Region IV to create the new evaluation process. (See Exhibit-D) According to an email from an employee in the MHA office to DefendantSprayberry's office, the new evaluation process had never been taught at any HUD conference and was not a part of the HUD Procurement Manual. Exhibit-E)

Defendant Sprayberry retaliation is evident from an official letter dated October 31, 2005, sent by Defendant Sprayberry to MHA in which Sprayberry makes knowingly false administrative findings against the MHA Board of Commissioners in further retaliation against the Board. (Exhibit-F) For example Sprayberry wrote on page 3: "As early as April 2004, Defendant McInnish complained to the Board about discrimination against him, yet the Board took no action." However, the fact is McInnish never filed a complaint of discrimination with the MHA Board. (See, Exhibit G, April 23, 2004 memo) In his deposition, when Defendant Sprayberry was presented with the April 23, 2004 memo he claimed was the *complaint* "about discrimination", Sprayberry refused to provide an answer to the question about his finding being "in error". (Exhibit-H, Sprayberry Depo. pp. 195-201) Another example of a false finding is Sprayberry's statement on the second page of ExhibitF, where he wrote: "You failed to afford Defendant McInnish the opportunity for a hearing." Nothing could be further from the truth. Defendant Sprayberry had been informed about the hearing and was constantly attempting to impede the process for conducting the hearing. He actually informed the MHA Board Chairman that he would be attending the hearing, which was scheduled for January 19, 2005. (See, Exhibit-I) Defendant Sprayberry also selectively gathered information favorable to McInnish for inclusion in his October 31, 2005 report. This report is evidence that Sprayberry was

attempting to cover his tracks for prior retaliatory actions against MHA and he was setting the stage to control future actions of the MHA.

The invoice for expenses of MHA's General Counsel which DefendantSprayberry refused to approve, relating to the investigation of former executive director McInnish, totaled $25,000.00. Even though Sprayberry's approval was not required as provided in the HUD Litigation Handbook 1530.1, Rev 5, Ch.3.3 (3) <u>Litigation Services Contract With Private Attorneys</u>, Sprayberry wrongfully used his authority to prevent the payment. Sprayberry's approval was not required for payments that do not exceed $100,000. He misled the MHA to ensure Plaintiff would not be paid.

            Respectfully submitted,

            /s/ Dwayne Brown
            Dwayne Brown
            ASB-9396-B59D
            Attorney for Plaintiff
            **Law Office of Dwayne L. Brown, PC**
            Post Office Box 230205
            Montgomery, Alabama 36123-0205
            Telephone: (334) 277-3757
            Fax: (334) 277-3613
            E-Mail: dbrown@dbrownatty.com

            /s/ Terry G. Davis
            Terry G. Davis, Esq.,
            ASB-1565-A64-T
            **Davis & Hatcher, L.L.C.**
            4183 Carmichael Road, Suite B
            Montgomery, Alabama 36106
            Telephone: (334) 270-0592
            Fax  : 334) 270-0362

OF COUNSEL:

Hon. Ernestine S. Sapp
**Gray, Langford, Sapp, McGowan, Gray & Nathanson**
P.O. Box 830239
108 Eastside Street
Tuskegee, Alabama  36083-0239
Telephone:  (334) 727-4830
Fax:  (334)  727-5877

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following by placing the same in the U.S. Mail, first class, postage prepaid, properly addressed as follows on this the  26th day of January, 2007.

M. Wayne Sabel, Sr., Esq.
Sabel & Sabel
Hillwood Office Center
2800 Zelda Road, Suite 100-5
Montgomery, AL 36106

Dorman Walker, Esq.
Balch & Bingham
Post Office Box 78
Montgomery, AL 36101

Charles A. Stewart, III, Esq.
Bradley Arant Rose & White, LLP
401 Adams Avenue, Suite 780
Montgomery, AL 36104

Micheal Cohan, Esq.
Hill, Hill, Carter, Franco, Cole & Black
Post Office Box 116
Montgomery, AL 36101-0116

James DuBois, Esq.
U.S. Attorney's Office
Post Office Box 197
Montgomery, AL 36101

/s/Terry G. Davis
 Of Counsel