# Exhibit # 1

PLAINTIFF'S
EXHIBIT

# Davis & Hatcher, L.L.C.

ATTORNEYS AND COUNSELORS
P.O. Box 230907
Montgomery, Alabama 36123-0907

G. Davis
(334) 270-0592
E-Mail Address:
terrydavis@mindspring.com

Writer's Office:
4183 Carmichael Road, Suite B
Montgomery, Alabama 36106
Facsimile: (334) 279-0362

## RESPONSE TO THE
## REQUEST FOR PROPOSAL
## LEGAL REPRESENTATION FOR THE
## MONTGOMERY HOUSING AUTHORITY BOARD OF COMMISSIONERS (HA)

Date Submitted: October 31, 2002

The firm of Davis & Hatcher, L.L.C., is pleased to submit the following proposal in response to the RFP dated October 7, 2002:

**1.    Description of services to be provided and method of providing services.**

**Response:**    The law firm of Davis & Hatcher, L.L.C., more specifically, managing partner Terry G. Davis will provide legal representation and represent the Montgomery Housing Authority Board of Commissioners at its monthly meetings and in all other legal matters as the Board may determine.

**2.    Qualifications of the firm in Landlord-tenant relations, familiarity with Federal Housing Laws, policy drafting and interpretation, administrative law, applicable Federal Regulations. He or she must be a member of the bar in good standing in the state and federal courts.**

**Response:**    The Firm has considerable experience in Landlord-tenant relations and has a general familiarity with Federal Housing Laws, policy drafting and interpretation, administrative law and applicable Federal Regulations. The Firm regularly utilizes and interprets the Code of Federal Regulations in other areas involving questions of Federal Law.

Lead counsel in providing services will be Terry G. Davis. An Associate, Afrika C. Parchman may also provide services and research. Both are members of the Alabama State Bar and are in good standing in state and federal courts.

**3.    Identify each person who will be assigned to work with the HA, their role in the assignment, and include a resume of their experience and qualifications as well as the number of years experiences listed for each individual.**

**Response:**    Lead counsel in providing services to the staff and the Executive Director will be Terry G. Davis. He will have overall responsibility for all work assigned. Mr. Davis has twenty-one (21) years of experience in the practice of law, most of which has been in the areas designated in response #4 below. Some work may be assigned to Afrika Parchman, an associate who has been in practice and with the Firm for two (2) years. The Résumé of both are attached.

rietta Street, N.W.,
Suite 1050
Atlanta, Georgia 30303
(404) 526-9440

1201 Pennsylvania Avenue, NW
Suite 300
Washington, D.C. 20004
(202) 661-4611

4183 Carmichael Road
Suite B
Montgomery, Alabama 36106
(334) 270-0592

4.   Employer-employee relations, including Equal Employment Opportunity and workers' compensation laws, FMLA, ADA, employment law, OSHA, Wage and Hour law, personnel policy and administration, and other related areas.

**Response:**   The Firm has strong experience in employer-employee relations, including Equal Employment Opportunity, workers' compensation laws, FMLA, ADA, employment law, Wage and Hour law, personnel policy and administration, and other related areas. The Firm has extensive experience in representing state and local governmental agencies, wherein these laws have been relied upon. The Firm also has a general familiarity with OSHA Regulations. Past and current governmental clients and Boards includes State of Alabama, Alabama Department of Human Resources, Alabama Department of Public Health (Administrative Law Judge), Alabama State University, City of Montgomery, and Montgomery County Board of Education.

The Firm has considerable experience in landlord-tenant, real estate and housing related issues, including insurance coverage. Over the past fifteen (15) years the Firm has regularly, drafted, negotiated and litigated issues regarding landlord-tenant in real estate matters on behalf of its governmental clients. The Firm has a familiarity with insurance coverage and has broad research abilities and experience regarding general legal issues which arise in the course of representation. The Firm has been regularly called upon to address these type of issues which arose during acquisition of large amounts of property by some of its governmental clients.

Lead counsel, Terry G. Davis is a former real estate broker and is chairman of the risk management committee of the Board of Directors of a national insurance company which regularly addresses insurance coverage issues.

5.   Hourly rate and/or monthly retainer. (State both in rates per hour and in retainer)

**Response:**

| | |
|---|---|
| Terry G. Davis | $185.00 per hour (In-court $195.00 per hour) |
| Afrika Parchman | $150.00 per hour (In-court $160.00 per hour) |
| Monthly Retainer | $1,500.00 |

Hourly rate and monthly retainer are negotiable.


Terry G. Davis
Davis & Hatcher, L.L.C.

Exhibit # 2



### Bradley Arant Rose & White LLP

## Proposal for Legal Representation
### For the
## Montgomery Housing Authority

Thank you for the opportunity to reply to the request for proposal for the current and anticipated needs of the Montgomery Housing Authority ("you," or the "Authority"). Bradley Arant would be honored to have an opportunity to work with you to address those needs. Our firm is committed to improving affordable housing options for all Alabamians, and would welcome the opportunity to work with you to assist in our mission of providing quality and affordable housing options in Montgomery.

*1.    Description of services to be provided and method of providing services*

The experience and resources of our firm would enable us uniquely to represent the Authority's interests in an effective manner at all levels of government. With approximately 180 attorneys, we are Alabama's largest law firm, with a broad array of experience in many areas. Our lawyers' experiences with federal and state government entities in Washington and Montgomery, as well as our experience with issues concerning low income housing, provide us with a perspective unique to Alabama-based firms, which we trust would be beneficial to the Authority. Our attorneys include former legislative aides to Congressmen, including the current Senate Minority Leader and members of the Alabama Congressional delegation. Our Washington, DC office on Pennsylvania Avenue is located exactly halfway between the United States Capitol and the White House, and our firm's office in Montgomery is located one block from both the State Capitol and State House and shares the same building with the Alabama Development Office and ADECA.

We are aware of the intricate and important roles that both federal and state policies and regulations, as well as appropriations, play in helping to improve your local infrastructure and development efforts. We believe it is important to pursue actively – and regularly – favorable policy directives and federal dollars for housing and other infrastructure projects which are critical to future development of the region each year and as a part of a plan that can be easily communicated to our elected leaders. As a result of our experience, contacts, and regular involvement in issues of importance to you, we believe we can

provide an additional way to add value to your team approach at improving the lives of Montgomery residents, and we believe we can help identify new or different ways for you to do that.

Together, we would propose developing a strategic policy agenda that takes a long term view toward improving the quality of life for your community and which follows or complements the work already done by the Authority. We believe the coordination with private entities would also encourage a further "buy-in" by local business and political leaders which can be crucial to success. We would also work with you to find other communities and interest groups with similar goals and agendas to improve the chances of meeting your goals, and we are prepared to engage additional lobbying assistance on your behalf – as part of our engagement and under our supervision – to assist with a broader range of the state legislature to further enhance the probability of success for your agenda.

2.  *Qualifications of the firm in Landlord-tenant relations, familiarity with Federal Housing Laws, policy drafting and interpretation, administrative law, applicable Federal Regulations. He or she must be a member of the bar in good standing in the state and federal courts.*

Since we are a large and diverse law firm with deep roots in Alabama, we believe we can provide the Authority substantive support on issues as they arise. For example, members of our firm are regularly focused on using existing state and federal law to create incentives for development of high quality and affordable housing options. Our attorneys have successfully completed over 100 low income housing credit transactions in recent years, bringing together developers, financial institutions, local governmental bodies, and federal resources to address public policy directives to improve housing options for low and moderate income families. We are also familiar with and have assisted clients to participate in the recently enacted New Market Tax Credit program.

3.  *Identify each person who will be assigned to work with the HA, their role in assignment, and include a resume of their experience and qualifications as well as the number of years experiences listed for each individual.*

Based upon the RFP, six members of the firm will be assigned to work with the Montgomery Housing Authority. They are all members of the bar in good standing in the state and federal courts. Those attorneys are listed below and Charles "Chuck" Stewart will serve as primary contact with the Housing Authority. Resumes are included in Attachment I.

- Charles A. Stewart, III, Esq.
- E. Cutter Hughes, Esq.
- Abdul K. Kallon, Esq.
- Hope T. Stewart, Esq.
- Arnold W. "Trip" Umbach, III, Esq.
- J. Paul Compton, Jr., Esq.

4.    *Employer-employee relations, including Equal Employment Opportunity and workers' compensation laws, FMLA, ADA, employment law, OSHA, Wage and Hour law, personnel policy and administration, and other related areas.*

The Labor and Employment Practice Group at Bradley Arant Rose & White LLP represents employers in all issues arising under state and federal labor, employment and occupational health and safety laws. This group currently includes 15 full-time attorneys and represents a total of 230 years of experience.

We help our clients avoid claims by implementing appropriate employment policies and procedures, such as employee handbooks and policy and procedure manuals, harassment policies, affirmative action plans (for those employers covered by Executive Order 11246), Family and Medical Leave Act policies, drug testing policies and alternative dispute resolution (ADR) policies. We are responsive to clients' needs for immediate advice by telephone regarding proposed terminations, reductions in force, strikes, picketing, plant closings, workplace violence, wage and hour issues, accommodation requirements under the Americans with Disabilities Act, OSHA inspections, employee-benefit programs, workers' compensation claims, drug testing issues and any other issues arising in the workplace.

The group understands our clients' need to obtain the best answers quickly, and resources such as computer research, e-mail and seasoned judgment are used to deliver responsive, sound advice.

Attorneys in the Labor and Employment Practice Group defend employers before federal and state courts and administrative agencies throughout the United States. We also represent employers in mediation and arbitration as an alternative to litigation. Our litigation experience includes the defense of major class actions, as well as the litigation of complex employee compensation and selection issues. Several members of the group are listed in *The Best Lawyers in America* and are Fellows in the American College of Labor and Employment Lawyers. In addition, members teach employment law courses at the state's two principal law schools. Our practical understanding of workplace environments and issues complements our legal skills and experience.

Bradley Arant's Labor and Employment Practice Group represents many public employers, including educational institutions and local governments, as well as employers of all sizes in almost every industry, such as banking, insurance and other financial services, construction and engineering, food services, health care, manufacturing, media, mining and refining, real estate and biotechnology.

5. *Hourly rate and/or monthly retainer. (State both in rates per hour and in retainer)*

Bradley Arant is mindful of the Authority's cost concerns and proposes to provide policy and regulatory representation to the Authority for the period ending December 23, 2002 as follows. Our fees are generally structured as a fixed amount payable in monthly installments, which may help the Authority in its budget planning, but we are always open to discussions on how we can best meet your needs. We would enter our relationship with the intent of developing a long-term relationship, and we are willing to work with the Authority on how we can make that relationship successful for all involved.

We propose a monthly retainer of $1500 for the proposal's estimated assistance of 8 hours per month. In the event the hours exceed this expectation, then our normal hourly rates will apply. The Housing Authority would agree to pay monthly 100% of any travel or other expenses normally billed as such by Bradley Arant.

| Attorney Rates | |
|---|---|
| Chuck Stewart | $270 |
| Cutter Hughes | $290 |
| Abdul Kallon | $245 |
| Hope Stewart | $180 |
| Trip Umbach | $245 |
| Paul Compton | $290 |

6. *General experience in housing issues, such as lead paint, insurance coverage, research capabilities and experience, and general legal issues.*

**Charles A. Stewart, III, Esq.**
Among Chuck Stewart's recent trials is Alabama Central Alabama Fair Housing Comm. v. Lowder Realty Co., Inc., et al. in the Circuit Court of Tallapoosa County. This was a racial steering claim under the Fair Housing Act filed by several individuals and the Central Alabama Fair Housing Commission against a real estate company, a sub-division developer, and

several brokers, as well as principals of these corporations, for alleged steering of home purchasers based upon their race.

### J. Paul Compton, Jr.

Paul Compton has had experience in over 65 transactions involving federal low income housing tax credits, including representation of developers (including non-profit corporations), syndicators, equity investors and lenders. He is familiar with the partnership tax, Internal Revenue Code Section 42, real estate, finance, Community Reinvestment Act and construction aspects of these projects. He has special experience in regulatory issues involving bank investors. He is the author of "Low Income Housing Tax Credits and the Community Reinvestment Act: The Perfect Complement" in <u>The Alabama Banker</u>.

### Abdul K. Kallon

Abdul Kallon represents clients in all areas of labor and employment, including Title VII, ADEA, ADA, FMLA and affirmative action compliance in federal and state courts, the EEOC, the OFCCP and other administrative agencies.

### Arnold W. "Trip" Umbach, III

Trip Umbach has represented both public and private employers in all types of employment litigation in state court, federal court, and before administrative agencies. He has also defended wrongful discharge, discrimination, breach of contract, and workers compensation claims under Alabama law.

### Hope T. Stewart

Hope Stewart is a *magna cum laude* graduate of the University of Alabama School of Law where she served on the school's Student Diversity Committee. She currently practices in the firm's general litigation group.

Bradley Arant is committed to helping the Authority succeed. We hope that you will find this proposal to be of interest and we welcome the opportunity to further address any questions you might have, or to arrange a meeting with the attorneys on our team.

Exhibit # 2A



PLAINTIFF'S
EXHIBIT
2A

C. MICHAEL McINNISH
EXECUTIVE DIRECTOR

1020 BELL STREET ♦ MONTGOMERY ♦ ALABAMA ♦ 36104-3006
(334) 206-7200 ♦ (334) 206-7222 Fax ♦ MHAToday.org

THOMAS TAYLOR
CHAIRMAN

October 19, 2004

Hon. Terry G. Davis
Davis & Hatcher, LLC
4183 Carmichael Road, Suite B
Montgomery, AL 36106

Dear Mr. Davis:

I have had an opportunity to review your bill submitted for September and have a few questions about the statement for which I need your response. This letter is not meant to cast doubt on you or your time keeping, but the following are issues that I need to document further for the file.

9-15    Reviewed and organized documents regarding Board request on legal work performed by three law firms employed by the Board; Preparation of draft report to board. On August 2 and August 24 you had entries that you reviewed my letter and a prior letter. The total pages of these letters appear to be 8 pages. You charged us for writing a letter to me (1 page) and a letter to Mr. Stewart (1 page). The total billed for that date was 3.5 hours. On August 24 you charged us 2.75 hours for reviewing my response and responding to Mr. Stewart. My files indicate two total pages for this entry.
You have now charged an additional 2 hours for September. Can you give some more information as to why this took so long to accomplish?

9-17    You charged us 3.0 hours for reviewing the City County Rules, Federal Regulations and Compiling Data for the Director Evaluation. On August 6 you billed us for 4 hours for compiling data on the same subject. On July 20 you called me to say that the board was wanting to do an evaluation on me and that you had compiled some data from the internet to give to them, which you brought (to the best of my recollection) to the board meeting that evening. The questions are these: What part of the CFR was pertinent to the work? What portions of the City County Policy did you have to review other than the short section on the evaluation? How did it take 3 more hours to compile data that we had already paid for 4 hours to perform? What additional information did you compile after the packet done in July?

9-16    We were billed 1.4 hours for reviewing the board packet and a telephone conference with Mr. Taylor. In addition, we were billed 2.75 hours for reviewing hearing notes, telephone conference with city attorney, preparation of summary and draft proposed order to Court. The questions are these: Did you ever file a proposed Order with the Court? (My recollection is that you called Mr. Stewart



LUAN LONG, Vice-Chair          RICHARD N. BOLLINGER          JOHN F. KNIGHT Jr.          ANNE S. UPCHURCH
BETTIE BARNETT                 CLIFFORD HOLMES               RON DRINKARD               DAVID S. BARLEY, II

1

Exhibit 118

on the day it was due and asked if the Judge would give you until that Friday to get your Order filed. You indicated you had a few suggestions for the Order and Mr. Stewart actually filed the Order after speaking with you while you were in Birmingham.) Are you positive that you spoke with Mr. Taylor and the city attorney? (This was the day of the hurricane. The city was closed and phones were out of service in a lot of areas. Mr. Taylor was not at work that day.)

9-1,2,6  We were billed for 12.75 hours for preparation for trial. It was my understanding that all issues were briefed and ready for court some time earlier. It was also my understanding that Mr. Stewart and the city attorney were going to take the lead I n the case. Please verify that it took this additional time for you to prepare with the role you were going to take in the trial.

9-29  You billed us for 4.75 hours for reviewing the final order (7 pages), writing a memo to the board (1 page) and making telephone calls to board members. Did it take this much time to do those items?

Please respond to this letter at your earliest possible convenience. Again, the purpose of this letter is to clarify the times, as they seem to be more and longer than I would have imagined. I am having a check written for the remainder of the bill and will have any additional time paid after your response and my review of the response with some members of the board.

Thank you for your prompt response to this letter. If you have any questions or would like to discuss these issues, please do not hesitate to contact me.

Sincerely,

C. Michael McInnish
Executive Director

CC:  Board Chair and Vice Chair

2

Law Offices

# Davis & Hatcher, L.L.C.

ATTORNEYS AND COUNSELORS
P.O. Box 230907
Montgomery, Alabama 36123-0907

rry G. Davis
) 270-0592
-Mail Address:
tdavis@DHLAW1.com

Writer's Offices:
4183 Carmichael Road, Suite B
Montgomery, Alabama 36106
Facsimile: (334) 279-0362

C. Michael McInnish
Montgomery Housing Authority
1020 Bell Street
Montgomery  AL  36104-3056
United States

Attn: C. Michael McInnish

Montgomery Housing Authority

Page : 1
10/05/04
Account No:  21-00
Statement No:       360

*[handwritten: 10/18/04]*

*[handwritten: Please see note on last page — Pay #2451.75 with further notice —]*

<u>Fees</u>

| | | | Rate | Hours |
|---|---|---|---|---|
| 09/01/04 | | | | |
| | TGD | Preparation for final hearing; reviewed stipulation of facts; researched and analyzed brief of the City Council, reviewed case law on Quo Warranto actions (Montgomery Housing Authority  vs. City Council) . | 175.00 | 4.00 |
| 09/02/04 | | | | |
| | TGD | Continued preparation for final hearing;  telephone conference with Walter Byars; preparation of argument for trial; researched and reviewed amended brief of Mayor and City of Montgomery (Montgomery Housing Authority vs. City of Montgomery) | 175.00 | 4.75 |
| 09/06/04 | | | | |
| | TGD | Preparation for final hearing; researched and reviewed final brief and exhibits of Montgomery Housing Authority (Montgomery Housing Authority  vs. City Council) | 175.00 | 4.00 |
| 09/07/04 | | | | |
| | TGD | Preparation for final hearing (Montgomery Housing Authority  vs. City Council) | 175.00 | 2.50 |
| 09/08/04 | | | | |
| | TGD | Conference with clients, preparation for final hearing, reviewed briefs and arguments, telephone conference with Walter | | |

C. Michael McInnish

Montgomery Housing Authority

Page: 2
10/05/04
Account No: 21-00
Statement No:    360

| | | Rate | Hours |
|---|---|---|---|
| | Byars, telephone conference with Chuck Stweart (Montgomery Housing Authority vs. City Council of Montgomery) | 175.00 | 5.50 |
| 09/15/04 | | | |
| TGD | Reviewed and organized documents regarding Board request report on legal work performed by three law firms employed by the Board; Preparation of draft report to board (General) | 175.00 | 2.00 |
| 09/16/04 | | | |
| TGD | Reviewed Board packet, reviewed minutes; telephone conference with Mr. Taylor (General) | 175.00 | 1.40 |
| TGD | Reviewed hearing notes; telephone conference with City Attorney; preparation of summary and draft proposed order for submission to circuit court; (Montgomery Housing Authority vs. City Council) | 175.00 | 2.75 |
| 09/17/04 | | | |
| TGD | Researched rules and regulations of the Montgomery City/County Personnel Board; researched and reviewed federal regulations for administrative personal; compiled data for MHA Administrative Committee (General) | 175.00 | 3.00 |
| 09/20/04 | | | |
| TGD | Meeting with Administrative Committee (General) | 175.00 | 1.50 |
| 09/21/04 | | | |
| TGD | MHA Board meeting (General) | 175.00 | 1.50 |
| 09/23/04 | | | |
| TGD | Reviewed e-mail messages, responded to Mickey regarding construction contract; reviewed and analyzed Report on Job Probress and | | |

C. Michael McInnish

Page: 3
10/05/04
Account No:   21-00
Statement No:      360

Montgomery Housing Authority

| | Rate | Hours | |
|---|---|---|---|
| Conformance by Bargainer Davis Simms; reviewed Field Observation Reports; telephone conference with Mr. Thomas (General  - Tullane Court Construction Contract) | 175.00 | 2.00 | |
| '04 GD Preparation of status  report for Barbara Etheridge (Montgomery Housing Authority  vs. City Council) | 175.00 | 0.80 | |
| 04 GD Reviewed and analyzed final order of the court on authority city council to appoint members of the MHA board;  telephone conference with Mr. Taylor; telephone  ference with City Attorney; preparation of memo to Board members; telephone conferences with Board members (Montgomery Housing Authority  vs. City Council) | 175.00 | (4.75) | |

Terry G. Davis

| | 40.45 | 7,078.75 |
|---|---|---|

For Current Services Rendered

| | 40.45 | 7,078.75 |
|---|---|---|

Recapitulation

| ekeeper | Hours | Rate | Total |
|---|---|---|---|
| ry G. Davis | 40.45 | $175.00 | $7,078.75 |

### Expenses

| 4 Office Copies (147 @ .25) | 36.75 |
|---|---|
| Total Expenses | 36.75 |
| Total Current Work | 7,115.50 |
| Balance Due | $7,115.50 |

.chael McInnish

omery Housing Authority

Page: 4
10/05/04
Account No: 21-00
Statement No:    360

.chael McInnish

omery Housing Au

onformance by Ba:
.mms; reviewed F:
ports; telephone
. Thomas (Genera
urt Construction

:paration of stat
:bara Etheridge
ising Authority
:ncil)

:iewed and analyz
the court on auth
:cil to appoint
:board; telephor
. Mr. Taylor; tel
:erence with City
:aration of memo
:ers; telephone co
:d members (Montgo
:ority vs. City O

/ G. Davis

urrent Services

:avis

*Hold until further notice of response*

*.64 hours    x 175 = 4663.75*

*Pay  #2451.75*

Copies (147 @ .2

Expenses

:urrent Work

. Due

Terry G. Davis

C. Michael McInnish

Montgomery Housing Authority

Page: 4
10/05/04
Account No: 21-00
Statement No:   360

*Hold until further notice al repairs*

26.64 hours    x 175  =  4663.75

Pay   $2451.75

Terry G. Davis

C. Michael McInnish

Montgomery Housing Authority

Page: 4
10/05/04
Account No: 21-00
Statement No:    360

*Hold until further notice as reposses*

26.64 hars    x $175 = 4663.75

Pay   $2451.75

Terry G. Davis

Exhibit # 3



Law Offices

# Davis & Hatcher, L.L.C.

ATTORNEYS AND COUNSELORS
P.O. Box 230907
Montgomery, Alabama 36123-0907

**Terry G. Davis**
(334) 270-0592
E-Mail Address:
tdavis@DHLAW1.com

Writer's Offices:
4183 Carmichael Road, Suite B
Montgomery, Alabama 36106
Facsimile: (334) 279-0362

August 23, 2004

Mr. C. Michael McInnish
Executive Director
Montgomery Housing Authority
1020 Bell Street
Montgomery, AL 36104-3056

RE:    July 2004 Invoice

Dear Mickey:

I am in receipt of your e-mail response dated August 19, 2004 in response to my question regarding why you omitted payment of my July invoice in the amount of $2,984.25. Your e-mail response states the following:

"Last Thursday while you were in my office asking me some questions the Board told you to ask, I inquired about your recent bill. It had no mention of your monthly retainer of one thousand dollars. It showed no credit for that nor any explanation of whether or not it had been credited against this work. You said you would resubmit it with explanatory language. I made the inquiry only to be sure the matter would be clear when and if audited and wanted to be sure that the amount paid would be indicative of your work and the retainer. I have not received the corrected or explanatory statement back from you."

Your statement is a complete <u>flip-flop</u> from your first request regarding the submission of my invoices. There is "no mention" of my monthly retainer, because you told me to keep the invoices separate.   When I submitted my first invoice, which included work on the City Council's attempts to remove Board members, you specifically requested that I <u>**re-submit the invoice and separate the monthly retainer from the invoice for the City Council litigation**</u>. You stated that you wanted separate invoices "<u>in the event there was an audit</u>." I complied with your request, re-submitted the invoices and separated them. In refusing to pay this invoice, you have <u>reversed</u> your position. You now want me to **combine** the invoices, citing the possibility of an "audit" <u>**again**</u>. You cannot have it both ways.

This is the third time you have requested that I re-submit these invoices.  Your second request occurred on July 15, 2004. I re-submitted the same invoices for April, May and June on July 16, 2004.   Yes, I did originally agree to your third request to re-submit my invoices when we met on August 12, 2004. However, there is nothing wrong with these invoices  and I will jump through no more hoops simply to have my invoices paid. Moreover, you are aware that the

Mr. C. Michael McInnish
August 24, 2004
Page 2

monthly retainer is paid at the beginning of each month. If MHA is due credit for time expended in August, that credit will be reflected in the invoice submitted in September.

It has taken over five (5) months for my invoices to be paid. There is no valid reason for this additional delay. Unless you have some other reason to delay processing this invoice, I will look to receive payment of the July invoice on Tuesday, when you return.

Sincerely,

Terry G. Davis

TGD/dpb

xc: Mr. Thomas Taylor, Chairman

# Exhibit # 4

PLAINTIFF'S
EXHIBIT
4

*Montgomery*
# HOUSING
*Authority*

C. MICHAEL McINNISH
EXECUTIVE DIRECTOR

1020 BELL STREET ♦ MONTGOMERY ♦ ALABAMA ♦ 36104-3006
(334) 206-7200 ♦ (334) 206-7222 Fax ♦ MHAToday.org

CLIFFORD HOLMES
CHAIRMAN

May 3, 2004

Hon. Barbara Ethredge
Chief Counsel
U.S. Dept. of Housing and Urban Development
Medical Forum Building, Suite 900
950 22nd Street, North
Birmingham, AL 35203

RE: MHA DECLARATORY JUDGMENT

Dear Ms. Ethredge:

Please find enclosed a copy of a letter sent to me by the attorney for the board of commissioners about the action we have filed to determine whether a board member can be removed and as amended to include who has appointment power. A copy of the answer has also been enclosed for your review.

The court has set a hearing for June 30, 2004. I will continue to keep you informed as the case progresses.

When this case was filed, I did not anticipate fees in excess of $10,000.00. I informed the MHA attorney of the limitations and he proceeded with that information. At our April board meeting, the attorney who attends board meetings discussed the case with the board and he, at their request, is now very actively involved in the case. He has submitted a bill for services in excess of $8,000.00. Therefore, the total is now above the $10,000 limit. We procured their services through competitive proposals and both have contracts for retainers and hourly rates. I sent Mr. Sprayberry an email on the 13th of May about this issue.

I am working on authorizing payment to the two attorneys based upon our contracts with them for retainers and a hourly rates for work in excess. The attorneys were selected by competitive procurement. I am enclosing a copy of their contracts for your review. Please let me know if any additional information is required.

Thank you for your help and assistance.

Sincerely,

C. Michael McInnish
Executive Director

THOMAS TAYLOR, Vice-Chair          RICHARD N. BOLLINGER          JOHN F. KNIGHT Jr.          ANNE B. UPCHURCH
BETTIE BARNETT                     LUAN LONG                     RON DRINKARD              DAVID B. BARLEY, II

Exhibit # 5

(FRI)SEP 15 2006 17:00/ST. 15:48/No. 6840114731 P 33

## Mickey McInnish

**From:**
**Sent:** Mickey McInnish [mmcinnish@mhatoday.org]
**To:** Thursday, May 13, 2004 6:59 AM
**Subject:** Ed Sprayberry (ed_sprayberry@hud.gov)
COMMISSIONER RELATIVE JOB APPLICATION. ATTORNEY'S FEES

Dear Mr. Sprayberry:

I discussed an issue with you at the Spring Workshop relating to the possible hire of the son of a Commissioner. Mr. Clifford Holmes is the current chairperson of our board. His son has applied through City/County Personnel for employment as a Maintenance Mechanic. He was deemed eliigible through that agency and has been interviewed by our staff. The HUD Ethics Manual has a provision that states in part under Part A that "...neither the HA... May enter into any contract, subcontract, or arrangement in connection with a project under this ACC in which any of the following classes of people has an interest, direct or indirect, during his or her tenure or for one year thereafter: Any present or former member or officer of the governing body of the HA, or any member of the officer's immediate family...." I have talked with both of our attorneys and they believe a son is a member of the "immediate family" whether or not he is supported by the father nor lives with him.

Please let me know if you believe it would be any violation to hire this person. I would want to notify the board of the hiring next Tuesday if you think it is lawful under current law and ethics provisions.

Secondly: As you are aware, we are in the midst of a Declaratory Judgment Action to determine whether or not a commissioner can be removed by the city council and who has the appointment power of commissioners. The legal research has been extensive. We have contracts with two law firms, one representing the housing authority and one representing the board of commissioners. The majority of the research and the drafting of the complaint were done by the authority attorney. The board attorney was included and was instructed by members of the board to be very active in the lawsuit. Both law firms were selected after proper procurement and are paid by monthly retainer and by hourly rates after the retainer has been earned. The litigation expenses have exceeded $10,000.00 and we hope the case has settled.

Since the procurement has been followed and we have followed the reporting requirements under the Litigation Manual, I would like to authorize the payment of the legal bills. It appears the costs of the trial court action will be approximately $20,000.00. If an appeal is needed, we will follow the Litigation Reporting Requirements. If you have any thoughts about this issue, please let me know at your earliest convenience. The board attorney is requesting his money.

Thank you. If needed, I can be reached by email or by phone at 334-799-4406.

Mickey McInnish
Montgomery Housing Authority
1020 Bell St.
Montgomery, AL 36104
Direct Line 334-206-7187
Cell Phone 334-799-4406
Direct Fax 334-206-7119

# Exhibit # 6



PLAINTIFF'S
EXHIBIT

STATE OF ALABAMA
COUNTY OF MONTGOMERY

## ATTORNEY EMPLOYMENT AGREEMENT

This agreement made and entered into and between the **MONTGOMERY HOUSING AUTHORITY (HA)** and **DAVIS & HATCHER, L.L.C.,** which is a firm of attorneys located at Montgomery, Alabama, hereinafter referred to as Attorney.

The Attorney and the HA agree as follows:

1.     The HA agrees to employ the Attorney, and the Attorney agrees to perform legal representation for the HA beginning January 6, 2003 through January 5, 2005.   This agreement may be terminated by the HA and/or the Attorney upon written notice of ninety (90) days or more.  If the agreement is terminated, the HA must solicit bids to procure legal representation.

2.     The general nature of the representation to be performed by the Attorney for the HA were outlined in your response dated October 31, 2002 to the Request For Proposal (RFP) dated October 7, 2002, as attached hereto.

3.     The HA will pay the Attorney as compensation for their services according to the following schedule:

      $1,000.00 per month as a retainer plus reasonable actual expenses incurred.

4.     Any services rendered in excess of three hours per month shall be billed at $175.00 per hour.

5.     The agreement is subject to review and approval by the U. S. Department of Housing and Urban Development.

In witness whereof, the parties have caused this Agreement to be executed on this the eighteenth day of February, 2003.

THE HOUSING AUTHORITY OF THE CITY OF MONTGOMERY, ALABAMA

BY: _____
                Executive Director

DAVIS & HATCHER, L.L.C.

BY: _____
                Attorney Representative

Exhibit # 7

HOUSING
*Authority*

G. MICHAEL McGOUGH
EXECUTIVE DIRECTOR

1020 BELL STREET  •  MONTGOMERY  •  ALABAMA  •  361O4-2O04
(334) 206-7200  •  (334) 206-7322 Fax  •  MHAToday.org

THOMAS TAYLOR
CHAIRMAN

November 17, 2004

Terry G. Davis, Esq.
Davis, Hatcher & Parchman, L.L.C.
4183 Carmichael Road
Suite B
Montgomery, Alabama 36106

Dear Mr. Davis:

This letter will confirm that at my request, you contacted officials of the City of Montgomery to determine the status of circumstances relating to the City's proposal to purchase Riverside Heights from the Montgomery Housing Authority. At last night's Board meeting, you reported that you had a meeting with Mr. Ken Groves on November 12, 2004. Mr. Groves is the City Planner for Montgomery and works for Mayor Bright. You reported that Mr. Groves informed you of several things relating to Riverside Heights. Your report included the following information:

a. That the City of Montgomery, through Mayor Bright, had made a firm offer in September to Mr. McInnish and Mr. Bollinger to purchase all of Riverside Heights for $12 million.

b. That the Mr. Groves and the Chamber of Commerce had made several unsuccessful attempts to get Mr. McInnish to place the City's proposal to purchase Riverside Heights on the agenda of the Board of Commissions to be considered.

c. That Mr. McInnish never placed the City's offer to purchase Riverside Heights on the agenda of the Board of Commissioners.

d. That, in the opinion of Mr. Groves, Mr. McInnish was not being cooperative with the City's efforts to acquire Riverside Heights; that Mr. McInnish was not presenting a true picture to the Board of Commissioners; and, that time was running out in order to make the project work for the City and Maxwell-Gunter AFB.

e. That on November 12, 2004, Mr. McInnish received my letter directing him to provide the Board Chair with a full report on Riverside Heights. On the same day, after receiving my letter, Mr. McInnish contacted Mr. Groves and asked to meet with him; that Mr. Groves, later the same day contacted you and informed that Mr. McInnish was suddenly cooperative in a way he has never seen before.

LUAN LONG, Vice-Chair
BETTIE BARNETT

RICHARD H. BOLLINGER
CLIFFORD HOLMES

JOHN F. KNIGHT Jr.
RON DAVIDARD

ANNE B. UPCHURCH
DAVID S. SARLEY, II

Terry G. Davis, Esq.
November 17, 2004
Page 2

 f. It was reported that Mr. McInnish invited Mr. Bollinger on an undisclosed trip to Washington D.C. in August which was paid for with MHA funds. The trip was not disclosed to the Board until last nights meeting.

 On the discovery by the Board of these very serious matters, the Board voted to suspend Mr. McInnish, with pay, pending a full investigation in Mr. McInnish's conduct as executive director.

 Mr. McInnish has been placed on leave pending a full investigation which the Board has authorized you to conduct in accordance with MHA personnel policies. Mr. Lane Boggs has been named as interim executive director and is being informed to grant you full and complete access to all files and records necessary to conduct this investigation. You are to present your findings to Mr. Boggs and consult with him. As interim executive director, Mr. Boggs has authority under the MHA Personnel Policy Manual to recommend disciplinary action. Since we are dealing with the executive director's position, the Board will decide what, if any disciplinary action will be taken if charges and evidence are presented to the Board. Should charges be presented to the Board, it should be done through the formal hearing process so that Mr. McInnish's due process rights are protected and he has the opportunity to present evidence and respond to all charges.

 You should not make any report to me or any member of the Board regarding the investigation. The Board must remain fair and impartial in the event it is called upon to make a decision regarding discipline for Mr. McInnish.

 Thank you for your assistance in this matter.

Sincerely,

Thomas Taylor
Chairman

# Exhibit # 8

## NOTICE OF APPOINTING AUTHORITY DISCIPLINARY HEARING

Mr. C. Michael McInnish
         (Employee's Name)

7607 Mossy Oak Drive
         (Street Address)

Montgomery, AL 36116
(City)          (State)          (Zip)

Please be advised that a hearing has been scheduled for the __19th__ day of January, 2005 at __9:00__ o'clock __a__ .m. in the Montgomery County Commission Meeting Room of the Montgomery County Courthouse Annex, 142 Washington, Ave. Montgomery, AL 36104 before the Board of Commissioners for the Montgomery Housing Authority.

The purpose for the hearing is to consider the attached Charges and Recommendation for Termination and Dismissal from Employment.

You may be present, if you desire, and be represented by an Attorney if you desire.  You may respond in writing and/or orally at the time of the hearing.  You may present any witnesses or evidence concerning the charges.

You may elect to have the hearing open to the public or closed.

The Parties are to exchange exhibits and witness lists 3 business days before the hearing date.

Procedural objections shall be raised 5 business days before the hearing date.

This hearing and action taken as a result of same, shall not affect your rights, if any, which you may have for appeal or review under any personnel regulations or statues.

                                                    _____
                                                      Appointing Authority

The above Notice has been mailed to the Employee via certified mail  and served upon W. Wayne Sabel, counsel for Employee via regular mail, addressed to 2800 Zelda Road, Suite 100-E Montgomery, AL  36106 on this the 23rd day of December, 2004.

                                                    _____
                                                      Lemuel Boggs

# Exhibit # 8A



C. MICHAEL McINNISH
EXECUTIVE DIRECTOR

1020 BELL STREET • MONTGOMERY • ALABAMA • 36104-3006
(334) 206-7200 • (334) 206-7222 Fax • MHAToday.org

THOMAS TAYLOR
CHAIRMAN

November 17, 2004

Mr. R. Edmond Sprayberry
Director, Office of Public Housing
HUD Birmingham Office
Suite 900
950 22nd Street, N
Birmingham, Alabama 35203



Dear Ed,

Thank you for your call today and your inquiry into to recent events regarding the suspension of Mickey McInnish, Executive Director of the Montgomery Housing Authority. I regret I was unable to provide you more detail, but there are matters under investigation regarding Mr. McInnish's suspension. What I can tell you is that the Board, by a vote of 6 to 1, voted to suspend Mr. McInnish with pay until further notice. An investigation is taking place and Mr. McInnish will be given a due process hearing regarding matters which will be presented to the Board.

You should know that Mr. Lemuel Boggs, our Assistant Executive Director has been named the Interim Executive Director, and the Montgomery Housing Authority is operating smoothly. There has been no interruption in any aspect of our operation. I have directed Board Counsel, Terry Davis, to answer any specific questions you may have and to provide you with regular updates regarding this matter. His telephone number is (334) 270-0592.

We at the Montgomery Housing Authority greatly appreciate the support you provide us and we will continue strive to improve the quality of services and programs for our residents and citizens.

With Best Regards,

I am,

Sincerely yours

Thomas Taylor
Chairman



LUAN LONG, Vice-Chair
BETTIE BARNETT

RICHARD N. BOLLINGER
CLIFFORD HOLMES

JOHN F. KNIGHT Jr.
RON DRINKARD

ANNE E. UPCHURCH
DAVID S. BARLEY, II

# NOTICE OF CHARGES TO C. MICHAEL MCINNISH

**C. Michael McInnish is hereby charged with the following acts which constitute grounds for the recommendation of termination and dismissal from employemt, to wit:**

## Charge #1.  Misconduct

Concealing and failing to disclose and transmit  to the Montgomery Housing Authority Board of Commissioners the September 24, 2004 offer of  Mayor Bobby Bright on behalf of City of Montgomery to purchase from the Montgomery Housing Authority, all of the Riverside Heights Housing Development for Twelve Million  ($12,000,000) Million Dollars.

## Charge #2.  Insubordination

Failing and refusing to follow a mandate and directive from the Board of Commissioners to maintain a legal position of neutrality and not pursue an advocacy position on the issue of whether the Mayor or City Council have the authority to appoint members of the Board of Commissioners. *The Housing Authority of the City of Montgomery, Alabama vs. The City Council of the City of Montgomery, Alabama, et., al. (CV-04-994-R).*

## Charge #3. Insubordination

Failure and refusal to raise an issue in litigation against the City Council of the City of Montgomery which the Board of Commissioners approved and directed by included in the lawsuit styled . *The Housing Authority of the City of Montgomery, Alabama vs. The City Council of the City of Montgomery, Alabama, et., al. (CV-04-994-R).*

## Charge #4  Misconduct

Providing false, misleading and incomplete information to the Public Housing Authority Insurance Group to induce it to pay legal bills for a MHA attorney in a lawsuit not otherwise covered by insurance. *The Housing Authority of the City of Montgomery, Alabama vs. The City Council of the City of Montgomery, Alabama, et., al. (CV-04-994-R) and State of Alabama, ex rel. Charles Jinright, et al,. vs. LuAn Long, et.al., CV-04-1458-R*

## Charge #5  Misconduct

Providing false, misleading and incomplete information to the Board of Commissioners regarding insurance coverage for litigation involving appointments to the Board of Commissioners. *The Housing Authority of the City of Montgomery, Alabama vs. The City Council of the City of Montgomery, Alabama, et., al. (CV-04-994-R) and State of Alabama, ex rel. Charles Jinright, et al,. vs. LuAn Long, et.al., CV-04-1458-R*

## Charge #6  Misconduct

Abuse of supervisory authority in granting special privileges and demonstrating favoritism to an unnamed staff member in the following manner:

(a) Granting unnamed full-time staff member excessive leave and authorizing paid absences from MHA duties for travel to frequent meetings around the country between April 1, 2002 and October 31, 2004.

(b) Granting and approving pay grade change and out-of-step pay raise to unnamed staff member on December 20, 2003, without providing justification for grade change and pay increase.

(c) Unauthorized delegation of duties to unnamed staff member and failing to follow approved protocol for delegation duties to assistant executive director as defined by the MHA-approved organizational chart.

## Charge #7. Misconduct

Between May 12, 2001 and December 31, 2002, while serving as a full-time employee the Montgomery Housing Authority, Mr. McInnish performed services-for-hire and received compensation from other public housing authorities during times he was on the payroll of the Montgomery Housing Authority and receiving compensation.

## Charge #8. Failure to Perform Duties

Excessive travel and absences from duties as executive director of the Montgomery Housing Authority between June 24, 2002 and October 31, 2004.

## Charge # 9. Misconduct

After being placed on administrative leave by the MHA Board of Commissioners on November 16, 2004, Mr. McInnish, without authorization, deleted and erased Montgomery Housing Authority email messages up to November 24, 2004.

## Charge #10. Misconduct

Using Montgomery Housing Authority funds to pay travel and lodging expenses for a board member for an unauthorized and undisclosed trip to Washington D.C., which occurred on August 22-23, 2004.