# Exhibit # 9



**C. MICHAEL McINNISH**
**EXECUTIVE DIRECTOR**

1020 BELL STREET ♦ MONTGOMERY ♦ ALABAMA ♦ 36104-3006
(334) 206-7200 ♦ (334) 206-7222 Fax ♦ MHAToday.org

**THOMAS TAYLOR**
**CHAIRMAN**

November 22, 2004

Mr. R. Edmond Sprayberry
Director, Office of Public Housing
HUD Birmingham Office
Suite 900
950 22nd Street, N
Birmingham, Alabama 35203



Dear Mr. Sprayberry:

On Friday, I received two letters from you, one of which requested that I call a special board meeting and the other requesting that the Montgomery Housing Authority begin submitting to you for review (1) all procurement transactions and (2) all draw downs from the Line of Credit Control System. I am quite concerned that at the outset you have concluded that the financial integrity of the Montgomery Housing Authority must be called into question because MHA has suspended Mickey McInnish. Second, and even more disturbing is that you would take such drastic, burdensome and intrusive action without an investigation and without supporting grounds for doing so.

First let me say that MHA is going to comply with your request to review "all procurement transactions and draw downs from the Line of Credit Control System" as it is clearly within your authority to make such a request. I would ask, however, that you reconsider your decision in that you have given us no rational basis to justify singling out MHA for imposing these punitive measures. Your request may require us to hire additional personnel in order to comply. I am aware of no HUD regulation that gives a suspended employee or a single local PHA board member (who is in the minority) the right or authority to have you impose oversight sanctions on that local PHA without cause. As I informed you the day after the Board suspended Mickey, the MHA voted by a vote of 6 to 1 to suspend Mr. McInnish. The Board then appointed Lemuel (Lane) Boggs, the Assistant Executive Director, who has been with MHA for 25 years, as interim Executive Director. The staff is carrying on business as usual and Mr. McInnish will be given a due process hearing before the Board makes a final decision about his employment status.

You have conducted no investigation other than to make a few telephone calls. I feel certain you are also relying on statements made by Mickey. I am also aware that you

Mr. R. Edmond Sprayberry
November 22, 2004
Page 2

and he have become personal friends as a result of Mickey's extensive involvement in HUD activities both regionally and nationally. It was my understanding based on HUD regulations that you would be supportive of the PHA rather than an employee who has been suspended and is under investigation. Your unjustified and burdensome request to review all procurement transactions, and all draw downs from the LOCCS makes it fairly obvious that Mickey is using his personal relationship with you to influence the Board's decision on appropriate disciplinary action. Rather than resolving this situation through the legal process, Mickey has contacted you, local television stations and the newspaper and informed them that he was suspended because of politics, his race and legal bills. Politics and race had nothing to do with Mickey's suspension. Two of the Board members who voted in favor of the suspension are white, four are African-American. Regarding legal bills, the press is now calling and asking to review the MHA legal bills. We will address that with the press at the appropriate time. You, however, are welcome to see any legal bill you desire as well as any other records of MHA. It is true that some members of the Board have raised questions regarding legal bills. One specific question was why Mickey was paying Charles Stewart of Bradley Arant, $270 per hour while paying current Board counsel $175 per hour. (The Board was provided no reason for this disparity or told that it was paying any lawyer as much as $270 per hour).

I need to reemphasize the Board has not made a decision as to what, if any, disciplinary action will be taken. We were presented with enough evidence on November 16th that in our opinion, justified that Mickey be suspended immediately with pay. Also, the Board learned, for the first time, at the meeting that Mickey approved the expenditure of MHA funds for a Board member to take an unauthorized trip to Washington D.C. The Board member acknowledged he took the trip and has offered to repay the monies spent. We directed Board counsel to conduct further investigation and formally present the evidence to the Board in a way that did not violate Mickey's rights as an employee. Mickey is entitled to a fair and impartial due process hearing and the Board plans to grant him such a hearing. I have been advised by our general counsel that your request for me to call a meeting of the MHA Board to discuss merits of the suspension before a final decision has been made, would seriously jeopardize our ability to grant Mickey a fair and impartial hearing, thus violating his due process rights. Your request for a meeting could expose MHA to financial liability and I must ask you to reconsider this request as well.

Mr. R. Edmond Sprayberry
November 22, 2004
Page 3

As an alternative to a formal meeting, I would invite you to immediately come to Montgomery to meet with me, the staff and members of the Board individually (or in a group of four or less).

We understand that Mickey is a popular person with you and other officials at HUD. However, we take our jobs as members of the Board of Commissions of MHA very seriously. As Board members, we have a legal, fiduciary and moral responsibility to be good stewards of the funds that have been entrusted to the MHA. We also have the responsibility of making the residents and citizens we serve our first priority. The decision to suspend Mickey was not an easy one, but one that was supported by evidence presented to the Board. I cannot say what action the Board will ultimately take. I can say that your extraordinary request to monitor MHA finances and intervention into our local disciplinary process, without cause, is contrary to any HUD regulations of which I am aware. Thus, I am requesting that you provide the specific grounds for your actions as your letter of Friday, November 19, 2004 provides no facts that would justify this type intervention. I would also request that you provide me the HUD regulations upon which you are relying for your actions. It would be very helpful if I had this information by Wednesday, November 24, 2004.

Finally, I say again that we will comply with your request to monitor our finances, but I ask that you reconsider your action. I also strongly urge you to come here personally and examine first hand what is going on. I believe we can address any concerns you may have. We do not wish to file a protest in the highest levels of HUD or submit a protest to our Congressional delegation. We would rather demonstrate to you that we are conducting business as usual at MHA and have you withdraw both requests. I respectfully request that by Wednesday, November 24, 2004 you either withdraw your "Oversight Review Request" or give our Board meaningful justification for this oversight based upon HUD regulations. I apologize for the tone of this letter. But several Board members, including myself are very concerned that your actions are being directed by influences outside normal channels.

Please contact me soon to set up a time for you to come to Montgomery to address your concerns.

Thank you.

Sincerely,

Thomas Taylor
Chairman

Mr. R. Edmond Sprayberry
November 22, 2004
Page 4


xc:    Mr. Lemuel (Lane) Boggs
Ms. LuAn Long
Mr. Richard N. Bollinger
Ms. Anne B. Upchurch
Ms. Bettie Barnett
Mr. John F. Knight
Mr. Clifford Holmes
Mr. Ron Drinkard
Mr. David S. Barley, III
Barbara Etheridge, Esq.
Terry G. Davis, Esq.

# Exhibit # 10



C. MICHAEL McINNISH
EXECUTIVE DIRECTOR

1020 BELL STREET • MONTGOMERY • ALABAMA • 36104-3006
(334) 206-7200 • (334) 206-7222 Fax • MHAToday.org

THOMAS TAYLOR
CHAIRMAN



December 1, 2004

Mr. R. Edmond Sprayberry
Director, Office of Public Housing
HUD Birmingham Office
Suite 900
950 22nd Street, N
Birmingham, Alabama 35203

Dear Mr. Sprayberry:

On behalf of the Board of Commissioners of the Montgomery Housing Authority, please allow me to express my deepest sympathy regarding the loss of your father. We will keep you and your family in our prayers.

Let me also say thank you for your recent explanation to me regarding your request for information from the Montgomery Housing Authority. I now understand that you did what was necessary under the circumstances. Also, the staff has informed me that they have been in contact with your office. They have been assured that the appropriate personnel will be available to provide a prompt turn-around to prevent our normal operations from being delayed, as it relates to procurement requests.

Lane Boggs has informed me that only authorized personnel have access to our accounts. Mr. Boggs has also informed me that our operation is running smoothly, and he anticipates no expenditures or procurements for matters that are out of the ordinary. The only expense we anticipate that was not planned for relates to the suspension and due process hearing that must be afforded to Mickey McInnish. I have asked Mr. Davis, Board Counsel, to provide me with his estimate of costs associated with a full investigation and presentation of evidence to the Board in the due process hearing. Mr. Davis informed me that there are a number of variables to be considered, but he does not expect the costs to exceed $35,000.00. I would ask that you approve this request so that the investigation and presentation of evidence can proceed as smoothly and quickly as possible.

I will look forward to hearing from you at your earliest convenience.

LUAN LONG, Vice-Chair
BETTIE BARNETT

RICHARD N. BOLLINGER
CLIFFORD HOLMES

JOHN F. KNIGHT Jr.
RON DRINKARD

ANNE B. UPCHURCH
DAVID B. BARLEY II

Mr. R. Edmond Sprayberry
December 1, 2004
Page 2

Sincerely yours,

Thomas Taylor
Chairman

xc:    Lane Boggs
       Interim Executive Director

       Terry Davis, Esq
       Board Counsel

# Exhibit # 11



C. MICHAEL McINNISH
EXECUTIVE DIRECTOR

1020 BELL STREET ◆ MONTGOMERY ◆ ALABAMA ◆ 36104-3008
(334) 206-7200 ◆ (334) 206-7222 Fax ◆ MHAToday.org

THOMAS TAYLOR
CHAIRMAN



January 3, 2005

Mr. R. Edmond Sprayberry
Director, Office of Public Housing
HUD Birmingham Office
Suite 900
950 22nd Street, N
Birmingham, Alabama 35203

RE:    C. Michael McInnish Investigation

Dear Mr. Sprayberry:

I must once again express my dismay and disappointment regarding your telephone call last week and at what clearly appears to be another attempt to derail the Montgomery Housing Authority's investigation of Mickey McInnish. In all the HUD conferences I have attended and materials read, I have never heard of someone at your level becoming so embroiled in the efforts of a local public housing authority to determine whether disciplinary actions are appropriate for its executive director. Also, I know of no HUD regulation that gives you the authority to question or chastise me, as you did during your telephone call, for the Board's decision not to hold an executive session at Board member LuAn Long's request so that she could discuss the investigation of Mr. McInnish. I do not understand why you continue to work against the MHA Board on the word of one board member when the Board (majority) has followed all HUD guidelines and procedures and kept you informed throughout this process.

Your final statement to me was that you plan to attend the hearing if Mr. McInnish elects to open the hearing to the public. Your tone suggested to me that you would be here as an advocate for Mr. McInnish. However, I would hope you would agree to attend to provide support for the Montgomery Housing Authority rather than an employee who is facing charges of misconduct and insubordination.



LUAN LONG, Vice-Chair
BETTIE BARNETT

RICHARD N. BOLLINGER
CLIFFORD HOLMES

JOHN F. KNIGHT Jr.
RON DRINKARD

ANNE S. UPCHURCH
DAVID S. BARLEY, II

Mr. R. Edmond Sprayberry
January 3, 2005
Page 2

You have been provided with a copy of the charges and informed that the hearing has been set for January 19, 2005. As a senior HUD representative, my position is that you are entitled to attend the hearing even if Mr. McInnish elects to close the hearing to the public. I am certain the Board would agree with this position. This Board has nothing to hide.

Sincerely,

Thomas Taylor
Chairman

xc:   Hon. Barbara Etheridge

Lane Boggs
Interim Executive Director

MHA Board of Commissioners

# Exhibit # 12



U. S. Department of Housing and Urban Development
Birmingham Office
Region IV
Medical Forum Building, Suite 900
950 22nd Street, North
Birmingham, Alabama 35203-5301



February 17, 2005

Mr. Thomas Taylor
Chairman, Board of Commissioners
Montgomery Housing Authority
3929 Piedmont Court
Montgomery, AL 36104

Dear Mr. Taylor:

I have received your letter dated February 9, 2005, concerning a proposed settlement with Mr. Mickey McInnish. Your letter stated that the Board of Commissioners of the Montgomery Housing Authority (Board) met in a special session on February 9, 2005, and "strongly feels that settlement is the most cost effective means to end this matter." I was informed that the eight members of the Board who were present unanimously voted to seek HUD approval of a settlement based on eleven terms including a severance payment of $110,000.00 and payment of reasonable attorney fees for Mr. McInnish totaling $16,500.00.

I have consulted with HUD's legal counsel and a decision has been made not to approve the proposed settlement. I do not believe an agreement under the stated terms to be in the best interest of HUD or the residents of the Montgomery Housing Authority. Also, the Board has not provided any evidence that this proposed settlement is in the best interest of the Montgomery Housing Authority or is cost effective.

Without the knowledge of what the specific charges were, the Board agreed to suspend Mr. McInnish with pay on November 16, 2004. Since that time, specific charges have been made and he has responded to those charges. I would recommend that the Board hold a special meeting to review the charges and Mr. McInnish's responses and take a vote as to whether or not his answers are adequate. If Mr. McInnish answered the allegations satisfactorily, then the Board could instruct him to return to work and no financial settlement would be necessary. If after discussing the charges and responses, the Board still believes that termination of Mr. McInnish is required, then a resolution to proceed with the hearing should be passed.

www.hud.gov          espanol.hud.gov

SPRAY-0076

I received a copy of Mr. Terry Davis' resignation letter; however, since he did not have a contract with the Board, I don't believe such a letter was necessary. Nevertheless, if the Board votes to proceed with the termination of Mr. McInnish, then you may need legal representation. If legal representation is needed, then I recommend that Mr. Lane Boggs procure an attorney in accordance with existing procurement instructions from my office.

If it is necessary to proceed with the hearing, the Board shall ensure that the hearing officer is unbiased. A hearing officer should be picked that is acceptable to the Board and Mr. McInnish.

If the Board wishes, I will be meet with you at a mutually agreeable time and date to discuss the current issues.

I hope the Board and Mr. McInnish can resolve these difficult issues in a fair and equitable manner. If I can be of assistance, please contact me immediately.

Sincerely,

R&S  2/18/2005

R. Edmond Sprayberry
Director
Office of Public Housing

cc: Board of Commissioners
    Mr. Lane Boggs, Interim Executive Director

H. Powell
2/18/05
2/18/05
E.S. Harmon

SPRAY-0077

# Exhibit # 13

PLAINTIFF'S
EXHIBIT

# Davis, Hatcher & Parchman, L.L.C.

ATTORNEYS AND COUNSELLORS
P.O. Box 230907
Montgomery, Alabama 36123-0907

Terry G. Davis
(334) 270-0592
E-Mail Address:
tdavis@DHLAW1.com

Law Offices

**RECEIVED**

MAR 04 2005

Per................

Writer's Office:
4183 Carmichael Road, Suite B
Montgomery, Alabama 36106
Facsimile: (334) 279-0362

March 3, 2005

O.K.
to Process
Thomas ng/m
3/4/5

Mr. Lemuel (Lane) Boggs
Interim Executive Director
Montgomery Housing Authority
1020 Bell Street
Montgomery, AL 36104-3056

RE:    Bill for Services Rendered for ¹

December 2004

Dear Lane:

Enclosed you will find my b            the months of November and
December 2004 in the amount of $28,919.50.            es not cover time for services
rendered in January and February 2005. If this invoice is paid within five (5) days of this date, I
am willing to waive and forgo submission of an invoice for services rendered for the months of
January and February 2005.

Regarding my invoice that was submitted for services rendered in the month of October
2004 in the amount of $3,243.25, this invoice should be reduced by $525.00 (less three hours at
$175.00 per hour as per MHA contract) which leaves a balance of $2,718.25. I am requesting
payment of this invoice within the next five (5) days as well.

If you have any questions, please contact me.

Sincerely,

Terry G. Davis

TGD/dpb

Enclosures

xc:    Mr. Thomas Taylor
       Mr. Ed Sprayberry
       Ms. Barbara Etheridge

34 Peachtree St., N.W., Ste 2210 • Atlanta, Georgia 30303 • (404) 525-8440
4183 Carmichael Road, Ste B • Montgomery, Alabama 36106 • (334) 270-0592

Exhibit # 14





U. S. Department of Housing and Urban Development
Birmingham Office
Region IV
Medical Forum Building, Suite 900
950 22nd Street, North
Birmingham, Alabama 35203-5301

MAR 1 1 2005

Mr. Lemuel E. Boggs
Interim Executive Director
Montgomery Housing Authority
1020 Bell Street
Montgomery, AL 36104-3056

SUBJECT: Requests for Proposals (RFP) for Audit Services – Revised

Dear Mr. Boggs:

This responds to the PHA's fax dated March 4, 2005, transmitting a request for approval for the PHA to pay a bill for services rendered by Terry G. Davis during the months of October, November, and December 2004.

Based on the request in your fax that the October bill be reduced to reflect 15.3 hours as indicated by the attorney's contract, we have no objection to the PHA paying the October bill in the amount of $2,718.25.

We are reducing the bills for November and December to remove expenses related to the investigation of Mr. McInnish. Our letter dated December 9, 2004, denied budgetary approval of $35,000 for legal costs for several reasons, some of which are restated below. Our letter dated January 12, 2005, advised that expenditures incurred by Mr. Davis other than those previously approved would be ineligible and could not be made retroactive. Our January 27, 2005, letter further emphasized the previous letters and denied the request for approval of the $65,000 in legal fees requested.

In accordance with the Annual Contributions Contract (ACC), the PHA shall not incur expenditures except pursuant to and in accordance with an approved operating budget. As stated previously, HUD regulations dictate that costs for professional services be reasonable in relation to the services rendered and that allowable costs under HUD programs be necessary and reasonable for the administration of the program(s).

We requested information from you reflecting the Board's approval of the investigation as well as information on the issues to be investigated relating to the mismanagement, fraud and abuse of HUD programs at the Montgomery Housing Authority. Since we did not receive the

requested information, it could not be determined that these costs were reasonable or that the services rendered would be necessary for the administration of the programs.

The bills are reduced as follows:

| Total Hours | Reduced Hours | Total Hours Allowed |
|---|---|---|
| 168.95 | 146.20 | 22.75 |
| | | |
| Amount Billed | Amount Reduced | Amount Allowed |
| $29,566.25 | $25,585 | $3981.25 |
| | | |
| Office Supplies Billed | Office Supplies Reduced | Office Supplies Allowed |
| 403.55 | $338.98 | $64.57 |

The number of hours allowed must be reduced by 3 hours per month each for November and December according to the attorney's contract with the PHA (6 x 175 = 1050). Reducing the amount by 6 hours for the two months (3981.25 – 1050) brings the allowable hourly amount to $2931.25. The total amount that is eligible for payment is $3,334.80, which includes both the acceptable hours and the prorated office supplies (2931.25 + 403.55). We have provided an analysis of the rate reduction and an analysis of the reduction of the office supplies for your information.

Should you like to discuss the matter further, please do not hesitate to contact me at (205) 731-2630, extension 1101.

Sincerely,

R. Edmond Sprayberry
Director
Office of Public Housing

Enclosure (2)

## Analysis of Rate Reduction

| November/December 2004 | Rate | Hours | Total Reduced |
|---|---|---|---|
| 11/16 | 175.00 | 3 | 525 |
| 11/17 | 175.00 | 7 | 1225 |
| 11/18 | 175.00 | 8 | 1400 |
| 11/19 | 175.00 | 7.5 | 1312.5 |
| 11/22 | 175.00 | 8.7 | 1522.5 |
| 11/23 | 175.00 | 6 | 1050 |
| 11/24 | 175.00 | 6.75 | 1181.25 |
| 11/25 | 175.00 | 7 | 1225 |
| 11/29 | 175.00 | 8.5 | 1487.5 |
| 12/07 | 175.00 | 1 (4-3) | 175 |
| 12/08 | 175.00 | 7 | 1225 |
| 12/09 | 175.00 | 8 | 1400 |
| 12/13 | 175.00 | 8 | 1400 |
| 12/14 | 175.00 | 7.5 | 1312.5 |
| 12/15 | 175.00 | 5.75 | 1006.25 |
| 12/16 | 175.00 | 3.75 | 656.25 |
| 12/17 | 175.00 | 4 | 700 |
| 12/18 | 175.00 | 6.75 | 1181.25 |
| 12/20 | 175.00 | 7 | 1225 |
| 12/22 | 175.00 | 8 | 1400 |
| 12/23 | 175.00 | 7 | 1225 |
| 12/27 | 175.00 | 6 | 1050 |
| 12/29 | 175.00 | 3 (6-3) | 525 |
| 12/30 | 175.00 | 1 | 175 |
| | | 146.2 | 25585 |

| November/December 2004 | Rate | Hours | Total Allowed |
|---|---|---|---|
| 11/10 | 175.00 | 3.75 | 656.25 |
| 11/11 | 175.00 | 1 | 175 |
| 11/12 | 175.00 | 1.5+3.5=5 | 875 |
| 11/15 | 175.00 | 3 | 525 |
| 12/7 | 175.00 | 3 | 525 |
| 12/21 | 175.00 | 4 | 700 |
| 12/29 | 175.00 | 3 (6-3) | 525 |
| | | 22.75 | 3981.25 |

## Analysis of Reduction of Office Expenses

Expenses prorated based on the percentage of allowed expenses to total expenses –
3981.25/25585 = 15.56 or 16%

| November/ December 2004 | Office Charges | 16% of Total Expenses |
|---|---|---|
| 12/31 | 161.25 | 25.80 |
| 12/31 | 40.50 | 6.48 |
| 12/31 | 64.57 | 10.33 |
| 12/31 | 137.23 | 21.96 |
| | 403.55 | 64.57 |

Total Expenses Allowed: $64.57

# Exhibit # 15

# APPROVAL OF MINUTES
## December 21, 2004

Agenda Item No. 9, to consider a resolution approving/authorizing the Montgomery Housing Authority to reward the Contract for Legal Services to the Montgomery Housing Authority for a period of two years effective January 1, 2005 through December 31, 2006 to the law firm named and recommended by the Administrative Committee, using RFP evaluation criteria, contingent to HUD approval, was read by the Chairman.

At this time Commissioner Holmes asked the Chairman for the names of the firms who had submitted their response to this RFP.

Chairman Taylor requested Mr. Boggs, Interim Executive Director, to read out the names of the firms who responded and the recommendation of the Administrative Committee.

Mr. Boggs informed the board that the Administrative Committee had met, ranked the responses received, and their recommendation was for Davis and Hatcher, LLC to be awarded the contract for legal services to the Montgomery Housing Authority as he had received the highest number of points. The other two firms who had responded were Hill, Hill, and Carter, and Bradley Arant.

With the permission of the Chair, Commissioner Holmes recommended that this be carried over since as of right now, with the litigation that is going on and the alleged

15928

charges against Mr. McInnish, that he does not know anything about, he thought it would be best to defer this for right now.

Chairman Taylor responded that if the board were to carry this over they would have no legal representation by the end of this month.

Commissioner Barnett also voiced disagreement with the recommendation made to carry this item over.

Commissioner Holmes once again stated that because these attorneys are involved in the current situation, he felt that the board needed to get one thing solved at a time. He went on to reiterate that there is talk about charges and an investigation going on but he does not know anything on what the charges are or what the investigation going on is about. He also stated that the executive session meeting was a set-up and that nobody was notified that there was going to be an executive session and most of the others knew about it up front that there was going to be one.

With permission from the Chair, Vice-Chair Long, who is also on the Administrative Committee, addressed the board and commented that if the whole board did vote on the attorney issue tonight, she would like to express that she is extremely upset with the evaluation process and that it

is a very complicated procedure that they had to go through in order to rank these attorneys. When looking at the qualifications of all the attorneys she believed that they are all eminently qualified but there are a lot of issues; mainly, in her book, about the fees that are charged. She pointed out that each of the RFP responses was very clear on how much money each attorney was going to charge per hour. Vice-Chair Long further stated that she hoped that the board would not only take into consideration the recommendation of the Administrative Committee but that they would look for themselves at what the fees entail before they vote.

With permission from the Chair, Commissioner Barnett then addressed the board and stated that according to what Chairman Taylor said they have to have an attorney, they do need an attorney for the board and, therefore, this cannot be put on hold.

Commissioner Holmes pointed out that the board had operated a whole year without an attorney.

Commissioner Barnett's response to Commissioner Holmes was that they would not be operating now without one. She also commented on Commissioner Holmes' statement about the executive session being a set up and asked if he thought

that the executive session requested tonight was also a set up.

Chairman Taylor then asked if there were any other comments.

Commissioner Knight then offered the following motion and moved its adoption:

### RESOLUTION NO. 5275

BE IT RESOLVED by the Board of Commissioners of The Housing Authority of the City of Montgomery, Alabama that the board accepts the recommendation made by the Administrative Committee, based on their evaluation of the responses received for Legal Services, using RFP evaluation criteria, and hereby authorizes that the Contract for Legal Services to the Montgomery Housing Authority be awarded to the law firm of Davis and Hatcher for a period of two years effective January 1, 2005 through December 31, 2006, contingent to HUD approval.

Commissioner Barnett seconded the motion. The motion was then voted on and passed this twenty-first day of December 2004. For the record, Vice-Chair Long, Commissioner Holmes and Commissioner Bollinger voted NAY.

At this time Commissioner Bollinger, with permission from the Chair addressed the board. He informed the board that he had attended the Administrative Committee meeting

that was held and he would like to point out that it would have been difficult for him if he was a legal firm trying to submit a response in the form that was set up. It was his suggestion that the form be revamped to give the professionals a better opportunity to be evaluated. He did not think it was fair to the individuals. He stated that the biggest controversy was the qualification form on which they submitted their services on which they were evaluated.

Commissioner Drinkard inquired if it was a HUD form. Commissioner Bollinger responded that he believed that the Executive Director had drawn it up and put it out and it was what everyone had used to submit their response and, therefore, the only fair thing to do at the time was to evaluate by that form. He again emphasized that, in his opinion, the form does not fairly evaluate.

Commissioner Knight, who also serves on the Administrative Committee, agreed and commented on the way the form was structured. He further stated that if it had been presented to the board they would have had some input but it was not; and, since it was submitted and people had bid the way the form was submitted, the only fair thing was to work with what was submitted because if the board were to change the criteria on the form they would have to put this out to be re-bid. Since it is not a HUD form but one

15932

that was made by the housing authority or the Executive Director and submitted, he would hope that the next time that the board would have input in the form itself so that they would know exactly how these are being evaluated. He pointed out that this would also apply to the audit and any other Request For Proposal. Since these are not HUD requirements and standards are going to be placed in them, then the board ought to know what those standards are and how they are being evaluated. For example, the board had been presented with a recommendation from the staff and, it is his belief, that the board is accepting that recommendation, believing that it is the best recommendation based on certain standards. Therefore, the board ought to know exactly what the standards are.

At this time Vice-Chair Long commented that although the board had already voted on the award for legal services, there was some 'wiggle room' in terms of hourly rates of the different lawyers; and, this comes down to money from her viewpoint. There were people that were willing to do the services for substantially less per hour and the way that it rated out Mr. Davis has been recommended. Addressing Attorney Davis, Vice-Chair Long stated, "You have however, in your proposal stated that

your hourly rate and your retainer were open to discussion."

Attorney Davis responded and confirmed this to be correct.

Vice-Chair Long then stated that she strongly recommends that the board certainly look very closely at this.

Attorney Davis explained that his proposal the last time was not quite the same as it was this time. He pointed out that he had basically submitted a proposal that was the same as the other firm that represented the housing authority and so it was identical to the hourly rate that was previously submitted by the other firm that represented the housing authority. He reconfirmed that his rates are certainly negotiable. Attorney Davis then pointed out that procedurally, once you vote, what the Executive Director does in either case, is to go back and negotiate and enter a contract with each firm and it just so happens that the other firm was paid substantially firms, including himself. However, that is not an issue here and once again he stated that that his rates were certainly negotiable.

Commissioner Knight then offered the following motion and moved its adoption:

RESOLUTION NO. 5276

BE IT RESOLVED by the Board of Commissioners of The Housing Authority of the City of Montgomery, Alabama that the board hereby authorizes the Interim Executive Director to negotiate the hourly rate and retainer fee for Legal Services to be provided to the Montgomery Housing Authority by the law firm of Davis and Hatcher, LLC.

The motion was seconded by Vice-Chair Long, voted on and passed by the Board this twenty-first day of December 2004.

The Chairman then proceeded to Agenda Item No. 10, to *consider a resolution approving/authorizing the Montgomery Housing Authority to award the Contract for Collections/Evictions services to the housing authority for a period of two years, effective January 1, 2005 through December 31, 2006 to the law firm named and recommended by the Administrative Committee, using RFP evaluation criteria, contingent to HUD approval.*

The Interim Executive Director informed the board that the Administrative Committee had evaluated the three responses received to the RFP for Collections/Evictions services from Holloway and Moxley, Hill, Hill, Carter and Chambless and Math. The Administrative Committee's

# Exhibit # 15A



U. S. Department of Housing and Urban Development
Birmingham Office
Region IV
Medical Forum Building, Suite 900
950 22nd Street, North
Birmingham, Alabama 35203-5301

JAN 1 2 2005

Mr. Lemuel E. Boggs
Interim Executive Director
Montgomery Housing Authority
1020 Bell Street
Montgomery, AL 36104-3056

SUBJECT: Attorney Employment Agreement

Dear Mr. Boggs:

This acknowledges receipt of your fax dated January 10, 2005, transmitting an Attorney Employment Agreement between the PHA and Davis, Hatcher & Parchment, LLC. In accordance with my previous instructions, this and all other contracts must be reviewed and approved by HUD prior to execution.

Please be advised that we are in the process of reviewing the proposal and selection process for two Requests for Proposals (RFP) for legal representation in general legal matters and eviction and collections. The proposed agreement appears to be a result of the RFP for legal representation in general legal matters, which has not been approved. Since the RFP has not been approved, we do not recommend execution of this contract.

Please note that fees incurred prior to execution of such an agreement are ineligible expenditures and cannot be made retroactive. Additionally, the PHA's current contract with Terry G. Davis expired December 31, 2004, and expenses incurred after this date are ineligible for payment by the PHA.

Should you have any questions, please do not hesitate to contact me at (205) 731-2630, extension 1101.

Sincerely,

R. Edmond Sprayberry
Director
Office of Public Housing

cc:
Mr. Thomas Taylor,
Chairman, Board of Commissioners

www.hud.gov          espanol.hud.gov

SPRAY-0046