IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TERRY G. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | 2:05-cv-01235-MHT-DRB |
| R. EDMOND SPRAYBERRY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SPRAYBERRY'S REPLY MEMORANDUM
TO PLAINTIFF'S JANUARY 26, 2007, RESPONSE TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

**COMES NOW** Defendant R. Edmond Sprayberry, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and files this Reply to Plaintiff's January 26, 2007, Response to Defendants McInnish's and Sprayberry's Motions for Summary Judgment. Sprayberry explained in his initial Summary Judgment Memorandum that Plaintiff lacked standing to challenge Sprayberry's decisions concerning the Montgomery Housing Authority's ("MHA") use of federal funds and procurement actions, and that even if Plaintiff had standing, Sprayberry was protected by qualified immunity from Plaintiff's claims that Sprayberry had somehow violated Plaintiff's equal protection (race), due process (property), and speech rights under First, Fifth, and Thirteenth Amendments. In his response Plaintiff (who is apparently representing himself despite having two counsel of record) submits an 8-page "statement of the facts" that is full of speculation and conclusory assertions, that is not supported by specific citations to admissible evidence as required by this Court's Uniform Scheduling Order, and that fails to address <u>any</u> of Sprayberry's arguments. Accordingly, for the following

reasons, as well as those in Sprayberry's Initial Memorandum, this Court should grant Sprayberry's Motion for Summary Judgment in its entirety.

## ARGUMENT AND CITATION OF AUTHORITY

**I.     Plaintiff Cannot Rely on Conclusory Allegations or Speculation.**

As an initial matter, this Court should refuse to consider Plaintiff's conclusory assertions in his Response that are not supported by specific citations to record evidence. See Skyline Corp v. NLRB, 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence"). This Court's Uniform Scheduling Order specifically states that:

> In all briefs filed by any party relating to the motion [for summary judgment], the discussion of the evidence in the brief must be accompanied by a specific reference, by page and line, to where the evidence can be found in a supporting deposition or document. Failure to make such specific reference will result in the evidence not being considered by the Court.

(February 21, 2006 Uniform Scheduling Order, at § 2) (emphasis added). The Court's Uniform Scheduling Order is in accordance with settled authority holding that a party opposing summary judgment may not simply rest upon his allegations in the complaint or conclusory statements in his pleadings. See Fed. R. Civ. P. 56; Resolution Trust Corp. V. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995). See also Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("This Court has consistently held that conclusory allegations without specific supporting facts have no probative value."). Indeed, the law is clear that a party responding to a motion for summary judgment must go beyond the pleadings and provide specific citations to admissible record evidence. See Johnson v. Federal Express Corp., 147 F. Supp. 2d 1268, 1271 (M.D. Ala. 2001); Blalock v. Dale Cty. Bd. of Educ., 84 F. Supp. 2d 1291, 1309 (M.D. Ala. 1999).

Contrary to this Court's Uniform Scheduling Order's explicit instructions and Plaintiff's duties under Rule 56, Plaintiff's Response is nothing but speculation masquerading as "fact,"

with not a single factual citation in the first six pages and only a few on the last two pages. Plaintiff even repeats the entire paragraph 15 of his Second Amended Complaint on pages 3 and 4 of his Response as through it were a "fact," without any citations to record evidence. None of Plaintiff's conclusory statements, however, are evidence in this case. See Skyline Corp., 613 F.2d at 1337. Accordingly, this Court should not consider any of Plaintiff's conclusory and unsupported assertions. See Johnson, 147 F. Supp. 2d at 1271 (granting summary judgment "because Plaintiff has not complied with the court's orders for citation to the record," and "[a]s the Uniform Scheduling Order makes clear, counsel must choose his specific facts and explain why the law supports his claim on the facts."). See also Jones v. Sheehan, Young, & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996) ("rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.").

Furthermore, the few citations that Plaintiff does include in his Response constitute inadmissible hearsay, are misrepresentations of actual evidence, or are entirely irrelevant.[1] See Macuba v. DeBoer, 193 F.3d 1316, 1322 (11th Cir.1999). Plaintiff, for example, cites to a HUD Litigation Handbook and boldly asserts that the MHA did not require Sprayberry's approval to pay Plaintiff $25,000 in federal funds to investigate McInnish. (Pl. Resp. at 8). In making this argument, Plaintiff relies on his own interpretation of a Litigation Handbook section that relates to when a public housing authority has to obtain the approval of HUD's Regional Counsel to

---

[1] Plaintiff has seven citations on the last two pages of his brief, but none of them are the specific citations required by the Uniform Scheduling Order. Indeed, Plaintiff for the most part cites to exhibits, that were not attached to his response, for propositions that are inadmissible hearsay. See Macuba, 193 F.3d at 1322. For example, on page 7 of his Response, Plaintiff states "According to an email," and then cites to an email's contents for the truth of alleged assertions therein. (Pl. Resp. at 7). This is textbook hearsay, as a document cannot be used to prove the truth of its contents. See Means v. Cullen, 297 F. Supp. 2d 1148, 1152 (W.D. Wis. 2003) ("the truth of the matter asserted in the email is hearsay and cannot be considered....").

enter Litigation Contracts. (Sprayberry Dep. 221:3-222:20, Ex. 25). Since Sprayberry was HUD's Director of Public Housing for Birmingham, and not HUD's Regional Counsel, and because his office made decisions regarding the MHA's use of programmatic funds and procurement transactions and not Litigation Contracts, this Handbook section is entirely irrelevant to the issues in this lawsuit. (Sprayberry Dep. 15:16-19, 221:10-222:20, 223:16-224:14, Ex. 25). It is undisputed that HUD had oversight authority over the MHA's use of federal funds, and that after HUD instituted procurement review on November 18, 2004, the MHA required HUD review and approval to spend federal funds. (Sprayberry Dec. ¶¶ 2-5, 17-18; Harmon Dec. ¶¶ 3-6, Ex. A; Poteete Dec. ¶¶ 5-6; Plaintiff Dep II, 94:20-95:14).

Plaintiff also cites to a January 12, 2005, letter from Sprayberry to the MHA that was one of several letters exchanged between HUD and the MHA regarding the MHA's procurement actions, and boldly proclaims that the letter indicates that Sprayberry "refused to allow the MHA to re-hire me" for the 2005-2006 term. (Pl. Resp. at 6). The January 12, 2005, letter, however, does nothing more than advise the MHA that HUD could not recommend that the MHA execute a contract before HUD had finished the review and approval process required by the November 18, 2004, procurement review.[2] (Sprayberry Dep. 156:18-158:13, Ex. 16B; Sprayberry Dec. ¶ 31; Poteete Dec. ¶ 18; Harmon Dec. ¶ 18). Indeed, such a premature contract would be null and void because HUD's review and approval process was still ongoing. (Sprayberry Dec. ¶ 31; Harmon Dec. ¶ 18). Sprayberry never advised the MHA that it could never hire Plaintiff to be

---

[2] The letter in question simply states, in pertinent part, that "Please be advised that we [HUD] are in the process of reviewing the proposal and selection process for the two Requests for Proposals (RFP) for legal representation in general legal matters and eviction and collections. The proposed agreement appears to be the result of the RFP for legal representation in general legal matters, which has not been approved. Since the RFP has not been approved, we do not recommend execution of this contract." (Poteete Dec. ¶ 18, Ex. B).

its counsel for the 2005-2006 term. (Sprayberry Dec. ¶ 32; Harmon Dec. ¶ 19; Poteete Dec. ¶ 22). Ultimately, the MHA decided that another firm was more qualified than Plaintiff's firm, and HUD approved the selection after reviewing the MHA's submissions and determining that the MHA had complied with HUD and MHA procurement guidelines.[3] (Poteete Dec. ¶¶ 19-25).

In sum, Sprayberry provided extensive citations to record evidence in his Initial Memorandum in support of all the undisputed facts in his Statement of Facts. (Init. Mem. at 3-16). Plaintiff has failed to respond to any of them, and thus they are deemed admitted for purposes of this Summary Judgment Motion. See Johnson, 147 F. Supp. 2d at 1271.

**II.     Sprayberry Is Entitled To Summary Judgment On All Plaintiff's Claims.**

    **A.     Plaintiff Has Not Presented a Single Argument Against Summary Judgment.**

This Court should grant summary judgment to Sprayberry because Plaintiff has not presented any arguments in opposition to Sprayberry's Motion for Summary Judgment. See Resolution Trust Corp., 43 F.3d at 599. The Eleventh Circuit has recognized that "[p]resenting ... arguments in opposition to ... summary judgment is the responsibility of the non-moving party, not the court." See Blue Cross & Blue Shield of Ala. v. Weitz, 913 F.2d 1544, 1550 (11th Cir. 1990). Moreover, the Eleventh Circuit has stated that a district court has no duty to sift through the record and "distill any possible argument which could be made based on the materials before the court." See id. Instead, it is settled that an argument not advanced by the non-moving party is considered abandoned. See Resolution Trust Corp., 43 F.3d at 599 ("the onus is upon the parties to formulate arguments; grounds ... not relied upon in summary

---

[3] Sprayberry explained all HUD's decisions relating to the MHA's procurement process for hiring new law firms to represent it for the 2005-2006 term on pages 12-15 of his Initial Memorandum, and he provided extensive and specific record citations in support of all his factual assertions. Sprayberry refers the Court to this discussion.

judgment are deemed abandoned"); Signore v. City of Montgomery, 354 F. Supp. 2d 1290, 1296 n. 3 (M.D. Ala. 2005). Furthermore, summary judgment is appropriate when the non-moving party fails to oppose a well-supported argument for summary judgment on a claim. See Blalock, 84 F. Supp. 2d at 1309; Brewer v. Purvis, 816 F. Supp. 1560, 1579 (M.D. Ga. 1993) ("Summary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument...").

In the present case, Plaintiff's Response contains neither any legal authority nor any arguments in opposition to the extensive arguments and legal authority cited by Sprayberry in his Initial Memorandum. Instead, Plaintiff does nothing but set forth generalized complaints about the hourly rate he agreed to be paid by the MHA (that Sprayberry had nothing to do with) and Sprayberry's oversight decisions regarding the MHA that (in Plaintiff's opinion, apparently) made the MHA's task of disciplining McInnish more difficult. (Pl. Resp., at 1-8). He makes no attempt to explain how his unsupported speculation relates to Sprayberry's arguments that Plaintiff's First, Fifth, and Thirteenth Amendment claims against him fail as a matter of law for lack of standing and due to qualified immunity. Accordingly, he has completely failed to carry his burden, and this Court should grant Sprayberry's Motion for Summary Judgment on all Plaintiff's claims. See Blue Cross & Blue Shield of Ala., 913 F.2d at 1550. See also Blalock, 84 F.3d at 1309 ("Plaintiff has not addressed this claim in opposing summary judgment. In resting on [his] pleadings, the court finds that plaintiff has not met [his] burden of demonstrating material issues of material fact ... and has abandoned this claim.").

  **B.** **Sprayberry is Entitled To Judgment as a Matter of Law.**

Plaintiff's conclusory and legally-deficient Response is insufficient to defeat Sprayberry's well-supported Motion for Summary Judgment. See Johnson, 147 F. Supp. 2d at 1271. Plaintiff purports to bring this action against Sprayberry pursuant to Bivens v. Six

Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and he bears the burden of showing that Sprayberry, though Sprayberry's personal actions and not by vicarious liability or respondeat superior, violated Plaintiff's clearly established constitutional rights. See Dalrymple v. Reno, 334 F.3d 991, 995 (11th Cir. 2003). Sprayberry established in his Initial Memorandum that Plaintiff's claims against him fail as a matter of law. (Init. Mem. at 18-44). First, Plaintiff lacks standing to litigate alleged harms to the MHA that only incidentally impacted him. (Init. Mem. at 17-21). Second, even if Plaintiff had standing, Sprayberry is entitled to qualified immunity because Plaintiff cannot show that Sprayberry violated any constitutional rights, much less any clearly established rights. (Init. Mem. at 21-44).

  1. **Plaintiff Lacks Standing.**

This Court should grant summary judgment to Sprayberry because Plaintiff did not suffer the "personal and individual" injury necessary for him to have standing to challenge Sprayberry's decisions regarding the MHA. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992); Pagan v. Calderon, 448 F.3d 16, 29 (1st Cir. 2006). Sprayberry explained in his Initial Memorandum that Plaintiff did not suffer any "personal and individual" injury but was instead seeking to litigate alleged injuries to the MHA that may have incidentally affected him through his role as a MHA contract attorney. (Init. Mem. at 17-21). Plaintiff, the party seeking to assert federal jurisdiction, bears the burden of establishing that he has standing to assert claims against Sprayberry. See Daimlerchrysler Corp. v. Cuno, 126 S.Ct. 1854, 1861 (2006). Since he failed to acknowledge or address Sprayberry's arguments as to why he lacks standing, his claims must be dismissed for this reason alone. See Miccosukee Tribe of Indians of Florida v. Florida State Athletic Assoc., 226 F.3d 1226, 1229-1230 (11th Cir. 2000) ("We should not speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when [he] has demonstrated none.").

Moreover, even a casual reading of Plaintiff's Response reiterates that Plaintiff is really using this lawsuit to try to improperly challenge Sprayberry's oversight decisions that Plaintiff believes impacted the MHA's ability to discipline McInnish.  (Pl. Resp. at 5-7).  Plaintiff, for example, alleges in his Response that "Sprayberry sought to retaliate against the MHA by immediately placing total procurement restrictions on the MHA without cause or explanation." (Pl. Resp. at 5).  He further alleges that "[i]mmediately upon learning of McInnish's suspension, Sprayberry began efforts to impede the investigation of McInnish," and that "[a]t every turn, ... Sprayberry used his authority to impede the investigation of McInnish and the presentation of charges in support of a recommendation of termination."  (Pl. Resp. at 5). He further argues that "Sprayberry's interference with the MHA's Board's effort to discipline its executive director was extraordinary and unprecedented. (Pl. Resp. at 6).  Perhaps the most telling allegation in Plaintiff's Response is his assertion that an October 31, 2005, report from Sprayberry to the MHA Board, that was issued more than ten months after Plaintiff's contract with the MHA ended, was "further retaliation against the Board" by Sprayberry.  (Pl. Resp. at 7).

In short, Plaintiff cannot assert claims on behalf of the MHA, the MHA Board, or any other third parties, as he is trying to do in this lawsuit. (Pl. Dep. II, 166:10-14; Pl. Dep. III, 99:6-11).  Plaintiff only has standing to litigate personal and individualized injuries that he suffered that are not derivative of harm suffered by other parties.  See Lujan, 504 U.S. at 560-61; Pagan, 448 F.3d at 29.  Since all Plaintiff's alleged injuries are incidental to harms allegedly suffered by the MHA, Plaintiff lacks standing to pursue any claims against Sprayberry in this lawsuit.  See Pagan, 448 F.3d at 29.  See also Brewer, 816 F. Supp. at 1579 ("Summary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument...").

**2.     Sprayberry is Protected By Qualified Immunity.**

In addition to Plaintiff's lack of standing, this Court should also grant summary judgment to Sprayberry because he is protected by qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Sprayberry explained his entitlement to qualified immunity in his Initial Memorandum. (Init. Mem. at 21-44). Qualified immunity "completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" See Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). The purpose of qualified immunity is to allow government officials to carry out their duties without fear of personal liability or harassing litigation, and it operates to protect all but the "plainly incompetent or one who is knowingly violating the federal law." See Bashir v. Rockdale County, 445 F.3d 1323, 1327 (11th Cir. 2006). Since Sprayberry was at all times acting within his discretionary authority as HUD's Director of Public Housing in Birmingham, Plaintiff bears the burden of showing that Sprayberry is not entitled to qualified immunity.[4]  See Gray v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006). For the reasons that follow, as well as those in Sprayberry's Initial Memorandum, Plaintiff has failed to meet his burden of showing that Sprayberry violated any constitutional rights, much less any clearly established rights. See id.

**a.     No Violation of any Constitutional Rights.**

**I.     Race Discrimination (Fifth Amendment).**

Sprayberry established in his Initial Memorandum that Plaintiff could not show that Sprayberry had discriminated against him based on his race in violation of the Fifth Amendment. (Init. Mem. at 24-30). To assert a race discrimination claim under the Fifth Amendment, a

---

[4]Aside from Sprayberry's undisputed testimony cited on pages 22-23 of his Initial Memorandum, Plaintiff concedes this point in his Response through his allegations that Sprayberry used his authority as Director of Public Housing when taking various actions. (Pl. Resp. at 3, 5, 8).

plaintiff must show that: (1) the defendant treated him differently from similarly-situated persons; and (2) the defendant treated him differently in order to intentionally discriminate against him due to his race. See Sweet v. Secretary, Dep't of Corrections, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). Sprayberry explained that Plaintiff could not satisfy either of these two necessary elements for any of the claims in his Complaint. (Init. Mem. at 25-30). Sprayberry also provided extensive evidence of legitimate, non-discriminatory reasons for all the actions challenged by Plaintiff in this lawsuit. (Init. Mem. at 1-16, 29-30).

Plaintiff's Response fails to address Sprayberry's arguments. He identifies no similarly situated persons who Sprayberry treated more favorably than him, and offers no evidence that any of Sprayberry's actions were motivated by Plaintiff's race. In fact, his eight-page response only includes one conclusory reference to race discrimination.[5] (Pl. Resp. at 4-5). Plaintiff's unsupported and conclusory allegation is not sufficient to meet his burden. See, e.g., Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996) ("Conclusory allegations of discrimination ... are not sufficient to raise an inference ... of intentional discrimination...."). Accordingly, the Court should grant summary judgment on Plaintiff's discrimination claims.

---

[5]Plaintiff makes the conclusory and unsupported assertion that "McInnish and Sprayberry were fully aware [sic] discriminating against Plaintiff by reason of his race by refusing to pay him at the same hourly rate said defendants paid white attorneys working for the MHA with less qualifications." (Pl. Resp. at 5). It is undisputed, however, that Sprayberry had no involvement in reviewing or setting the hourly rate that the MHA agreed to pay Plaintiff or any other contract attorneys it hired in January 2003. (McInnish Dec. ¶ 12; Sprayberry Dec. ¶¶ 9-10; Poteete Dec. ¶ 4). Plaintiff, who has no personal knowledge of any conversations between Sprayberry and McInnish, even admits that he never asked anyone at HUD (including Sprayberry) to raise the hourly rate he agreed to be paid by the MHA. (Pl. Dep. II, 20:9-11, 30:16-21). Aside from the fact that Sprayberry had nothing to do with the hourly rate that Plaintiff agreed to be paid by the MHA, McInnish explained in his summary judgment memorandum why the hourly rate that the MHA agreed to pay Plaintiff was not discriminatory and why Plaintiff's claims regarding the hourly rate failed as a matter of law. (McInnish Memo. for Summary Judgment, at 38-41). Since Plaintiff completely failed to address McInnish's arguments in his Response, summary judgment is appropriate for that reason as well. See Brewer, 816 F. Supp. at 1579.

See Sweet, 467 F.3d at 1319. See also Brewer, 816 F. Supp. at 1579 ("Summary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument on this issue.").

### ii.  Race Discrimination (Thirteenth Amendment).

Sprayberry established in his Initial Memorandum that Plaintiff could not show that Sprayberry had discriminated against him based on his race in violation of the Thirteenth Amendment. (Init. Mem. at 24-30). A plaintiff seeking to show that he was enslaved or subjected to involuntary servitude in violation of the Thirteenth Amendment must show that he was physically restrained, threatened with the use of physical restraint or injury, or coerced by threat of legal process, due to his race. See Jenkins v. Trustees of Sandhills Comm. College, 259 F. Supp. 2d 432, 440 (M.D. N.C. 2003). Sprayberry established that Plaintiff could not show that he was enslaved, subjected to involuntary labor, subjected to physical restraints, threats, or coercion, or that any act taken by Sprayberry was due to Plaintiff's race. (Init. Mem. at 31-32).

Plaintiff completely failed to address Sprayberry's extensive arguments in his Response. Accordingly, he has not shown that Sprayberry violated the Thirteenth Amendment, and this Court should grant summary judgment on these claims. See Resolution Trust Corp., 43 F.3d at 599; Brewer, 816 F. Supp. at 1579 ("Summary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument on this issue.").

### iii.  Fifth Amendment (property).

Sprayberry established in his Initial Memorandum that Plaintiff could not show that Sprayberry had violated his Fifth Amendment property rights. (Init. Mem. at 24-30). To state a Fifth Amendment due process claim relating to an alleged property interest, a plaintiff must show that (1) he had a property interest protected by the Fifth Amendment; and (2) he was deprived of that property interest by governmental action without due process of law. See Bank of Jackson County v. Cherry, 966 F.2d 1406 (11th Cir. 1992). Sprayberry provided extensive

evidence and case law establishing that Plaintiff lacked any protected property interest and was not deprived of any property without due process. (Init. Mem. at 32-37).

Plaintiff completely failed to address Sprayberry's arguments in his Response. Accordingly, he has not shown that Sprayberry violated his Fifth Amendment rights, and this Court should grant summary judgment on these claims. See Resolution Trust Corp., 43 F.3d at 599; Brewer, 816 F. Supp. at 1579 ("Summary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument on this issue.").

### iv. First Amendment (speech).

Sprayberry established in his Initial Memorandum that Plaintiff could not show that Sprayberry had violated his First Amendment rights. (Init. Mem. at 37-40). To state a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in constitutionally-protected speech; and (2) that the speech played a substantial or motivating role in the government's decision to take an adverse action against him. See Board of Commissioners v. Umbehr, 518 U.S. 668, 675-676 (1996). Sprayberry provided extensive legal authority and factual citations establishing that Plaintiff could not satisfy either of these elements. (Init. Mem. at 38-40). Sprayberry also offered extensive evidence that HUD's actions would have been the same regardless of anything Plaintiff may have said, thereby establishing an affirmative defense to any First Amendment claim. (Init. Mem. at 40).

Plaintiff completely failed to address Sprayberry's arguments in his Response. Accordingly, Plaintiff has not shown that Sprayberry violated his First Amendment rights, and the Court should grant summary judgment on these claims. See Resolution Trust Corp., 43 F.3d at 599; Brewer, 816 F. Supp. at 1579 ("Summary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument on this issue.").

      **b.**      **No Violation of Clearly Established Constitutional Rights.**

Finally, Sprayberry moved for summary judgment on the ground that he was also entitled to qualified immunity because Plaintiff could not show that any of the allegedly-violated rights were "clearly established" on the specific facts of this case. (Init. Mem. at 41-44). To overcome qualified immunity, a plaintiff bears the heavy burden of showing that "it would be clear to a reasonable official that his ... conduct was unlawful in the situation he confronted." See Saucier v. Katz, 533 U.S. 194, 202 (2001); Gray, 458 F.3d at 1303. This analysis turns on review of "the precise actions of each [defendant] and the precise information possessed by each [defendant] in order to determine whether a reasonable public official could have believed that his or her actions were lawful, in light of clearly established law." See Dolihite v. Maughan, 74 F.3d at 1027, 1034, n.3 (11th Cir. 1996). Under this standard, "if reasonable public officials could differ on the lawfulness of a defendant's actions, then the defendant is entitled to qualified immunity." See Storck v. City of Coral Springs, 354 F.3d 1307, 1315 (11th Cir. 2003).

Plaintiff, who bears the burden of showing that qualified immunity is not appropriate, completely failed to address Sprayberry's qualified immunity argument. Accordingly, this Court should grant summary judgment on all Plaintiff's claims on the grounds of qualified immunity. See Resolution Trust Corp., 43 F.3d at 599; Brewer, 816 F. Supp. at 1579 ("Summary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument on this issue.").

**CONCLUSION**

Accordingly, for the foregoing reasons, and those in Sprayberry's Initial Memorandum, Sprayberry respectfully requests that the Court grant Sprayberry's Motion for Summary Judgment in its entirety, enter an appropriate Order dismissing all Plaintiff's claims with prejudice, and award Sprayberry costs in this action.

Respectfully submitted this 12th day of February, 2007.

                                        LEURA G. CANARY
                                      United States Attorney

By:    s/James J. DuBois
            JAMES J. DUBOIS
            Assistant United States Attorney
            Georgia Bar No. 231445
            United States Attorney's Office
            Post Office Box 197
            Montgomery, AL 36101-0197
            Telephone: (334) 223-7280
            Facsimile: (334) 223-7418
            E-mail: james.dubois2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Plaintiff, counsel for Plaintiff, counsel for Defendant McInnish, and counsel for Defendant Montgomery Housing Authority.

                                              s/James J. DuBois
                                              Assistant United States Attorney