**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| TERRY G. DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: **2:05-cv-01235-MHT-TFM** |
| | ) |
| R. EDMOND SPRAYBERRY, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT SPRAYBERRY'S REPLY MEMORANDUM**
**TO PLAINTIFF'S FEBRUARY 9, 2007, RESPONSE TO DEFENDANTS'**
**MOTIONS FOR SUMMARY JUDGMENT**

**COMES NOW** Defendant R. Edmond Sprayberry, by and through Leura G. Canary,

United States Attorney for the Middle District of Alabama, and files this Reply to Plaintiff's

Second Response to Defendants McInnish's and Sprayberry's Motions for Summary Judgment,

dated February 9, 2007.  In his Second Response to Sprayberry's Motion, Plaintiff offers nothing

but speculation, conclusory allegations, and legal standards without any supporting argument.

Accordingly, for the following reasons, as well as those in Sprayberry's Initial Memorandum,

this Court should grant Sprayberry's Motion for Summary Judgment in its entirety.

**ARGUMENT AND CITATION OF AUTHORITY**

Plaintiff's  conclusory  and  legally-deficient  Response  is  insufficient  to  defeat

Sprayberry's well-supported Motion for Summary Judgment.  See Resolution Trust Corp. v.

Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995); Johnson v. Federal Express Corp., 147 F.

Supp. 2d 1268, 1271 (M.D. Ala. 2001).  Plaintiff bring this action against Sprayberry pursuant to

Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971),

and he bears the burden of showing that Sprayberry, though Sprayberry's personal actions and

not by vicarious liability or <u>respondeat superior</u>, violated Plaintiff's clearly established constitutional rights under the First, Fifth, and Thirteenth Amendments. <u>See</u> <u>Dalrymple v. Reno</u>, 334 F.3d 991, 995 (11th Cir. 2003). Sprayberry established in his Initial Memorandum that Plaintiff lacks standing to litigate alleged harms to the Montgomery Housing Authority ("MHA") that only incidentally impacted him. (Init. Mem. at 17-21). Sprayberry also established in his Initial Memorandum that, even if Plaintiff had standing to assert any claims, Sprayberry is entitled to qualified immunity because Plaintiff cannot show that Sprayberry violated Plaintiff's constitutional rights at all, much less any clearly established constitutional rights. (Init. Mem. at 21-44). Plaintiff's Response does nothing to establish his standing or defeat Sprayberry's entitlement to qualified immunity.

## I.  Plaintiff Fails To Oppose Sprayberry's Well-Supported Arguments For Summary Judgment With Specific Arguments and Evidence As Required By Rule 56.

As an initial matter, Plaintiff's Response is factually and legally deficient because he has failed to oppose Sprayberry's arguments for summary judgment with specific citations to admissible evidence or legal arguments. <u>See</u> <u>Resolution Trust Corp.</u>, 43 F.3d at 599; <u>Johnson</u>, 147 F. Supp. 2d at 1271; Fed. R. Civ. P. 56. When opposing a motion for summary judgment, a plaintiff may not simply rest upon mere allegations or conclusory statements. <u>See</u> <u>Resolution Trust Corp.</u>, 43 F.3d at 599; <u>Evers v. General Motors Corp.</u>, 770 F.2d 984, 986 (11th Cir. 1985). Instead, a plaintiff must provide factual citations to record evidence and specific arguments in support of his claims. <u>See</u> <u>Blue Cross & Blue Shield of Ala. v. Weitz</u>, 913 F.2d 1544, 1550 (11th Cir. 1990) ("[p]resenting ... arguments in opposition to ... summary judgment is the responsibility of the non-moving party, not the court."); <u>Johnson</u>, 147 F. Supp. 2d at 1271 ("counsel must choose his specific facts and explain why the law supports his claim on the

facts."). The Eleventh Circuit has held that a district court has no duty to sift through the record and "distill any possible argument which could be made based on the materials before the court." See Blue Cross & Blue Shield of Ala., 913 F.2d at 1550. Accordingly, claims and arguments not relied upon by a party opposing summary judgment are deemed abandoned. See Resolution Trust Corp., 43 F.3d at 599; Signore v. City of Montgomery, 354 F. Supp. 2d 1290, 1296 n. 3 (M.D. Ala. 2005); Blalock v. Dale Cty. Bd. of Educ., 84 F. Supp. 2d 1291, 1309 (M.D. Ala. 1999); Brewer v. Purvis, 816 F. Supp. 1560, 1579 (M.D. Ga. 1993).

In the present case, Plaintiff's Response consists of a ten-page "Statement of the Facts" followed by several pages of legal standards that fail to address Sprayberry's specific and well-supported arguments for summary judgment. The vast majority of the statements in Plaintiff's Response lack any citation to evidence or legal authority and are nothing more than the speculation of counsel. These conclusory assertions are not evidence, and they should not be considered by the Court.[1]  See Skyline Corp. v. NLRB, 613 F.2d 1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence"). See also Evers, 770 F.2d at 986 ("This Court has consistently held that conclusory allegations without specific supporting facts have no probative value."). The few citations that Plaintiff does include in his Response consist of

---

[1]Plaintiff's conclusory assertions are directly contrary to this Court's Scheduling Order, which specifically states that "[i]n all briefs filed by any party relating to the motion [for summary judgment], the discussion of the evidence in the brief must be accompanied by a specific reference, by page and line, to where the evidence can be found in a supporting deposition or document. Failure to make such specific reference will result in the evidence not being considered by the Court." (February 21, 2006 Uniform Scheduling Order, at § 2) (emphasis added).

inadmissible hearsay[2] and rampant speculation[3] that should not be considered by the Court.  See

Macuba v. DeBoer, 193 F.3d 1316, 1322 (11th Cir.1999).

Not only are Plaintiff's conclusory assertions, speculation, and hearsay inadmissible, but

they are also entirely irrelevant to the claims in this case.  Indeed, Plaintiff's "legal" section of

his Response contains nothing but general legal standards, some of which do not even relate to

his claims in this lawsuit, that do not in any way demonstrate how his "facts" support his

claims.[4]  (Pl. Resp. at 11-16).  None of Plaintiff's assertions establish that Plaintiff has standing

or that Sprayberry discriminated against Plaintiff due to his race, violated his right to due

---

[2]Plaintiff, for example, in one place states "according to an email" and then cites to the email's contents for the truth of alleged assertions therein.  (Pl. Resp. at 8).  This is textbook hearsay, as a document cannot be used to prove the truth of its contents.  See Means v. Cullen, 297 F. Supp. 2d 1148, 1152 (W.D. Wis. 2003) ("the truth of the matter asserted in the email is hearsay and cannot be considered....").  Plaintiff cannot rely on hearsay.  See Macuba, 193 F.3d at 1322.

[3]Plaintiff, for example, cites to his own deposition testimony and proclaims that Sprayberry "forced the MHA to change its evaluation process and create a new process to insure that Plaintiff and his firm would not score the highest in the process" after HUD determined that the MHA had failed to follow procurement policies or adequately document its selections for the contract attorneys it prematurely selected for the 2005-2006 term.  (Pl. Resp. at 7-8).  Plaintiff lacks personal knowledge of any communications between HUD and the MHA or what the MHA did when re-evaluating attorneys and making its hiring decisions, (Pl. Dep. II, 128:5-129:6), and his speculation is irrelevant and inadmissible.  See Fed. R. Evid. P. 602.  Plaintiff also cites to a letter and offers his speculative opinion that Sprayberry may have required the MHA to use a HUD employee from Atlanta when conducting the re-evaluation.  (Pl. Resp. at 8).  The letter, which speaks for itself, provides no evidence that Sprayberry required the MHA to use any HUD employee for anything; in fact, it remains undisputed that the MHA requested assistance, that HUD sent someone from Atlanta, and that Sprayberry had no role in the MHA's subsequent decision not to hire Plaintiff's law firm.  (Sprayberry Dec. ¶¶ 32-34; Harmon Dec. ¶¶ 19-20; Poteete Dec. ¶ 22).

[4]Plaintiff's Response, for example, includes a section entitled "Discrimination" where he cites Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and 42 U.S.C. § 1985(3).  (Pl. Resp. at 10-11).  These claims were not pled in Plaintiff's Second Amended Complaint and are not before this Court.  See Coon v. Ga. Pacific Corp., 829 F.2d 1563, 1569 (11th Cir. 1987).  Plaintiff also cites to 42 U.S.C. § 1983 and the Fourteenth Amendment, even though this Court already dismissed his section 1983 and Fourteenth Amendment claims against Sprayberry in response to Sprayberry's Motion to Dismiss.  (August 10, 2006 Order, docket no. 55).

process, or violated his First Amendment Rights.  Furthermore, none of Plaintiff's conclusory assertions come close to overcoming Sprayberry's entitlement to qualified immunity.

In sum, Plaintiff has failed to carry his burden of presenting arguments in opposition to Sprayberry's well-supported Motion, and this Court should grant Sprayberry summary judgment on all Plaintiff's claims for this reason alone.  See Blue Cross & Blue Shield of Ala., 913 F.2d at 1550.  See also Blalock, 84 F.3d at 1309 ("Plaintiff has not addressed this claim in opposing summary judgment.  In resting on [his] pleadings, the court finds that plaintiff has not met [his] burden of demonstrating material issues of material fact ... and has abandoned this claim.").

## II.    Sprayberry is Entitled To Judgment as a Matter of Law.

### A.    Plaintiff Lacks Standing.

This Court should grant summary judgment to Sprayberry because Plaintiff did not suffer the "personal and individual" injury necessary for him to have standing to challenge Sprayberry's decisions regarding the MHA.  See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992); Pagan v. Calderon, 448 F.3d 16, 29 (1st Cir. 2006).  Sprayberry explained in his Initial Memorandum that Plaintiff did not suffer any "personal and individual" injury but was instead seeking to litigate alleged injuries to the MHA that may have incidentally affected him through his job as a MHA contract attorney.  (Init. Mem. at 17-21).  Plaintiff, the party seeking to assert federal jurisdiction, bears the burden of establishing that he has standing to assert claims against Sprayberry.  See DaimlerChrysler Corp. v. Cuno, 126 S.Ct. 1854, 1861 (2006).  He has not met his burden.  See id. at 1861 & n.3 (noting court should "presume that [it] lack[s] jurisdiction unless the contrary appears affirmatively from the record.").

Plaintiff's sole possible argument in response to Sprayberry's standing argument is the baseless and unsupported assertion on the last page of his Response that "the standing issue has

been waived under Federal Rule 9 of the Federal Rules of Civil Procedure." (Pl. Resp. at 16). Standing relates to the subject matter jurisdiction of a court to hear a particular dispute, and it is well-settled that standing "cannot be waived or otherwise conferred upon the court by the parties." See Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974-975 (11th Cir. 2005). See also United States v. Hays, 515 U.S. 737, 742 (1995) ("The question of standing is not subject to waiver."); National Organization for Women, Inc., v. Scheidler, 510 U.S. 249, 255 (1994) ("standing represents a jurisdictional requirement which remains open to review at all stages of the litigation."). Indeed, so important is the issue of standing that the Supreme Court has pronounced that courts "are obliged to consider questions of standing regardless of whether the parties have raised them." See Hays, 515 U.S. at 742; Bochese, 405 F.3d at 975. Plaintiff's waiver argument is frivolous. See Hays, 515 U.S. at 741.

Sprayberry's arguments regarding Plaintiff's lack of standing in his Initial Memorandum thus remain unopposed. (Init. Mem. at 17-21). Moreover, even a casual reading of Plaintiff's Response reiterates that Plaintiff is really using this lawsuit to try to improperly challenge Sprayberry's oversight decisions that Plaintiff believes impacted the MHA's ability to investigate and discipline McInnish.[5] (Pl. Resp. at 5-9). Since Plaintiff's alleged injuries are

---

[5]Plaintiff focuses on the alleged impact of Sprayberry's decisons on the MHA, instead of the impact of any such decisions on him personally. He alleges, for example, that "Sprayberry sought to retaliate against the MHA by immediately placing total procurement restrictions on the MHA, without cause or explanation...." (Pl. Resp. at 5). He further alleges that "[a]t every turn, ... Sprayberry used his authority to impede the investigation of McInnish and the presentation of charges in support of a recommendation of termination," and that "Sprayberry's interference with the MHA's Board's effort to discipline its executive director was extraordinary and unprecedented." (Pl. Resp. at 6-7). Plaintiff also argues that Sprayberry "forced the MHA to disregard" a hearing officer for McInnish, and made "false administrative findings against the MHA Board of Commissioners" in an October 31, 2005, report from Sprayberry to the MHA, more than ten months after Plaintiff's contract term with the MHA ended on January 1, 2005. (Pl. Resp. at 8-9).

incidental to harms allegedly suffered by the MHA, (Pl. Dep. II, 142:14-21), he has failed to meet his burden of establishing standing. See Pagan, 448 F.3d at 29.    See also Miccosukee Tribe of Indians of Fla. v. Florida State Athletic Assoc., 226 F.3d 1226, 1229-1230 (11th Cir. 2000) ("We should not speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when [he] has demonstrated none.").

**B.     Sprayberry is Protected By Qualified Immunity.**

This Court should also grant summary judgment to Sprayberry because he is protected by qualified immunity.   See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   Sprayberry extensively explained his entitlement to qualified immunity in his Initial Memorandum.   (Init. Mem. at 21-44).   Qualified immunity "completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"   See Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003).   The purpose of qualified immunity is to allow government officials to carry out their duties without fear of personal liability or harassing litigation, and it operates to protect all but the "plainly incompetent or one who is knowingly violating the federal law."   See Bashir v. Rockdale County, 445 F.3d 1323, 1327 (11th Cir. 2006).   Since Sprayberry was at all times acting within his discretionary authority as HUD's Director of Public Housing in Birmingham, Plaintiff bears the burden of showing that Sprayberry is not entitled to qualified immunity.[6]   See Gray v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006).   Plaintiff has utterly failed to meet his burden.

---

[6]Plaintiff concedes that Sprayberry acted within his discretionary authority by failing to oppose Sprayberry's well-supported argument and evidence on pages 22-23 of his Initial Memorandum on this issue.   See Blalock, 84 F.3d at 1309.

1.      **No Violation of any Constitutional Rights.**

        a.      **Race Discrimination (Fifth Amendment).**

Sprayberry established in his Initial Memorandum that Plaintiff could not show that Sprayberry had discriminated against him based on his race in violation of the Fifth Amendment. (Init. Mem. at 24-30).   To assert a race discrimination claim under the Fifth Amendment, a plaintiff must show that: (1) the defendant treated him differently from similarly-situated persons; and (2) the defendant treated him differently to intentionally discriminate against him due to his race.   See Sweet v. Secretary, Dep't of Corrections, 467 F.3d 1311, 1318-1319 (11th Cir. 2006); Jackson v. City of Auburn, 41 F. Supp. 2d 1300, 1308 (M.D. Ala. 1999).   Sprayberry explained that Plaintiff could not satisfy either of these two necessary elements.   (Init. Mem. at 25-30).   Among other things, Sprayberry provided undisputed evidence that he did not even know Plaintiff's race when taking the actions challenged in this lawsuit, and that he had legitimate, non-discriminatory reasons for his actions. (Init. Mem. at 1-16, 29-30).

In Response to Sprayberry's well-supported arguments, Plaintiff offers nothing but general legal standards and conclusory assertions of discrimination. (Pl. Resp. at 11-12). Plaintiff has made no argument and offered no evidence that Sprayberry treated any similarly-situated individuals differently from Plaintiff because of his race in relation to the hourly rate Plaintiff agreed to be paid by the MHA in his 2003-2004 contract,[7] the legal fees that Plaintiff

---

[7]Notably, Plaintiff concedes that Sprayberry had nothing to do with the setting of the hourly rate he agreed to be paid in his 2003-2004 contract with the MHA.   He fails to even mention Sprayberry during his discussion of this issue on the first three pages of his Response, and when he states "McInnish ... on his own, paid Plaintiff $175/hour for his services and paid Charles Stewart, a white male, $270 per hour." (Pl. Resp. at 1-3, 15).   Besides the undisputed facts that Sprayberry was not involved in setting the hourly rates for MHA attorneys, (Sprayberry Dec. ¶¶ 9-10; Poteete Dec. ¶ 4; McInnish Dec. ¶ 12), and that Plaintiff never asked Sprayberry to increase his hourly rate, (Pl. Dep. II, 20:9-11, 30:16-21), Plaintiff has offered nothing to refute McInnish's argument and evidence that Plaintiff and Stewart were not similarly situated and that non-discriminatory reasons exist for their rates.   (McInnish Summary Judgment Memo., at 15, 39-40).   Summary judgment is appropriate for that reason as well.   See Brewer, 816 F. Supp. at 1579.

sought to obtain from the MHA for investigating McInnish, or Plaintiff's attempt to contract with the MHA for 2005-2006. Indeed, Plaintiff's race discrimination claims fail as a matter of law for the simple reason that it is <u>undisputed</u> that Sprayberry <u>did not know Plaintiff's race</u> when making any of the decisions being challenged in this case. (Init. Mem. at 29; Sprayberry Dec. ¶ 39; Poteete Dec. ¶ 27; Harmon Dec. ¶ 22). Plaintiff's failure to show this knowledge defeats his race discrimination claims because "a decision-maker cannot have been motivated ... by something unknown to him." <u>See</u> <u>Brungart v. BellSouth Teles., Inc.</u>, 231 F.3d 791, 799 (11th Cir. 2000); <u>Shannon v. Nolan</u>, 965 F.2d 348, 352 (7th Cir. 1992). <u>See also</u> <u>Robinson v. Adams</u>, 847 F.2d 1315, 1316 (9th Cir. 1987) ("A [decision-maker] cannot intentionally discriminate against [plaintiff] based on race unless the [decision-maker] knows the [plaintiff's] race.").

In sum, Plaintiff's race discrimination claims fail as a matter of law. <u>See</u> <u>Mayfield v. Patterson Pump Co.</u>, 101 F.3d 1371, 1376 (11th Cir. 1996) ("Conclusory allegations of discrimination ... are not sufficient to raise an inference ... of intentional discrimination...."); <u>Jackson</u>, 41 F. Supp. 2d at 1310 ("Proof of racially discriminatory intent or purpose is required to show a violation" of equal protection). The Court should thus grant Sprayberry summary judgment on all his race discrimination claims. <u>See</u> <u>Brewer</u>, 816 F. Supp. at 1579 ("Summary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument...").

### b.    Race Discrimination (Thirteenth Amendment).

Sprayberry established in his Initial Memorandum that Plaintiff could not show that Sprayberry had discriminated against him based on his race in violation of the Thirteenth Amendment. (Init. Mem. at 24-30). A plaintiff seeking to show that he was enslaved or subjected to involuntary servitude in violation of the Thirteenth Amendment must show that he was physically restrained, threatened with the use of physical restraint or injury, or coerced by threat of legal process, due to his race. <u>See</u> <u>Jenkins v. Trustees of Sandhills Comm. College</u>, 259

F. Supp. 2d 432, 440 (M.D. N.C. 2003).  Sprayberry established that Plaintiff could not show that he was enslaved, subjected to involuntary labor, subjected to physical restraints, threats, or coercion, or that any act taken by Sprayberry was due to Plaintiff's race.  (Init. Mem. at 31-32).

Plaintiff completely failed to address Sprayberry's extensive arguments in his Response. Moreover, as set forth supra, the evidence is undisputed that Sprayberry did not know Plaintiff's race.  (Sprayberry Dec. ¶ 39).  Accordingly, Plaintiff has not shown that Sprayberry violated the Thirteenth Amendment, and this Court should grant summary judgment on these claims.  See Resolution Trust Corp., 43 F.3d at 599; Brewer, 816 F. Supp. at 1579 ("Summary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument on this issue.").

### c.    Fifth Amendment (Property).

Sprayberry established in his Initial Memorandum that Plaintiff could not show that Sprayberry had violated his Fifth Amendment property rights.  (Init. Mem. at 24-30).  To state a Fifth Amendment due process claim relating to an alleged property interest, a plaintiff must show that (1) he had a property interest protected by the Fifth Amendment; and (2) he was deprived of that property interest by governmental action without due process of law.  See Bank of Jackson County v. Cherry, 966 F.2d 1406 (11th Cir. 1992).  Sprayberry provided extensive evidence and case law establishing that Plaintiff lacked any protected property interest and was not deprived of any property without due process.  (Init. Mem. at 32-37).

Plaintiff concedes in his Response that he requires a protected property interest to state a due process claim, but he makes no attempt to respond to Sprayberry's detailed arguments that Plaintiff lacked any such protected property interests.  (Pl. Resp. at 13; Init. Mem. at 32-37).  In fact, Plaintiff's only possible argument regarding his due process claim is his conclusory assertion in the qualified immunity section of his Response that "Sprayberry was aware that Plaintiff had a right to be paid for the services he rendered and a failure to authorize payment

was a violation of Plaintiff's rights to due process."[8]  (Pl. Resp. at 15).  Plaintiff's conclusory assertion of a due process violation is entirely insufficient to meet his burden of showing that he, as a contract employee for a public housing authority, had a legitimate entitlement to be paid in federal funds by the MHA for work that HUD had not authorized.  See Callaway v. Block, 763 F.2d 1283, 1290 (11th Cir. 1985) ("the hallmark of a protected property interest is an 'individual entitlement' ... which cannot be removed except for cause.").

As Sprayberry explained in his Initial Memorandum, (Init. Mem. at 33-34), HUD has oversight authority over the MHA's use of federal funds.  See Brown v. Housing Auth. of City of McRae, Ga., 784 F.2d 1533, 1537 (11th Cir. 1986) ("HUD disburses federal funds to the local authorities provided that the local authorities comply with the United States Housing Act and HUD regulations.").  The regulations and guidelines used by HUD to evaluate public housing authority ("PHA") requests to spend federal funds require that PHA costs for professional services be reasonable in relation to the services rendered, be necessary and reasonable for the administration of public housing program, and be supported by documentation.  (Sprayberry Dec. ¶¶ 2-6; Poteete Dec. ¶ 6; Harmon Dec. ¶ 6).  HUD, which placed the MHA on procurement review in mid-November 2004 and required prior approval for it to spend federal funds, never approved the MHA's request to spend federal funds to investigate McInnish.[9]  (Sprayberry Dec.

_____

[8]Plaintiff thus reaffirms his deposition testimony that his due process claim only relates to his unpaid legal fees for his investigation into McInnish, and that he has no due process claim relating to his failure to obtain a contract with the MHA for 2005-2006. (Pl. Dep. III, 148:13-149:2).

[9]At one point in his Response, Plaintiff suggests that a section of a HUD Litigation Handbook indicates that the MHA did not require Sprayberry's approval to pay Plaintiff $25,000 in federal funds to investigate McInnish. (Pl. Resp. at 10).  In making this argument, Plaintiff relies on his own interpretation of a Litigation Handbook section that relates to when a public housing authority has to obtain the approval of HUD's Regional Counsel to enter Litigation Contracts. (Sprayberry Dep. 221:3-222:20, Ex. 25).  Since Sprayberry was HUD's Director of Public Housing for Birmingham, and not HUD's Regional Counsel, and because his office made decisions regarding the MHA's use of programmatic funds and procurement transactions and not Litigation Contracts, this Handbook section is entirely irrelevant to the issues in this lawsuit. (Sprayberry Dep. 15:16-19,

¶¶ 21-24, Ex. D; Harmon Dec. ¶¶ 7-12; Pl. Dep. II, 45:12-23, 73:20-74:4).  Plaintiff, despite knowing that the MHA was subject to HUD oversight and had to obtain HUD approval to spend federal funds, billed approximately $25,000 to the MHA for an investigation into McInnish.  (Pl. Dep. I, 311:21-312:22; Pl. Dep. II, 73:23-74:4, Ex. 64).  Plaintiff cannot show that he has any property interest in the MHA paying him in federal funds for his investigation into McInnish, when HUD had not given the MHA the necessary prior authority to use federal funds for that purpose.  See Lyng v. Payne, 476 U.S. 926, 942 (1986) ("We have never held that applicants for benefits...have a legitimate claim of entitlement protected by the ... Fifth Amendment.").

Furthermore, Plaintiff completely fails to address Sprayberry's arguments that, even if he had a protected property interest, he was afforded adequate pre- and post-deprivation remedies.  (Init. Mem. at 36-37).  In McKinney v. Pate, 20 F.3d 1550, 1562-63 (11th Cir. 1994) (en banc), the Eleventh Circuit explained that since a procedural due process violation does not occur unless and until the government fails to provide an adequate, post-deprivation remedy, the existence of such a remedy constitutes a complete bar to the assertion of a due process claim.  See Rodriquez-Mora v. Baker, 792 F.2d 1524, 1527 (11th Cir. 1986).  For this reason alone, Sprayberry is also entitled to summary judgment on Plaintiff's due process claims.  See Resolution Trust Corp., 43 F.3d at 599; Brewer, 816 F. Supp. at 1579 ("Summary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument on this issue.").

### d.    First Amendment (Speech).

Sprayberry established in his Initial Memorandum that Plaintiff has not shown that Sprayberry violated his First Amendment rights.  (Init. Mem. at 37-40).  To state a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in constitutionally-protected speech; and (2) that the speech played a substantial or motivating role in the

---

221:10-222:20, 223:16-224:14, Ex. 25; Sprayberry Dec. ¶¶ 2-6, 21).

government's decision to take an adverse action against him.  See Board of Commissioners v. Umbehr, 518 U.S. 668, 675-676 (1996).  Sprayberry provided extensive legal authority and factual citations establishing that Plaintiff could not satisfy either of these necessary elements. (Init. Mem. at 38-40).  Sprayberry also offered extensive evidence that HUD's actions would have been the same regardless of anything Plaintiff may have said, thereby establishing an affirmative defense to any First Amendment claim.  (Init. Mem. at 40).

Plaintiff responds to Sprayberry's well-supported arguments regarding his First Amendment claim by citing to general principles of First Amendment law.  (Pl. Resp. at 12-13). He completely ignores, however, legal authority establishing that a public employee or contractor does not speak on a matter of public concern when he speaks as part of his job.  See Garcetti v. Ceballos, 126 S. Ct. 1951 (2006); Warner Cable Co. v. City of Niceville, 911 F.2d 634, 638 (11th Cir. 1990).  Plaintiff also fails to address any of Sprayberry's numerous arguments as to why his First Amendment claims fail as a matter of law.  (Init. Mem. at 38-40). Accordingly, Plaintiff has not carried his burden of showing that Sprayberry violated his First Amendment rights, and the Court should grant summary judgment on these claims.  See Resolution Trust Corp., 43 F.3d at 599; Brewer, 816 F. Supp. at 1579 ("Summary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument on this issue.").

### 2.    No Violation of Clearly Established Constitutional Rights.

Finally, Sprayberry moved for summary judgment on the additional ground that he is entitled to qualified immunity because Plaintiff could not show that all reasonable officials in Sprayberry's position, aware of the same set of facts, would have known they were violating Plaintiff's First, Fifth, and Thirteenth Amendment rights. (Init. Mem. at 41-44).  Qualified immunity is the "usual rule," and only in "exceptional cases will government actors have no shield against claims made against them in their individual capacities."  See Redd v. City of

Enterprise, 140 F.3d 1378, 1382 (11th Cir. 1998). To overcome qualified immunity, a plaintiff bears the heavy burden of showing that "it would be clear to a reasonable official that his ... conduct was unlawful in the situation he confronted." See Saucier v. Katz, 533 U.S. 194, 202 (2001); Gray, 458 F.3d at 1303. This analysis turns on review of "the precise actions of each [defendant] and the precise information possessed by each [defendant] in order to determine whether a reasonable public official could have believed that his or her actions were lawful, in light of clearly established law." See Dolihite v. Maughan, 74 F.3d at 1027, 1034, n.3 (11th Cir. 1996). Under this protective standard, "if reasonable public officials could differ on the lawfulness of a defendant's actions, then the defendant is entitled to qualified immunity." See Storck v. City of Coral Springs, 354 F.3d 1307, 1315 (11th Cir. 2003).

Plaintiff, who bears the burden of showing that qualified immunity is not appropriate, makes nothing but conclusory statements that Sprayberry violated his rights to due process and to be free from discrimination. (Pl. Resp. at 15-16). He simply alleges that Sprayberry was aware that a failure to authorize the MHA to pay him was a violation of his due process rights, and that Sprayberry discriminated against him when he "refused to allow" the MHA to re-hire Plaintiff. (Pl. Resp. at 15-16). These conclusory assertions, with no reference to facts in this case, much less the facts known to Sprayberry when making his decisions, are entirely insufficient to overcome qualified immunity. See Williams v. City of Jacksonville, 341 F.3d 1261, 1273 (11th Cir. 2003); Dolihite, 74 F.3d at 1034 n. 3.

Indeed, it is undisputed that Sprayberry did not know Plaintiff's race or the race of other MHA contract attorneys when he made the decisions challenged in this case. (Sprayberry Dec. ¶¶ 33, 39). Furthermore, Sprayberry relied upon the knowledge and expertise of his staff when making the decisions that are being challenged in this case and they all agreed on the same course of action. (Sprayberry Dec. ¶¶ 6, 29, 40). No reasonable official, in Sprayberry's

oversight position with HUD and with his knowledge, would have had even the slightest idea that any of his decisions impacted, in the least bit, any First, Fifth, or Thirteenth Amendment rights possessed by a MHA contract employee such as Plaintiff.  See Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (reiterating that "fair and clear notice to government officials is the cornerstone of qualified immunity").  Plaintiff has thus fallen far short of meeting his burden of overcoming Sprayberry's entitlement to qualified immunity.  See Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004) ("plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity.").

## **CONCLUSION**

Accordingly, for the foregoing reasons, and those in Sprayberry's Initial Memorandum, Sprayberry respectfully requests that the Court grant Sprayberry's Motion for Summary Judgment in its entirety, enter an appropriate Order dismissing all Plaintiff's claims with prejudice, and award Sprayberry costs in this action.

Respectfully submitted this 5th day of March, 2007.

LEURA G. CANARY
United States Attorney

By:     s/James J. DuBois
JAMES J. DUBOIS
Assistant United States Attorney
Georgia Bar No. 231445
United States Attorney's Office
Post Office Box 197
Montgomery, AL 36101-0197
Telephone: (334) 223-7280
Facsimile: (334) 223-7418
E-mail:  james.dubois2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Plaintiff, counsel for Plaintiff, counsel for Defendant McInnish, and counsel for Defendant Montgomery Housing Authority.

    s/James J. DuBois
Assistant United States Attorney
