IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TERRY G. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 2:05-cv-1235-T |
| | ) | |
| R. EDMOND SPRAYBERRY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT MCINNISH'S REPLY MEMORANDUM TO PLAINTIFF'S
JANUARY 26TH AND FEBRUARY 9TH, 2007, RESPONSE TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGEMENT**

Plaintiff has filed two responses to Defendant McInnish and Defendant
Sprayberry's Motions for Summary Judgment. Immediately upon filing his first response
on January 26, 2007, Plaintiff sought an extension of time to file a response. It is unclear
if the Court was aware that Plaintiff had filed his January 26th response, when it granted
the extension. Plaintiff moved to withdraw his January 26th response, but the Court
denied the motion. Nevertheless, Plaintiff filed a second response on February 9th, after
notifying the Defendants to "disregard" his January 26th response, evidently intended to
replace and supersede the first response. It is no mystery as to the reason Plaintiff
attempted to withdraw his January 26th filing. Plaintiff's Response Brief failed to address
the issues raised in Defendant McInnish or Defendant Sprayberry's Motions for
Summary Judgment. As stated by Defendant Sprayberry, in his reply to Plaintiff's
January 26th response, Plaintiff's "Statement of Facts", "is full of speculation and
conclusory assertions, that is not supported by specific citations to admissible

evidence…." Plaintiff failed to address McInnish's arguments. The Response Brief is mainly a repeat of the untrue and unsupported allegations of the Complaint.

Plaintiff's February 9th response to Defendants' Motions for Summary Judgment references a number of documents and includes a few citations to the record, but again, Plaintiff fails to address the issues raised by Defendant McInnish's well-supported statement of facts and legal arguments. Plaintiff's response continues the shell game that Plaintiff plays with his legal theories. The Second Amended Complaint is the third complaint he has filed in this case. That Complaint drops some of his previous legal theories and asserts a few new ones. Nevertheless, his February 9th brief attempts to add additional legal theories never before mentioned and to resurrect theories previously dropped. For example, Plaintiff's Second Amended Complaint - the live one - drops his equal protection claim under the Fourteenth Amendment. Plaintiff's Response Brief attempts to resurrect that claim and add a 1985(3) conspiracy claim, and a Title VII Claim, not previously mentioned in this litigation. At any rate, Plaintiff has failed to support any legal theory with admissible evidence or legal argument. He barely mentions his contract claim. He has utterly failed to answer Defendant McInnish's Motion for Summary Judgment. Instead, Plaintiff has once again submitted unsupported allegations and conclusions. His few citations often contain mischaracterizations of the record or reference matters which are irrelevant or immaterial to the issues in the case. Plaintiff continues to promote issues for which he has no standing.

Defendant McInnish hesitates to reply to the allegations made by Plaintiff in his Response Brief, because they have little if anything to do with the case on summary

judgment.  However, the fact that Plaintiff chooses to make such assertions does demonstrate that he has no evidence to support his claims.

### 1.    Plaintiff's Assertions About The Circumstances Of His Application To Provide Legal Services To The Montgomery Housing Authority "(MHA)" In 2002.

On page 2 of his February 9th Response Brief (Doc. 148), Plaintiff cites "Davis Volume I, pp. 18-20", his own deposition testimony about a hearsay statement he attributes to Clifford Holmes.  Plaintiff mischaracterized the cite to some extent.  He testified that he did not recall if Holmes used the term "general counsel", Davis Depo. Volume I, p. 18 lns. 2-3, whereas in his Response Brief, p. 2, Plaintiff states unequivocally that Holmes told him he wanted to hire an African American as "general counsel".  At any rate, the hearsay statement is inadmissible and immaterial to any issue in the case.

### 2.    Comparative Qualifications Of Plaintiff And The Firm Of Bradley Arant Rose & White ("Bradley Arant").

Defendant McInnish has explained the attorney selection process and that Plaintiff's firm and the Bradley Arant firm were selected by the MHA Board for different jobs.  McInnish Mem. pp. 12-17.  Plaintiff cites PEX 2 to support his conclusion that he is more qualified than the Bradley Arant firm.  PEX 2 is a submission by Bradley Arant to MHA in response to MHA's Request for Proposal (RFP) for legal services.  It does not support Plaintiff's conclusion at all.

### 3.    The 2002 Fee Negotiation.

On page 2 of his February 9th Response Brief, Plaintiff discusses the 2002 fee negotiations between himself and Defendant McInnish and between McInnish and the Bradley Arant firm.  Plaintiff fails to provide any citation to the record for many of his

assertions.  Of those cites that he does provide, several refer to inadmissible hearsay statements.  For example, Plaintiff claims that the MHA Board was "kept in the dark" about the hourly rates paid Plaintiff's firm and Bradley Arant.  In support of this speculation, Plaintiff cites his own deposition testimony, "Davis pp. 33-34" *sic*, PEXs 2, 30 and 31, and the deposition testimony of Betty Barnett at "pp. 126-129".  These citations do not provide admissible evidence that support Plaintiff's assertions.  Plaintiff references inadmissible hearsay testimony of Betty Barnett in support of his allegation that the Board was not aware of the attorney fees paid to either Plaintiff or Bradley Arant.  No legitimate basis is provided for her purported ignorance of the pay rates or for her alleged "outrage" about pay differentials.  Barnett was found by a HUD investigation to harbor racial animus toward McInnish.  She made public statements before a number of witnesses that the problem with McInnish was the color of his skin.  DEXs 55 and 74.  She was furious with McInnish because he refused her request to evict her neighbors without due process of law, and because he required her to reimburse MHA for an unused plane ticket in order to comply with audit standards.  DEXs 55, 206, 207 and 208. Barnett considers herself a close friend of Plaintiff.  Barnett Dep. p. 11, lns. 14-16.  She was a key player in bringing about the suspension of Defendant McInnish.  DEXs 37, 40, 46, 55, 74, and 139.  A witness could hardly be more biased than Barnett.

Bias aside, Barnett's testimony provides nothing more than inadmissible hearsay at best as to the knowledge of other MHA Board members.  If Barnett was in the dark, it was the result of her own failure to become informed when given the opportunity.  On the other hand, McInnish has explained in detail the RFP process used in 2002.  McInnish Mem. pp. 12-17.  The Board was not kept in the dark, but was deeply involved in the

process, and had access to contracts and supporting documentation. It was Plaintiff and the Board that asked McInnish to negotiate the hourly rates contained in Plaintiff's contract. Also, at page 2 of his Response Brief, Plaintiff purports to relate a conversation between himself and Defendant McInnish. But he neglects to provide any citation to the record. McInnish accurately documents the conversation. McInnish Mem. p. 15. Plaintiff has made no claim for any damages resulting from the alleged disparity in rates.

Plaintiff has failed to reveal how McInnish's negotiations with the Plaintiff about hourly rates, at the invitation of Plaintiff and at the direction of the Board, demonstrates race discrimination. He has failed to connect any of his conclusions to his claim of race discrimination on the part of Defendant McInnish.

### 4.    McInnish's Questions About Plaintiff's Invoices

Plaintiff offers Plaintiff Exhibit 2A for the proposition that McInnish attempted to intimidate him by scrutinizing his invoices in "microscopic detail". Plaintiff is evidently quoting himself when he uses the term "microscopic detail". However, Plaintiff has admitted that it was McInnish's job to review the invoices of MHA contractors, including himself. Plaintiff's Exhibit 2A reveals that Plaintiff's invoices were certainly deserving of scrutiny. See DEXs 37, p.2; and 40. Plaintiff also cites his own deposition, at Davis Vol. I, pp. 188-197, to support his position. Yet, he states in that very cite, p. 189, lns. 9-12, that he has no problem with McInnish raising questions about his bill. Plaintiff goes on to make various allegations without reference to the record. One of the examples he gives of McInnish's close scrutiny is that McInnish questioned him about why a pleading on behalf of MHA had not been timely filed. In the next sentence, Plaintiff admits that McInnish was not told that Plaintiff had obtained an extension of time from the court.

Davis' Response Brief, p. 3.  According to Plaintiff's citation to his own testimony, someone told McInnish that the pleading was not timely, and "by all objective means and appearances, it may not have been timely filed, but I had gotten additional time on that." Davis Vol. I, p. 195, lns. 9-13.

Plaintiff claims that McInnish testified that he "never marked-up or scrutinized invoices from Bradley Arant."  He fails to cite any testimony of McInnish, but instead, cites Stewart's deposition testimony in support at "Stewart Dep. pp. 48-49."  The cite does not support Plaintiff's assertion.  Stewart testified that he did not know what MHA did internally, and does not recall whether McInnish asked him to clarify his invoices. Stewart Dep. p. 48, lns. 4-8, and 18-23.

5.    **Riverside Heights**

At page 2 of Plaintiff's February 9th Response Brief, he states that in April 2004, the MHA Board authorized him to investigate McInnish.  No MHA Board resolution giving Plaintiff such authority has ever been produced.  Plaintiff makes a number of unsupported and inaccurate statements about McInnish's role regarding the proposed sale of Riverside Heights.  According to Plaintiff, this issue was the reason he was asked to conduct an inquiry of McInnish.  Plaintiff used the inquiry to present findings, all demonstrably false, to the MHA Board as the basis to suspend McInnish on November 16, 2004.  Plaintiff claims that he told the Board that McInnish had concealed from the Board a "formal offer" made by the Mayor of the City of Montgomery, on September 24, 2004, to purchase Riverside Heights from MHA for $12 million, and that McInnish made an "undisclosed trip" to Washington, D.C. with Board member Richard Bollinger.

Plaintiff has produced a letter, Plaintiff's Exhibit 7, from Thomas Taylor, Board Chairman, to Plaintiff, dated November 17, 2004, as support for his assertions.

The assertions in Taylor's letter are not only false, but Plaintiff and Taylor knew the letter was false when written. First, there was no "formal offer" made by the Mayor on September 24, 2004, to buy Riverside Heights for $12 million and no admissible evidence has been produced to prove the allegation. The allegation is refuted by McInnish's testimony. McInnish Dep. pp. 174 lns. 22-23; 175 lns. 1-2, 7-23; 176; and 177 lns. 1-7; 178 lns. 18-23, 179 lns. 20-23; 180: ln.1. Second, the fact that the City was willing to pay $12 million for the property was known by the Board and numerous others for years. It was no secret. McInnish kept the MHA Board informed. All of his actions concerning Riverside Heights are documented in his November 15, 2004, Memo to the Board Chairman with copies to the Board and to Plaintiff. DEX 45. Third, McInnish's trip to Washington was neither undisclosed nor unauthorized. McInnish had a travel budget approved by the Board with authority to use it to travel on MHA business. He was not required to check with the Board before making travel plans. *See*, DEX 139. He did travel to Washington, D.C. with a MHA Board member, in order to facilitate the sale of Riverside Heights. *Id.* Not only is there no MHA Board resolution authorizing any investigation of McInnish by Plaintiff, the Board never gave a reason for McInnish's suspension. *See* DEXs 48, 49 and 56.

   **6.    Plaintiff's False Charges Against McInnish.**

Plaintiff alleges that on December 15, 2004 he presented his findings to MHA's Interim Executive Director, Lemuel Boggs. *See* DEX 47 [McInnish Responses to Misconduct Charges (McInnish 676-681)]. Plaintiff provides no citation to the record to

support his claim.  Plaintiff states:  "Based upon the evidence presented by Davis to the interim executive director, a recommendation was made to terminate the employment of C. Michael McInnish and a disciplinary due process hearing was set."  (Davis Response Brief, p. 5).  This is a mischaracterization.

McInnish served a Motion to Produce on MHA requesting information about Plaintiff's charges against McInnish.  Boggs responded that his name was signed as a matter of procedure and he had no substantive information about the charges.  DEX 53.  The so-called "due process hearing" was set after McInnish was suspended and after Plaintiff conducted a post-suspension investigation of McInnish.  There was no pre-suspension hearing.  At the time of the suspension, there were no charges and no reason has ever been given by the MHA Board for McInnish's suspension.  DEXs 48, 49 and 56.

Plaintiff's "Statement of the Facts" fails to support by admissible evidence, any of Plaintiff's claims in the case.  Plaintiff has made no claim based on the difference between hourly rates paid Bradley Arant and those paid Davis and Hatcher.  He seeks payment of an invoice he submitted to MHA after McInnish was no longer at MHA.  None of the facts cited shows any harm Plaintiff suffered as a result of race discrimination by McInnish.  Plaintiff produced no evidence to support a contract claim against McInnish personally.  Plaintiff's "Statement of Facts" only show that Plaintiff is wildly off course in his stubborn pursuit of his lawsuit against McInnish, when he must know, as an attorney, that his Complaint has no admissible evidence to support it.

In his Response Brief, Plaintiff makes unsupported allegations that contradict some of the unsupported allegations of his Complaint.  For example, a major focus of his Complaint consists of an alleged conspiracy between McInnish, Sprayberry and Long.

Long has been dismissed from the case on Plaintiff's motion admitting the weakness of his case against Long. In fact, he has produced <u>no</u> <u>evidence</u> that Long was involved in a conspiracy or guilty of any discrimination against him. *See* Plaintiff's Motion to Dismiss Long. Likewise, Plaintiff has produced <u>no evidence</u> of any conspiracy between McInnish and Sprayberry. In his Response Brief he states that Sprayberry acted "unilaterally" to reverse the MHA Board decision to employ Plaintiff as counsel, and that Sprayberry "singularly blocked MHA's action to rehire plaintiff." Davis Response Brief. p. 7. Aside from the fact that the record does not support his claims against Sprayberry, Plaintiff admits by these statements that McInnish was not involved in a conspiracy with Sprayberry. In fact, McInnish was no longer at MHA when these events occurred.

It is ironic that Plaintiff charges McInnish with race discrimination, when a federal investigation has revealed that it was racial animus against McInnish that underlies this case. DEX 74. Plaintiff's own animus against McInnish is demonstrated by his insistence that McInnish failed to make a complaint of race discrimination in his April 23, 2004, Memo to the MHA Board. DEX 20; Davis Dep. Vol. I, p. 109, lns. 18-23; p. 111, lns. 22-23. In that Memo, McInnish states:

> Unfortunately, one of the greatest hurdles I have personally had to combat is my race. I have been publicly criticized for being the Director because of my race. I have been reviewing my desktop book and some of the following are listed: I received a lot of criticism from some ministers in the community because of my race; a commissioner has allegedly made statements that I should not be serving our residents because of my race; one commissioner told me that I did not know who I was "messing with". As I stated to several of you, I will not condone any discrimination against any of our residents, our staff, or myself. I have repeatedly had to endure racial issues concerning my ability to lead this housing authority and race should not be an issue in our city about leadership ability.

DEX 20, p. 2.

Plaintiff told McInnish that MHA Commissioner John Knight said that McInnish was trying to "make up a race case." Davis Dep. Vol. I, p. 111, lns. 1-5, 10-15. Knight was found by the HUD investigation to harbor racial animus toward McInnish. DEXs 74 and 55. Plaintiff took no action to investigate this serious racial allegation.

Plaintiff goes on to make unsupported and erroneous allegations about Defendant Sprayberry's involvement in the case after McInnish was no longer at the MHA. Defendant Sprayberry has convincingly responded to those allegations.

## ARGUMENT

### I.    NON-EXISTENT CLAIMS

Plaintiff refers in his responses to certain causes of action that are not present in this lawsuit. Specifically, despite his attempted reliance on these, Plaintiff has brought no claim pursuant to Title VII, §1985, or the Fourteenth Amendment's Equal Protection Clause. The Court should disregard these claims.

### II.    OTHER CLAIMS

Plaintiff has utterly failed to demonstrate a genuine issue of material fact sufficient to prevail on any of his claims brought pursuant to the First, Fifth, and Thirteenth Amendments; the Federal Tort Claims Act; or any theory of contract. Moreover, it is clear that no clearly established law supports any of Plaintiff's claims, entitling Defendant McInnish to summary judgment.

In opposition to a motion for summary judgment, the non-movant "must choose his specific facts and explain why the law supports his claim on the facts." *Johnson v. Federal Express Corp*., 147 F. Supp. 2d 1268, 1271 (M.D. Ala. 2001). A trial court is not obligated to mine the record in search of "any possible argument which could be

made based on the materials before the court." *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990).    Moreover, "conclusory allegations without specific supporting facts have no probative value." *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

The vast majority of assertions in Plaintiff's Response are baseless ones, mere conclusory allegations without specific supporting facts.    Besides being based on speculation, inadmissible hearsay, and self-serving conjecture, Plaintiff seldom attempts to include record citations for his assertions, largely because there is no record evidence to support the core of Plaintiff's position.    According to the Court's Scheduling Order, "Failure to make…specific reference [to the record] will result in the evidence not being considered by the Court."    Uniform Scheduling Order §2 (Feb. 21, 2006).    Plaintiff's failure to comply with the Scheduling Order or the fundamental evidentiary principles of summary judgment practice is ultimately fatal to his baseless claims.

A.    **Federal Tort Claims Act**

Plaintiff fails to refer to or mention his FTCA claim in any way.    Because claims and arguments not relied upon by a party opposing summary judgment are abandoned, *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), summary judgment, is due to be granted on this claim.    *See Blalock v. Dale Cty. Bd. of Educ.*, 84 F. Supp. 2d 1291, 1309 (M.D. Ala. 1999) ("Plaintiff has not addressed this claim in opposing summary judgment.    [Thus], the court finds that plaintiff has not met [his] burden of demonstrating genuine issues of material fact…and has abandoned this claim.").

11

**B.**    **The Contract Claim**

Although Plaintiff does apparently refer to his contract claim one time, he does not carry his Rule 56 burden and should likewise be deemed to have abandoned this claim. The only arguable reference to the contract claim appears as the very last sentence of Plaintiff's brief: "Where Defendant's failed to raise as an affirmative defense a Plaintiff's standing to sue under a contract, that defense is waived." Even if Plaintiff's assertion were true, and it is not, it is insufficient to overcome Defendant's motion for summary judgment.

Of course, an argument regarding standing cannot be waived. *United States v. Hays*, 515 U.S. 737, 742 (1995); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (11th Cir. 2005). Moreover, the defense was asserted as McInnish's Sixth and Thirty-Second Affirmative Defenses. *See* Answer of McInnish at 10, Sixth Affirmative Defense (alleging Plaintiff lacks standing); *id.* at 13, Thirty-Second Affirmative Defense ("Plaintiff did not have a contract with Defendant McInnish."). Finally, Defendant is entitled to summary judgment on this claim because, as explained in McInnish's prior brief, Davis cannot prove the existence of a binding contract between himself and McInnish. *See* Mem. Brief in Support of Motion for Summary Judgment at 33-34 (Jan. 9, 2007). Similarly, having made no reference to a claim for quantum merit, Davis is due to lose on that claim as well.

**C.**    **First Amendment Claim**

McInnish carefully explained in his Memorandum Brief that Plaintiff cannot demonstrate a violation of any First Amendment right. Mem. Brief at 35-37. Davis responds to McInnish's legal arguments and factual references by vigorously asserting a

few truisms of First Amendment law. Davis does not address any of McInnish's arguments, notably failing to distinguish *Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006), which conclusively holds that Davis could not have been speaking on a matter of public concern. Davis does not establish McInnish took any action against him in violation of the First Amendment. Given the lack of clearly established law supporting Plaintiff and given Plaintiff's inadequate response, summary judgment is due to be granted.

D.    **Thirteenth Amendment Claim**

Davis' reliance on the Thirteenth Amendment is an insult to the noble purposes of that Amendment. McInnish explained in his Memorandum Brief that Davis' allegations could not state a Thirteenth Amendment or Fifth Amendment Claim. There is absolutely no evidence of race discrimination against Davis that could violate either the Fifth or Thirteenth Amendment. As explained in McInnish's Memorandum Brief, Davis cannot make out a prima facie case of discrimination, cannot produce evidence of pretext, cannot produce any race-related comments, and cannot produce any legally cognizable comparators raising an inference of discrimination. *See* Mem. Brief at 15, 37-41.

Davis offered no admissible, relevant evidence in reply, and has failed to demonstrate that Davis could provide services similar to those of the largest indigenous Alabama law firm, Bradley-Arant. Davis did not establish he was similarly situated to Bradley Arant or that discrimination was the reason for any arguable rate differential. Once again, Davis merely asserts some general principles related to equal protection law. His discrimination claims must therefore fail.

E.     **Fifth Amendment Due Process Claims**

McInnish explained in detail in his Memorandum Brief that Davis could not prove a Fifth Amendment violation. Mem. Brief at 41-44.  McInnish offered substantial evidence and cited to controlling case law establishing that Davis could not sustain a due process claim.  Davis cannot establish that he possessed a protected property interest of which McInnish deprived him.  In Plaintiff's Response, Davis confirms that his due process claim only relates to his unpaid legal fees claimed for his "investigation" into McInnish.  *See* Pl. Resp. at 15 ("a failure to authorize payment was a violation of Plaintiff's rights to due process").  Since McInnish was without authority to pay Davis for the "investigation," Davis can establish no claim against McInnish.  Moreover, Davis completely failed to address or distinguish *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) (en'banc), which forecloses precisely the type of claim Davis advances.  McInnish is entitled to summary judgment on Plaintiff's due process claims.

F.     **Qualified Immunity**

McInnish demonstrated in his Memorandum Brief that he is entitled to qualified immunity from all of Davis' claims.  See Mem. Brief at 45-47.  McInnish explained that to overcome qualified immunity any clearly established law had to be "fact specific" and "so particularized" that it would have been obvious or "apparent" to the defendant that his actions were unlawful.  *Rodgers v. Horsley*, 39 F.3d 308, 311 (11th Cir. 1994).  A plaintiff bears the burden of proving that a defendant is not entitled to qualified immunity, *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004), and a plaintiff cannot rely on "broad legal truisms to show that a right is clearly established." *Kelly v. Curtis*, 21 F.3d 1544, 1550 (11th Cir. 1994) (internal quotations omitted).

In this case, Davis has offered nothing more than speculation and broad conclusory assertions that McInnish violated various rights. Davis does not offer sufficient record evidence to demonstrate how McInnish supposedly violated the various alleged constitutional provisions. Davis' conclusory assertions, offered without reference to admissible evidence sufficient to overcome summary judgment, cannot carry Davis' burden of showing qualified immunity does not apply. Indeed, based on a review of the clear case law weighing against Davis, it is clear McInnish is entitled to qualified immunity.

## **CONCLUSION**

Based on the above, Defendant McInnish's Motion for Summary Judgment is due to be granted with all costs and expenses of litigation taxed to Plaintiff.

Respectfully submitted this the ___13th___ day of March, 2007.

/s/ M. Wayne Sabel_____
M. Wayne Sabel (SAB002)
Mark Sabel (SAB004)
Maricia Woodham (BEN050)
Attorneys for Defendant McInnish

**OF COUNSEL:**

SABEL & SABEL, P.C.
Hillwood Office Center
2800 Zelda Road; Suite 100-5
Montgomery, AL  36106
Telephone:  (334) 271-2770
Facsimile:  (334) 277-2882

## CERTIFICATE OF SERVICE

I do hereby certify that on the 13th day of March, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Dwayne Brown, Esq.
5925 Carmichael Road
Post Office Box 230205
Montgomery, Alabama  36123-0205
E-Mail:  dbrown@dbrownatty.com

Ernestine S. Sapp
Gray, Langford, Sapp, McGowan, Gray and Nathanson
P.O. Box 830239
Tuskegee, AL
E-Mail:  esapp@glsmgn.com

Dorman Walker
Balch & Bingham LLP
105 Tallapoosa Street, Suite 200
Montgomery, AL  36104
E-Mail:  dwalker@balch.com

Charles A. Stewart, III
Angela R. Rogers
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, Alabama  36104
Email:  cstewart@bradleyarant.com
Email:  arogers@bradleyarant.com

Leura Garrett Canary
James J. DuBois
U.S. Attorneys Office
P.O. Box 197
Montgomery, AL  36101
Email:  Leura.canary@usdoj.gov
Email:  james.dubois2@usdoj.gov

Michael J. Cohan
Randall C. Morgan
Hill, Hill, Carter, Franco, Cole & Black
Post Office Box 116
Montgomery, AL  36101
Email:  mcohan@hillhillcarter.com
Email:  rmorgan@hillhillcarter.com


/s/ Maricia Woodham
M. Wayne Sabel (SAB002)
Mark Sabel (SAB004)
Maricia Woodham (BEN050)
Attorneys for Defendant McInnish